1   RUSS, AUGUST & KABAT
    Marc A. Fenster, State Bar No. 181067
2   mfenster@raklaw.com
    Benjamin T. Wang, State Bar No. 228712
3   bwang@raklaw.com
    Neil A. Rubin, State Bar No. 250761
4   nrubin@raklaw.com
    Bahrad A. Sokhansanj, State Bar No. 285185
5   bsokhansanj@raklaw.com
    12424 Wilshire Boulevard, 12th Floor
6   Los Angeles, California  90025
    Telephone:  (310) 826-7474
7   Facsimile:   (310) 826-6991

8   Attorneys for Plaintiff
    COREPHOTONICS, LTD.

9

10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15  COREPHOTONICS, LTD.                    Case No. 5:17-cv-06457-LHK (NCx)

16                        Plaintiff,       **PLAINTIFF COREPHOTONICS LTD.'S**
                                           **OPPOSITION TO DEFENDANT APPLE**
17  vs.                                    **INC.'S MOTION TO DISMISS FIRST**
                                           **AMENDED COMPLAINT**
18

19  APPLE INC.                             **Hearing**
                                           Date:   November 8, 2018
20                        Defendant.       Time:  1:30 PM
                                           Place:  Courtroom 8, 4th Floor
21                                         Judge: Hon. Lucy H. Koh

22                                         **JURY TRIAL**

23                                         Original Complaint Filed:
                                                      November 6, 2017
24

25

26

27

28

**Table of Contents**

Page

I.      INTRODUCTION AND BACKGROUND .............................................................. 1

II.     ARGUMENT ....................................................................................................... 3

        A.      Corephotonics' First Amended Complaint ("FAC") Alleges Non-
                Conclusory Facts in Support of Claims of Willful Infringement ..................... 3

        B.      The FAC Provides Sufficient Notice of Corephotonics' Claims that
                Apple's Infringement of the Asserted Patents was Willful. .......................... 5

        C.      The FAC Alleges Sufficient Facts to Support the Plausible Inference that
                Apple Has Infringed and Continues to Infringe with Culpability ...................... 6

                1.      Corephotonics' Claims Survive if the Pleadings Support Even a
                        Plausible Inference of Egregious Conduct. ................................................ 6

                2.      The Totality of Corephotonics' Factual Allegations Raise a
                        Plausible Inference that Apple Infringed and Continues to Infringe
                        with Knowledge of the Patents .................................................................. 7

                3.      Corephotonics' Allegations Also Plausibly Evince Apple's Willful
                        Blindness to the Asserted Patents and its Infringement ............................ 11

        D.      The Grounds for Apple's Motion to Dismiss Were Rejected by This Court
                When It Ruled in Apple's Favor in *Apple v. Samsung* .................................. 12

                1.      This Court Has Already Held That Even If an Infringer's
                        Knowledge of the Patents Only Existed After a Lawsuit is Filed,
                        there is Still a Basis to Find that Infringement Was Willful. ................... 13

                2.      Apple Did Not Even Try to Explain How This Case Differs from
                        *Samsung*. It Does Not. .......................................................................... 13

                3.      The Timing of the Letter Sent to Apple Before the Suit Does Not
                        Preclude a Plausible Inference of Willful Infringement. ......................... 14

III.    IN THE ALTERNATIVE, DISMISSAL SHOULD BE WITHOUT PREJUDICE
        AND COREPHOTONICS SHOULD BE ALLOWED TO AMEND THE
        COMPLAINT ..................................................................................................... 15

IV.     CONCLUSION .................................................................................................. 15

i

RUSS, AUGUST & KABAT

## Table of Authorities

**Page**

**Cases**

*ABB Turbo Sys. AG v. Turbousa, Inc.*
774 F.3d 979 (Fed. Cir. 2014) .................................................................. 6

*Adidas Am., Inc. v. Skechers USA, Inc.*
2017 U.S. Dist. LEXIS 89752 (D. Or. June 12, 2017) ..................................... 9

*Apple Inc. v. Samsung Elecs. Co.*
258 F.Supp.3d 1013 (N.D. Cal. 2017) ...................................................... 13

*Apple v. Samsung. XpertUniverse, Inc. v. Cisco Sys., Inc.*
2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) ............................................. 14

*Barker v. Riverside Cty. Office of Educ.*
584 F.3d 821 (9th Cir. 2009) ............................................................... 5, 6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......................................................................... 6

*Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*
2016 WL 4778699 (E.D. Tex. Aug. 19, 2016) .............................................. 8

*Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*
2015 WL 3755223 (E.D. Pa. June 15, 2015) ............................................... 8

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*
2018 WL 2011468 (Fed. Cir. May 1, 2018) ................................................ 5

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Systems, LLC*
350 F.3d 1327 (Fed. Cir. 2003) ............................................................ 5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*
563 U.S. 754 (2011) ....................................................................... 11, 12

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*
897 F.2d 508 (Fed. Cir. 1990) ............................................................. 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
136 S. Ct. 1923 (2016) ................................................................. 5, 11, 13

*Kaufman Co. v. Lantech, Inc.*
807 F.2d 970 (Fed. Cir. 1986) ............................................................. 14

*LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*
2012 WL 1965878 (N.D. Cal. May 30, 2012) ............................................... 9

*Longitude Licensing v. Apple Inc.*
2015 WL 1143071 (N.D. Cal. Mar. 13, 2015) ............................................. 9

*Mentor Graphics Corp. v. EVE-USA, Inc.*
851 F.3d 1275 (Fed. Cir. 2017) ........................................................ 11, 13

*OpenTV, Inc. v. Apple, Inc.*
2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ............................................... 7

RUSS, AUGUST & KABAT

ii

**Table of Authorities**
(continued)

| | Page |
|---|---|
| *Power Lift, Inc. v. Lang Tools, Inc.*<br>774 F.2d 478 (Fed. Cir. 1985) | 14 |
| *Rite-Hite Corp. v. Kelley Co.*<br>819 F.2d 1120 (Fed. Cir. 1987) | 7 |
| *Sealant Sys. Int'l, Inc. v. TEK Glob.*<br>2012 WL 13662 (N.D. Cal. Jan. 4, 2012 | 9 |
| *Spherix Inc. v. Juniper Networks, Inc.*<br>2015 WL 1517508 (D. Del. Mar. 31, 2015) | 8 |
| *Unicolors, Inc. v. Urban Outfitters, Inc.*<br>853 F.3d 980 (9th Cir. 2017) | 11 |
| *Vasudevan Software, Inc. v. TIBCO Software Inc.*<br>2012 WL 1831543 (N.D. Cal. May 18, 2012) | 9 |
| *WBIP, LLC v. Kohler Co.*<br>829 F.3d 1317 (Fed. Cir. 2016) | 7, 11 |

**Statutes**

| | |
|---|---|
| 35 U.S.C. §284 | 5, 11, 15 |
| Fed. R. Civ. P. 9 | 5 |
| Fed. R. Civ. P. 54 | 15 |

**Other Authorities**

| | |
|---|---|
| *Manual of Patent Examining Procedure*<br>§1730.II.B.2.(d) | 10 |

After inducing Corephotonics to disclose its innovations in dual camera technology over the course of more than four years with a promise of a potential license agreement, and with full knowledge that Corephotonics' innovations were the subject of multiple patent applications that matured into patents, Apple used Corephotonics' inventions in the new generation of iPhones with dual cameras, and continued its infringing conduct after it became aware of the patents and even after this lawsuit was filed. Apple now seeks absolution from any claim of willful infringement, before any discovery. Apple's motion to dismiss these claims with prejudice should be denied, because Apple has failed to show that the totality of circumstances alleged in the amended Complaint do not plausibly support an inference of Apple's willful infringement. Apple's bases its motion on grounds that contradict Federal Circuit precedent, as well as arguments that this Court's previous decision has already rejected – on Apple's urging – when it ruled in Apple's favor in *Apple v. Samsung*.

## I.    INTRODUCTION AND BACKGROUND

Corephotonics is an Israeli-based technology company focused on developing cutting-edge miniature camera technology. Founded in 2012, it now employs among its staff over 50 engineers and technologists. Corephotonics' customers include leading suppliers and mobile phone makers around the world. One of Corephotonics' inventive technologies is a miniature dual-aperture camera that achieves optical zoom by integrating a wide-angle and a telephoto lens. Corephotonics has patents protecting lens design and image/video processing aspects of these inventions. Corephotonics alleges, in this lawsuit, that the Apple iPhone 7 Plus and 8 Plus infringe four of Corephotonics' patents.[1]

Corephotonics' First Amended Complaint ("FAC") alleges additional facts, among them that: Apple evaluated Corephotonics' technologies for a period of years, while Corephotonics told it that it was pursuing patents on them. Apple learned about Corephotonics' patents and applications in the course of its own prosecution efforts. Corephotonics and Apple frequently met. Corephotonics attempted to acquire samples of Corephotonics' proprietary telephoto

---

[1] The Corephotonics patents-in-suit are U.S. Pat. Nos. 9,185,291 (the "'291 patent"), 9,402,032 (the "'032 patent"), 9,538,152 (the "'152 patent"), and 9,568,712 (the "'712 patent") (collectively the "Asserted Patents").

1

RUSS, AUGUST & KABAT

camera lenses from Corephotonics' supplier without Corephotonics' knowledge or permission. Apple then requested and acquired samples of its proprietary telephoto camera lenses from Corephotonics. Apple also acquired from Corephotonics demonstration versions of Corephotonics' software. Corephotonics' prototype hardware and software were utilized by Apple at its facilities in secret. After the iPhone 7 Plus was introduced, Corephotonics tried to share information about its patents with Apple employees. Apple employees told them they did not want to receive it. Apple knowingly used Corephotonics' intellectual property to its benefit, yet it refused to avoid infringing Corephotonics' patents after it learned about them, as well as after this suit was filed.

The inference from the totality of these alleged factual circumstances, if proven true, plausibly supports a claim that Apple's willfully infringed Corephotonics' patents and continues to willfully infringe after the Complaint. Apple, however, seeks to fully evade any such claims, before there is discovery and infringement claims against it are fairly adjudicated. Apple improperly bases its sweeping motion on statements the Court made at the Case Management Conference. Corephotonics did amend its Complaint, however, adding numerous detailed factual allegations of Apple's egregious conduct and knowledge of Corephotonics' Asserted Patents. Apple's motion to dismiss Corephotonics' willful infringement, with prejudice, should be denied accordingly.

Apple's arguments should be denied because of at least two basic flaws. *First*, Apple contends that Corephotonics has failed to plead "specific" facts regarding Apple's knowledge of, or willful blindness to, its infringement of the Asserted Patents. Apple's arguments depend on a raised bar for pleading willful infringement – which is contrary to Federal Circuit precedent. Apple compounds its error by taking individual facts alleged by FAC, piece by piece, and arguing that each allegation alone cannot support a claim of willful infringement. The totality of the FAC's allegations plausibly support the inference that Apple knew or should have known about the Asserted Patents before either the suit was filed or Corephotonics sent a letter before filing the suit, and that Apple's infringement was willful. Apple fails to show otherwise.

*Second*, Apple only contends that the FAC fails to allege sufficient facts to support the inference that Apple knew of its infringement of the Asserted Patents *before* Corephotonics filed this lawsuit. Apple does not even argue that its post-suit knowledge of the Asserted Patents would be insufficient to support a claim of willful infringement. But pre-suit knowledge is not required to prove willful infringement, as this court held last year in *Apple v. Samsung*. Apple, undaunted, relies on the same legal arguments that it successfully convinced this Court to reject when they were made by Samsung. Apple argues, as Samsung did then, that its pre-suit conduct at issue occurred before it knew about the patents and before the patents issued. This Court held then that pre-suit knowledge of patents is not a prerequisite for willful infringement, and that willful infringement may be found based on post-suit conduct. Apple does not propose any reason to distinguish this case from *Apple v. Samsung*. Indeed, Apple failed even to cite *Apple v. Samsung*.

For these reasons, and as explained below, the motion to dismiss should be denied.

## II.   ARGUMENT

### A.   Corephotonics' First Amended Complaint ("FAC") Alleges Non-Conclusory Facts in Support of Claims of Willful Infringement.

The First Amended Complaint ("FAC") provides additional factual allegations, in detail, to support Corephotonics' claims of willful infringement. FAC, Dkt. 42. These are summarized as follows:

Apple first learned about Corephotonics in 2012. Corephotonics and Apple employees, including the head of Apple's camera team, communicated and met in 2012. At that time, Corephotonics told Apple that it intended to protect its technologies with patents. FAC, ¶ 22. During 2013-2014, Corephotonics and Apple engaged in extensive technological discussions and had numerous meetings. ¶¶ 23-30.

During this time, Corephotonics sent and gave Apple design files that disclosed its inventions. ¶ 24 After Corephotonics learned that Apple had tried to obtain a sample of Corephotonics' innovative lens assembly from a supplier (without informing Corephotonics), Apple requested and acquired samples from Corephotonics. ¶¶ 26-27. Apple requested and

3

RUSS, AUGUST & KABAT

acquired from Corephotonics testing versions and demonstrations of its dual camera zoom and fusion software to Apple. *Id.,* ¶¶ 24-25, 27-28. Apple tested, evaluated, and utilized the samples and software that Corephotonics gave it internally at their own facilities, in the absence of Corephotonics personnel. ¶¶ 27-28.

During business discussions about potential licensing in 2014, Corephotonics told Apple about its then-active patent families, which included telephoto lens designs and dual camera technologies that are claimed in the Asserted Patents. ¶ 29. From 2015 through 2016, Apple cited a number of Corephotonics patents and applications in the prosecution of its own small-format telephoto lens and dual camera patents. These included the '291 patent, the '152 patent application, and the parent application of the '032 and '712 patents, which Apple had to overcome before its own patent could issue. ¶¶ 39-44.

Apple and Corephotonics resumed discussions in 2016 concerning dual camera technology, and there were business proposals exchanged that included the potential licensing of Corephotonics' intellectual property. ¶¶ 33-34. In September 2016, Apple introduced the iPhone 7 Plus, which included a telephoto camera and dual camera fusion and zoom software that infringe Corephotonics' patents. At a meeting with Apple employees in October 2016, Corephotonics tried to share their patents with Apple employees, but an Apple employee told Corephotonics not to send its patents to them. ¶ 35. Corephotonics had meetings about its new technologies with Apple through 2017. ¶ 36. On October 31, 2017, before this lawsuit was filed, Corephotonics sent a letter to Apple describing its belief that Apple was infringing Corephotonics' patents and subsequently filed this lawsuit. ¶ 37.

The FAC alleges further details regarding Apple's willful infringement of each of the Asserted Patents. *See, e.g., Id.,* ¶¶ 48-50, 61-63, 74-76, 87-89. The FAC further alleges, for each Asserted Patent, that Apple knew of, or was willfully blind to, the patent and its infringement, from the time the patent was issued or later, when Corephotonics employees tried to tell Apple's employees about the patent, when Corephotonics sent the letter before the suit, and from the time the original Complaint was filed. *Id.*

RUSS, AUGUST & KABAT

**B.     The FAC Provides Sufficient Notice of Corephotonics' Claims that Apple's Infringement of the Asserted Patents was Willful.**

Apple's assertion that Corephotonics has not pled sufficiently "specific" facts about Apple's knowledge imply a pleading standard that simply does not exist. are thus inapposite. In a complaint, "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, --- F.3d ---, No. 2017-1483, 2018 WL 2011468, at *3 (Fed. Cir. May 1, 2018). The Supreme Court has held that after a finding of "egregious misconduct" based on a "full range of culpable behavior" by an infringer, enhanced damages are available to a patentee at the Court's discretion under 35 U.S.C. §284. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). There is no "specific" or "high" burden of proof for a finding of willful infringement that supports enhanced damages." *Id.* at 1934. There is also nothing special about the pleading standards for willful infringement, as it "does not equate to fraud" and Rule 9(b) does not apply *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003).

Corephotonics has, accordingly, provided "fair notice" of its claim of willful infringement of the Asserted Patents, and the FAC alleges the grounds of Apple's egregious misconduct and inferences of its culpable behavior upon which those claims rest. *Id.,* ¶¶ 48-50, 61-63, 74-76, 87-89. Apple also asserts that the FAC's allegations are "bare" or "conclusory," despite their extensive detail. Dkt. 47, 6-7. The allegations in the FAC, however, goes well beyond merely conclusory statements or threadbare recitals of Apple's liability. The FAC includes a lengthy detail of Apple's pattern of conduct, over the course of years, relating to Apple's infringement of the Asserted Patents. *See id.,* ¶¶ 22-44. At this stage, the FAC's allegations are to be are accepted as true, and inferences must be drawn "in the light most favorable" to Corephotonics. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The FAC, therefore, alleges sufficient facts, with detail, to clear the necessary bar of plausibly supporting an inference of Apple's egregious misconduct in infringing the patents.

RUSS, AUGUST & KABAT

5

The FAC thereby meets the requirements for sufficiently pleading willful infringement of the Asserted Patents. Apple does not dispute that the FAC includes detailed factual allegations about Apple's interactions and conduct with respect to Corephotonics. Apple instead argues that the FAC insufficiently alleges Apple's knowledge of the Asserted Patents during the timeframe of Apple's conduct before the suit was filed. Apple's arguments fail to address the totality of the FAC's detailed allegations, and they are based on legal rules about willful infringement that *Halo*, the Federal Circuit, and this Court have all rejected.

## C. The FAC Alleges Sufficient Facts to Support the Plausible Inference that Apple Has Infringed and Continues to Infringe with Culpability.

The FAC also alleges a plausible inference that Apple already knew of its infringement of the Asserted Patents before Corephotonics sent its letter to Apple about them and filed the original Complaint. Apple's arguments at most challenge the strength of factual inferences, which applies the wrong standard at the pleading stage, and they fail to address the totality of the alleged circumstances as required by Federal Circuit precedent.

### 1. Corephotonics' Claims Survive if the Pleadings Support Even a Plausible Inference of Egregious Conduct.

At the pleading stage there may only be limited consideration of the relative strength of inferences from Corephotonics' factual allegations. The requirement that there be plausible grounds for a claim "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint may even proceed "if it strikes a savvy judge that actual proof of the facts alleged is improbable." *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 987–88 (Fed. Cir. 2014). (quoting *Twombly*, 550 at 556). *ABB*, 774 F.3d at 987-988. Apple's motion to dismiss with prejudice asks for a decision on the merits of Corephotonics' claim before there has been any discovery. Corephotonics does not know what Apple knows, it can only know what it told Apple or Apple told it.

Accordingly, the Court must look at what inferences are merely plausible from what the FAC alleges, as construed in Corephotonics' favor. *Barker*, 584 F.3d at 824. As an initial matter,

6

Corephotonics need not show pre-suit knowledge by Apple to support a claim of willful infringement. However, even if it did, Corephotonics has alleged facts from which it may be plausibly inferred that Apple knew of the Asserted Patents before the suit was filed. To the extent that Apple contends that such an inference could only be made upon a party providing actual notice of the Asserted Patents and its infringement accusations, these arguments lacks foundation. Rather, inference of an accused infringer's knowledge of patents is enough to support a jury finding of willful infringement. For example, the Federal Circuit upheld the jury's finding of an "inference" of the defendant's pre-suit knowledge given the facts presented therein. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341–42 (Fed. Cir. 2016). The totality of what the FAC alleges is more than enough to show a plausible inference to support its claims of that Apple's infringement was culpable and willful. *See* FAC, ¶¶ 22-44.

> **2.      The Totality of Corephotonics' Factual Allegations Raise a Plausible Inference that Apple Infringed and Continues to Infringe with Knowledge of the Patents.**

Apple's argues that each allegation, in isolation, would fail to support a plausible inference of Apple's culpability. Apple does not address the allegations pled in the FAC in their totality. Apple's approach thereby contravenes the bedrock principle that "in a determination of willfulness and its consequences, the totality of circumstances considered." *Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125 (Fed. Cir. 1987).

Apple's knowledge of the patents can be inferred from the fact that Corephotonics disclosed that it had applied for patents on the technology it was sharing with Apple, from Apple's patent prosecution efforts (which include extensive citations of Corephotonics patents and applications), from Corephotonics' October 2017 letter, and from the filing of the Complaint. FAC, ¶¶ 39-44. The allegations include an express citation of one of the Asserted Patents as issued, which even Apple acknowledged was sufficient on its own to show for a Court in this District to find that it showed actual knowledge of the patent. *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *7-8 (N.D. Cal. Apr. 6, 2015). Apple does not distinguish this case on the basis of any facts, but simply asserts that it was somehow abrogated

RUSS, AUGUST & KABAT

on the basis of language taken out of context from a concurrence in *Halo* that was signed by only 3 of 9 Justices. In another case recent case, which was decided after *Halo*, the defendant's citation of a patent application in prosecution, before that application issued, was also found sufficient to support a plausible inference of pre-suit knowledge of that patent's existence. *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 2:15-cv-1274-JRG-RSP, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016).

The cases Apple cites in its favor are otherwise distinguishable. In *Spherix Inc. v. Juniper Networks, Inc.*, the patentee had pointed to the citation of a patent in the prosecution of two of many patents bought at auction. No. CV 14-578-SLR, 2015 WL 1517508, at *3 (D. Del. Mar. 31, 2015). In this case, by contrast, Corephotonics has pointed to multiple citations in a narrow universe of Apple's miniature camera patents. In the other case cited by Apple, the Court did not consider any potential relationship between the parties as there was here, in which Apple spent years evaluating Corephotonics technologies. *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, No. CIV.A. 14-6650, 2015 WL 3755223, at *3 (E.D. Pa. June 15, 2015).

Apple's argument that allegations of Apple's knowledge of the parent applications of the '032 and '712 patents, which claim telephoto lens assembly designs, are insufficient is similarly unavailing. Apple had to analyze and get around that parent application to get one of its own telephoto lens patents issued. The FAC alleges, moreover, that Apple also received drawings and physical samples of Corephotonics' telephoto lens assemblies at the same time. Similar context exists for Apple's knowledge of the '291 patent, which had issued when Apple cited it in its own patent applications, and the '152 patent application. Apple was also testing Corephotonics' zoom and fusion technology covered by these patents. Apple also knew that Corephotonics was seeking patents on each of these, and Apple engaged in business discussions with Corephotonics that included the potential of licensing. Apple does not address these allegations as a totality, along with the other context alleged in the FAC. *See* §§ 22-44.

RUSS, AUGUST & KABAT

8

RUSS, AUGUST & KABAT

Apple relies on cases in which a defendant only had knowledge of patents and applications, absent any other context. Dkt. 47, 10-11.[2] In these cases, plaintiffs did not, or were not able to, include allegations of technology exchanges or any commercial relationship beyond licensing discussions. By contrast, when a plaintiff, like Corephotonics, has alleged more than just the knowledge of patents and applications, courts consider the inference drawn from all the allegations taken together. For example, in another case involving a motion to dismiss a claim of willful infringement against Apple, the patentee had alleged an "unspecified relationship" between another party, AT&T, and an inventor of the patent; knowledge of a published application of a parent application by Apple; and the existence of the business relationship between AT&T and Apple while AT&T was Apple's exclusive customer. *SoftView LLC v. Apple Inc.*, No. CIV. 10-389-LPS, 2012 WL 3061027, at *5 (D. Del. July 26, 2012). That court found that while each allegation individually was insufficient, "[t]aken in combination," this was enough for the claim to survive a motion to dismiss. *Id.* at *6.

The other cases on which Apple relies also relate to factual circumstances that differed from the case at bar, in particular, *State Industries, Inc. v. AO Smith Corp.*, 751 F. 2d 1226 (Fed. Cir. 1985). As an initial matter, that case was an evaluation of a full record after a bench trial, in which the facts of the conduct of the patentee and accused infringer had been fully established. *Id.* at 1234. At the pleading stage, however, all of Corephotonics' allegations are to be taken as true. *State Industries* was also a case about whether a defendant could have known about secret applications that were being amended in secret, as at that time patent applications and prosecution were not a matter in the public record. *See, e.g., id.* at 1235 (noting that the patentee was "manipulating its secret patent application"). The patent at issue had also not issued, so it was not public (or available to the accused infringer) until 22 days before the lawsuit. *Id.* at 1237.

---

[2] *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *1 (N.D. Cal. May 18, 2012); *Sealant Sys. Int'l, Inc. v. TEK Glob.*, No. C 11-00774 PSG, 2012 WL 13662, at *1 (N.D. Cal. Jan. 4, 2012; *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, No. 11-CV-06173 YGR, 2012 WL 1965878, at *4 (N.D. Cal. May 30, 2012); *Longitude Licensing v. Apple Inc.*, No. C-14-04275-EDL, 2015 WL 1143071, at *2–3 (N.D. Cal. Mar. 13, 2015); *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-CV-1400-SI, 2017 U.S. Dist. LEXIS 89752, *9-10, 2017 WL 2604310 (D. Or. June 12, 2017).

Decisions like *State Industries* and contemporaries were thus based on the premise that "[i]n our patent system, patent applications are secret, and patentees are authorized to sue 'innocent' manufacturers immediately after patents issue and without warning." *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510–11 (Fed. Cir. 1990) (collecting cases). So, an inevitable element of the "totality of circumstances" in these cases was that patent applications were necessarily secret through prosecution until the day they issued.

The basic premise set forth in *Gustafson* no longer applies. Corephotonics' patent applications were, as is now generally required, published before issuing. 35 U.S.C. § 122(b). And, after they were, the prosecution files were also made available at the Patent Office's public PAIR website as well. *Manual of Patent Examining Procedure* § 1730.II.B.2.(d) ("All patent applications filed after June 30, 2003 have been scanned into the IFW system and will be available in public PAIR as soon as they have been published or patented."). Corephotonics alleges that Apple at least knew about published applications in the course of its prosecution activities. All the office actions, claim amendments, and notices of allowance associated with these applications have been available to the public for free online. This is unlike the circumstances of *State* and *Gustafson*, when all the applications and amendments were secret.

Given the many other circumstances of Apple's conduct and inferences from its knowledge, unlike *State Industries*, in this case, knowledge of patent applications is a relevant part of what Apple knew about the Asserted Patents. Based on a totality of circumstances, Apple plausibly had sufficient warning to have known when the Asserted Patents were about to issue, or to verify whether they had issued when the Apple iPhone 7 Plus was released or when Corephotonics told its employees that they wanted to show them relevant patents. Given Apple's knowledge of Corephotonics technology and its evaluation of Corephotonics as a business opportunity as well, these factual circumstances plausibly imply that Apple knew that the Asserted Patents existed well before Corephotonics sent them a letter.

Apple's only argument otherwise is that Corephotonics did not explicitly send Apple a notice about each individual patent before then. But if such notice were held to be a legal prerequisite for the survival of a claim of willful infringement, that would contradict the clear

10

RUSS, AUGUST & KABAT

guidance that there are no "rigid" formulas or rules for what facts plausibly infer willful infringement. *Halo*, 136 S.Ct. at 1923; *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295–96 (Fed. Cir. 2017). In this case, Corephotonics has pled multiple factual circumstances that give rise to the plausible inference of Apple's willful infringement of the Asserted Patents before the lawsuit was filed. Apple has failed to show, as it must, that there is no plausible inference based on a totality of circumstances that Apple knew it was infringing the Asserted Patents before Corephotonics filed the Original Complaint. Apple's motion to dismiss, therefore, should be denied.

### 3.    Corephotonics' Allegations Also Plausibly Evince Apple's Willful Blindness to the Asserted Patents and its Infringement.

Apple's motion does not address Corephotonics' allegation of willful blindness as alternative grounds for willful infringement claims in the FAC. *See* FAC, ¶¶ 49, 62, 75, 88. The Supreme Court held that "the doctrine of willful blindness is well established criminal law" and that willful blindness results in the same level of culpability as actual knowledge in the context of induced infringement. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–69 (2011). Relatedly, courts have also "repeatedly" held that willful infringement of copyrights does not require a showing of actual knowledge where there is a showing of willful blindness. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017).

Federal Circuit precedent permits willful blindness as grounds for enhanced damages under §284. Apple's arguments that "knowledge" of a patent is as a "prerequisite" for enhanced damages due to infringement cite to *WBIP, LLC v. Kohler Co*. In *WBIP*, however, the court upheld a jury verdict in which willfulness infringement was found based on an inference of knowledge. 829 F.3d at 1341. The *WBIP* decision did not address any contentions of willful blindness. To otherwise distinguish infringement with willful blindness as a separate or lesser form of culpability that is separate from lesser infringement with actual knowledge would contradict the Supreme Court's instruction to avoid "rigid formulas" and that enhanced damages are awarded to address a "full range of culpable behavior." *Halo*, 136 S.Ct. at 1933-34.

11

RUSS, AUGUST & KABAT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The FAC sufficiently alleges the factual circumstances of Apple's culpability due to willful blindness. Defendants are willfully blind if they both "subjectively believe that there is a high probability that a fact exists," and "take deliberate actions to avoid learning of that fact." *Glob.-Tech*, 563 U.S. 754 at 769. The FAC alleges that Apple had access to and evaluated Corephotonics technology and that it knew that Corephotonics had filed patent applications on those technologies. Apple also entered into business negotiations for potentially licensing technology and intellectual property. Apple knew about the '291 patent, the '152 patent application, and the parent application of the '032 and '712 patents because of its activities at the Patent Office. And, when Corephotonics tried to share its patents with Apple employees, Apple employees instructed Corephotonics neither send Apple any patents nor show patents to anyone working there.

These allegations draw together a pattern of conduct from which it can be plausibly inferred that Apple's believed that there was a high probability that it was infringing the Asserted Patents, and that Apple took deliberate actions to avoid learning of that fact. Accordingly, Corephotonics' willful infringement claims should also be allowed to proceed on the basis of Apple's alleged willful blindness, and their merits should be resolved once there is a factual record to evaluate.

**D.     The Grounds for Apple's Motion to Dismiss Were Rejected by This Court When It Ruled in Apple's Favor in *Apple v. Samsung*.**

Apple does not contend that Apple did not learn knew about the Asserted Patents after the Complaint was filed. In fact, Apple does not raise any argument that the FAC's allegations do not support a claim of willful infringement *after* the Complaint was filed. Rather, Apple argues that allegations refer to events that took place *before* the patents had issued or *before* it received the Corephotonics' letter and the filing of the suit. Apple's argument is unavailing, as it relies on a premise that this Court already rejected, following *Halo* and Federal Circuit precedent.

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **1.**      **This Court Has Already Held That Even If an Infringer's Knowledge of the Patents Only Existed After a Lawsuit is Filed, there is Still a Basis to Find that Infringement Was Willful.**

This Court has held that "post-filing conduct alone can serve as the basis of a jury's willfulness finding and an award of enhanced damages." *Apple Inc. v. Samsung Elecs. Co.*, 258 F.Supp.3d 1013, 1027 (N.D. Cal. 2017). This Court made that determination in evaluating a motion for JMOL after a complete factual record had been developed and a jury trial held. In that case, the complete record showed that the pre-filing conduct by Samsung that Apple contended supported willful infringement occurred prior to when Samsung knew of the patents and the patents had even been issued. *Id.* at 1025. The Court determined that these facts did not preclude a finding of willful infringement based on Samsung's post-filing conduct. *Id.* at 1029. The order noted that, especially prior to *Halo*, there had been a divide of cases as to whether pre-filing knowledge of patents was a prerequisite for finding willful infringement.

This Court, however, grounded its ultimate determination that willful infringement does not legally require pre-suit knowledge of patents-in-suit on the Federal Circuit's most recent guidance that "there is no rigid rule" in what a patentee needs to show to make a case for willfulness based on post-suit conduct. *Mentor Graphics*, 851 F.3d at 1296. This is consistent with the Supreme Court, which "eschew[ed] any rigid formula for awarding enhanced damages." *Halo*, 136 S.Ct. at 1934.

      **2.**      **Apple Did Not Even Try to Explain How This Case Differs from *Samsung*. It Does Not.**

Failing even to cite the *Samsung* decision, Apple cannot reconcile the arguments that it makes here with the positions it took (and won on) in *Apple v. Samsung*. Apple simply flips them around. There, Apple specifically argued in its briefing that Samsung's arguments that "its lack of pre-suit knowledge of the '721 patent precludes a determination of willfulness is contrary to law" and Samsung's argument that evidence of its copying prior to the patent issuing "is also unavailing." Apple's Response Regarding Willfulness and Opening Brief Regarding Enhanced

13

1    Damages., No. 5:12-cv-00630-LHK, Dkt. 2191, 1, 2017 WL 4871425 (N.D.Cal. April 28, 2017).

2    Now, Apple's arguments are based entirely around FAC alleging facts that are "insufficient for

3    pre-suit knowledge." Dkt. 47. Such arguments were unavailing when Samsung made them

4    against Apple then, and they are unavailing now.

5            Apple does not raise any factual distinction from the circumstances in *Samsung* that

6    would justify its own contradictory positions or cause the Court to reach a different conclusion.

7    Neither does Apple argue that there has been any legal development since *Mentor Graphics* or

8    this Court's decision that should lead to a different outcome now. Apple cites some district court

9    cases with different outcomes, but most were decided before *Mentor Graphics* – and this Court

10   in *Samsung* distinguished similar cases. Apple only cites one case that was decided after this

11   Court's decision in *Apple v. Samsung*. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-CV-03848-

12   RS, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017). That case's particular circumstances are

13   not at issue here, however, as in that case the court dismissed with leave to amend where the

14   defendant indisputably knew of the patent from a previous verdict against it, but the plaintiff had

15   pled no other allegations. *Id.*

16           **3.        The Timing of the Letter Sent to Apple Before the Suit Does**

17                   **Not Preclude a Plausible Inference of Willful Infringement.**

18           Apple argues that Corephotonics' letter to Apple prior to filing the Complaint is itself a

19   basis for granting Apple's motion. Dkt. 47, 9-10. This argument is merely a variant of the

20   proposition that pre-suit knowledge is a requirement for willful infringement, which this Court

21   rejected in *Samsung*. The Federal Circuit has also specifically addressed the question of whether

22   informing a defendant shortly before filing a Complaint precludes a finding of willful

23   infringement. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed. Cir. 1985). In that

24   case, willful infringement was upheld where notice was given after a patent issued and then filed

25   a lawsuit only nine days later. *Id.* In another case, which Apple cited in in its *Samsung* brief,

26   willful infringement was upheld when notice was given two weeks after a patent issued and the

27   suit was filed two weeks later. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 979 (Fed. Cir. 1986).

28   Whether the timing of Corephotonics' letter is among the facts that supports a finding of willful

RUSS, AUGUST & KABAT

14

1  infringement is a fact issue for the court to decide, therefore, not a basis to dismiss at the

2  pleading stage.

3         Apple's principal arguments in support of its motion are simply not viable under this

4  Court's previous ruling and under current Federal Circuit precedent Because this Court's

5  reasoning in *Apple v. Samsung* squarely applies to this case, the Motion should be denied.

## III.   IN THE ALTERNATIVE, DISMISSAL SHOULD BE WITHOUT PREJUDICE AND COREPHOTONICS SHOULD BE ALLOWED TO AMEND THE COMPLAINT

9         Apple seeks the extraordinary relief of a dismissal with prejudice, citing to the Court's

10  statements at the Case Management Conference. Corephotonics, however, complied with the

11  Court's instructions. Corephotonics timely filed an amended Complaint, which both included

12  expanded allegations about Apple's culpable infringement, and corrected a mistaken patent

13  number in the original Complaint that Apple had identified in its first motion to dismiss. Dkt. 39.

14  If this Court were to dismiss Corephotonics' willful infringement claims due to some newly-

15  identified defect, Corephotonics respectfully requests that the dismissal should be without

16  prejudice and Corephotonics be granted leave to file an amended Complaint. [3]

## IV.   CONCLUSION

18         For the aforementioned reasons, and because Apple did not provide any grounds for

19  partial relief or dismissing the claims without prejudice, Apple's motion to dismiss

20  Corephotonics' willful infringement claims with prejudice should be denied in full.

---

[3] Even if portions of its pleadings alleging claims of willful infringement were dismissed, Corephotonics reserves the right to seek enhanced damages under §284 as a remedy to which it is entitled, even if not demanded in the pleadings, pursuant to Fed. R. Civ. P. 54(c).

15

RUSS, AUGUST & KABAT

DATED:  May 9, 2018                          Respectfully submitted,

                                             RUSS, AUGUST & KABAT


                                             By: */s/ Marc A. Fenster*
                                             Marc A. Fenster (CA Bar No. 181067)
                                             Benjamin T. Wang (CA Bar No. 228712)
                                             Neil A. Rubin (CA Bar No. 250761)
                                             Bahrad A. Sokhansanj (CA Bar No. 285185)
                                             RUSS AUGUST & KABAT
                                             12424 Wilshire Boulevard, 12th Floor
                                             Los Angeles, California  90025
                                             Telephone: (310) 826-7474
                                             Facsimile: (310) 826-6991
                                             mfenster@raklaw.com
                                             bwang@raklaw.com
                                             nrubin@raklaw.com
                                             bsokhansanj@raklaw.com


                                             Attorneys for Plaintiff
                                             Corephotonics, Ltd.

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

## **CERTIFICATE OF SERVICE**

I certify that counsel of record who are deemed to have consented to electronic service are being served on May 9, 2018, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3).  Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

/s/     *Marc. A. Fenster*

PLAINTIFF COREPHOTONICS LTD.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT