UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COREPHOTONICS, LTD.,<br><br>    Corephotonics,<br><br>v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 17-CV-06457-LHK<br>Case No. 18-CV-02555-LHK<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 47, 68 |

In two consolidated patent infringement cases, Defendant Apple Inc. ("Apple") moves to dismiss Plaintiff Corephotonics, Ltd.'s ("Corephotonics") willful infringement claims. In the first case, 17-CV-6457, Corephotonics sued Apple for the infringement of four of Corephotonics' patents. ECF No. 1. Corephotonics later filed a First Amended Complaint ("FAC") in that case. ECF No. 42. In the Complaint in the second case, 18-CV-2555, ("'18 Compl."), Corephotonics sued Apple for the additional infringement of two of Corephotonics' patents. 18-CV-2555, ECF No. 1. On May 22, 2018, the Court consolidated the two cases, with 17-CV-6457 as the lead case. ECF No. 61.[1] *Id.* Apple now moves to dismiss Corephotonics' willful infringement claims in the

---

[1] All references in this Order to ECF entries (e.g., "ECF No. 1") are to ECF entries in the lead case, 17-CV-6457. Where it is necessary for the Court to refer to ECF entries in 18-CV-2555, the

1
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

FAC and the '18 Complaint. ECF Nos. 47 & 68.

Having considered the parties' briefs, the record in the case, and the relevant law, the Court DENIES Apple's motions to dismiss Corephotonics' willful infringement claims.

## I. BACKGROUND

### A. Factual Background

Corephotonics "is a company organized and existing under the laws of the State of Israel," and has its principal place of business in Tel Aviv, Israel. FAC ¶ 8. Apple is a California corporation and has its principal place of business in Cupertino, California. *Id.* ¶ 9.

Corephotonics "is a pioneer in the development of dual camera technologies for mobile devices." *Id.* ¶ 13. The company's "dual-aperture camera technology changes the way smartphones take pictures by using advanced lens design and sophisticated computational optics." *Id.* ¶ 15. In brief, Corephotonics' technology "uses two fixed-focal length lenses, a wide-angle lens as typically found in smartphones with single-aperture cameras, and a miniature telephoto lens." *Id.* ¶ 16. As a result, the technology "create[s] an effectively greater level of zoom without degrading image quality by combining digital and optical zoom." *Id.* Corephotonics "has filed for and received patents on its advanced telephoto lens designs, multi-aperture camera technologies, and optical processing technologies." *Id.* ¶ 18.

Corephotonics owns: (1) U.S. Patent 9,402,032 (the "'032 patent"), which issued on July 26, 2016; (2) U.S. Patent No. 9,568,712 (the "'712 patent"), which issued on February 14, 2017; (3) U.S. Patent No. 9,185,291 (the "'291 patent"), which issued on November 10, 2015; (4) U.S. Patent No. 9,538,152 (the "'152 patent"), which issued on January 3, 2017; and (5) U.S. Patent No. 9,857,568 (the "'568 patent"), which issued on January 2, 2018. FAC ¶¶ 3–6; '18 Compl. ¶¶ 3–4. The '032, '712, and '568 patents are all entitled "Miniature Telephoto Lens Assembly." FAC ¶¶ 3–4; '18 Compl. ¶¶ 3–4. The '291 patent is entitled "Dual Aperture Zoom Digital Camera," while the '152 patent is entitled "High Resolution Thin Multi-Aperture Imaging

---

Court will include the case number for clarity.

2
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

Systems." FAC ¶¶ 5–6.

In 2012, Corephotonics' "founding team contacted . . . Graham Townsend, then Senior Director Camera Hardware at Apple, highlighting some of the innovations Corephotonics was working on related to a high-end camera module . . . solution." *Id.* ¶ 22. "At an early meeting in June 2012, Corephotonics told Apple of its intention to protect its current and future developments in multi-camera technology with patents."

Then, in May 2013, an Apple engineer "emailed Corephotonics communicating Apple's interest in learning more about Corephotonics' other technology offerings and intellectual property," including "a dual-aperture camera that included a telephoto lens and associated software algorithms." *Id.* ¶ 23. In response, Corephotonics "provided a brief description of its telephoto lens architecture that was part of its intellectual property and referenced other pending patents." *Id.*

In June 2013, Townsend and other Apple camera engineers met with Corephotonics at Corephotonics' headquarters in Tel Aviv, where Corephotonics "described its intellectual property and technology plans." *Id.* ¶ 24. Corephotonics provided "a detailed presentation and discussion of computational algorithms for dual-aperture cameras and numerous system architecture and design details for a dual system." *Id.* The "design details closely resembled what was eventually deployed in the market by Apple." *Id.* Corephotonics "also engaged in engineering discussions of its telephoto lens design, and sent a file describing the lens design and including key design details." *Id.* "At the meeting, Corephotonics provided [] Townsend with a USB drive containing presentation files, which included Corephotonics' five element telephoto lens design layout, information about Corephotonics' algorithm, and a slide describing Corephotonics' pending patent applications and patent plans." *Id.* Among those plans were the "filing of applications underlying the '032, '712, and '291 patents, and a description of the provisional application that Corephotonics had filed that included fusion features that later issued as the '152 patent." *Id.*

In October 2013, "members of [Apple's] image processing and system groups" met with Corephotonics for "more in-depth discussions, which included dual camera processing methods."

*Id.*

From that period through late 2014, Corephotonics personnel visited Apple's facilities "on numerous occasions, meeting with key members of Apple's camera team, including the leaders of Apple's hardware and software efforts." *Id.* ¶ 25. During the meetings, Corephotonics "set up numerous simulations and demonstrations of its technology for Apple." *Id.* Apple "evaluated Corephotonics' test boards, lens modules, and simulation files at its own facilities." *Id.* Also in 2014, Corephotonics learned from its telephoto lens manufacturer that Apple had sought Corephotonics' samples" from the contractor without notifying Corephotonics. *Id.* ¶ 26. Corephotonics contacted Apple and "agreed to provide Apple with physical samples of Corephotonics' lens and camera modules, which embody the claimed design of Corephotonics' '032 and '712 patents." *Id.* Apple also received a "software simulator for the computational algorithms for image processing, which simulated embodiments of claimed features of the '152 and '291 patents." *Id.* ¶ 27.

In May 2014, Apple told Corephotonics "that high-level technical staff and executives in Apple's camera engineering group had observed a demonstration of Corephotonics' technology and had reacted very positively." *Id.* ¶ 28. Then, in June 2014, Apple "expressed interest in licensing Corephotonics' dual camera algorithms and software for commercial use in its devices," and a meeting was set for July 30, 2014. *Id.* ¶ 29. Before the meeting, Corephotonics gave Apple "a description of its range of technology offerings and . . . a description of its . . . patent families, including low-profile telephoto lens designs for mobile cameras and algorithms for improving dual-aperture cameras with telephoto lenses." *Id.* At the meeting, after Corephotonics asserted the "commercial value of its patents, Apple's lead negotiator responded that even if Apple infringed, it would take years and millions of dollars in litigation before Apple might have to pay something." *Id.*

In August 2014, Apple halted business negotiations with Corephotonics, but "[t]echnical discussions" between the parties continued until later in 2014. *Id.* ¶ 30. On November 18, 2014, a press report indicated that Apple might "adopt dual-aperture camera technology . . . similar to the

4
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

dual camera technology that Corephotonics" had shown Apple earlier in 2014. *Id.* ¶ 31.

In January 2016, Corephotonics' CEO contacted a hardware executive at Apple to suggest "continued collaboration." *Id.* ¶ 32. In the email, the CEO wrote, "Corephotonics had the privilege to be the first to invent, implement and demonstrate dual camera which outperform the best single compact cameras. Thus, our IP portfolio is the widest and, in our opinion, has the best defensive value for such applications." *Id.* The executive put Corephotonics in touch with one of Apple's engineers, who visited Corephotonics' facility for a meeting at which Corephotonics "presented some of its most recent technology offerings." *Id.*

"At that meeting and in subsequent meetings and communications, Apple expressed interest in learning more about Corephotonics' technologies." *Id.* ¶ 33. Corephotonics "indicated a desire to formalize a business arrangement," and sent Corephotonics a proposal for a "technology collaboration." *Id.* Apple "followed up and asked Corephotonics to provide a proposal for licensing its intellectual property to Apple." *Id.* Then, Corephotonics told Apple "that Corephotonics' intellectual property included over 25 patent families." *Id.*

"On September 7, 2016, Apple announced the iPhone 7 Plus, which included, for the first time for Apple, a real dual camera assembly including a telephoto camera for enhanced zoom – one of Corephotonics' core innovative concepts." *Id.* ¶ 34. "The hardware specifications and important software functionalities were similar to what Corephotonics had shown and demonstrated to Apple" during their discussions beginning in 2013. *Id.*

At two meetings in October 2016 between Corephotonics and "technical and business personnel from Apple," Corephotonics "offered to negotiate an agreement with Apple for access to Corephotonics' technology offerings and patents." *Id.* ¶ 35. "At the second meeting, Mr. Townsend stated that he was not permitted by his company to look at the patents, and he asked Corephotonics instead to send it to Apple's business personnel." *Id.* One such person from Apple's business side "followed up immediately thereafter with an unsolicited email stating, 'Please do not send any patents to us until further notice. Legal counsel might reach out with any questions.'" *Id.*

5
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

During 2017, Corephotonics "again met with and communicated with individuals from Apple's camera team on several occasions, but Apple no longer expressed interest in continuing to discuss a collaboration." *Id.* ¶ 36. Then, on October 31, 2017, Corephotonics wrote to Apple to inform Apple that Corephotonics had examined the iPhone 7 Plus and iPhone 8 Plus, and believed that the phones' "cameras and zoom functionality . . . infringed Corephotonics' patents, including the '032, '712, '291, and '152 patents." *Id.* ¶ 37. Apple did not respond and, six days later, Corephotonics filed the original complaint in 17-CV-6457. *Id.*

At some point later, before Corephotonics filed the '18 Complaint, Corephotonics "wrote to Apple informing it that after its examination of Apple's iPhone X camera, [Corephotonics] believes that the iPhone X product infringes the '712 and '568 patents . . . [and] that [Corephotonics] believes, after examining Apple's iPhone 7 Plus and 8 Plus cameras, that these products also infringe the '568 patent." '18 Compl. ¶ 37.

Corephotonics alleges that while Apple and Corephotonics were in communication, Apple "was filing its own patent applications on small-format camera designs, including telephoto cameras that could be used in a mobile device." FAC ¶ 38. At the time, Apple "was well aware" of the "patents in suit and applications that issued as the patents in suit." *Id.*

Specifically, Apple filed an application for a patent that issued as U.S. Patent 9,223,118 ("'118 Application"). *Id.* ¶ 39. In the prosecution of the patent application, the examiner cited a patent application (the "Dror Application") that "is a family member of the '032 and '712 patents" that Corephotonics owns. *Id.* The examiner cited the Dror Application "as anticipating, or rendering obviousness in combination with other references, all the pending claims" in Apple's '118 Application. *Id.*

Then, in September 2015, Apple filed an application for a patent that issued as U.S. Patent No. 9,769,389 ("'389 Application"). "During the prosecution of [the '389 Application], . . . Apple cited Corephotonics' asserted '291 patent in an Information Disclosure Statement ("IDS") form, which describes prior art known by the patent applicant and submitted to the [USPTO]." *Id.* ¶ 40. In other disclosure statements in early 2016, Apple referenced two Corephotonics patent

6
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

applications, *id.* ¶ 41, disclosed the '291 patent as prior art, *id.* ¶ 42, "disclosed the Dror Application as prior art," *id.* ¶ 43, and disclosed as prior art the application that later issued as Corephotonics' '152 patent. *Id.* ¶ 44.

Corephotonics alleges that based on the foregoing factual allegations, Apple willfully infringed all five patents-in-suit (the "Asserted Patents"). *See id.* ¶¶ 48, 61, 74, 87 (alleging that Apple willfully infringed the '032, '712, '291, and '152 patents via the iPhone 7 Plus and iPhone 8 Plus); '18 Compl. ¶¶ 45, 59 (alleging that Apple willfully infringed the '712 and '568 patents via the iPhone 7 Plus, iPhone 8 Plus, and iPhone X).

### B. Procedural History

On November 6, 2017, Corephotonics filed suit against Apple in 17-CV-6457. ECF No. 1. On March 28, 2018, Apple filed a motion to dismiss Corephotonics' claims for willful infringement under Federal Rule of Civil Procedure 12(b)(6). ECF No. 39.

Also, on March 28, 2018, the Court filed a Case Management Order. ECF No. 38. The Court stated that the parties had "agreed that Plaintiff will amend its complaint as of right in response to [Apple's motion to dismiss]." *Id.* The parties had also "agreed that if Plaintiff's amended complaint fails to cure the deficiencies identified in Defendant's motion to dismiss regarding willfulness and inducement, the Court shall grant a second motion to dismiss with prejudice." *Id.* Lastly, the Court gave Corephotonics until April 30, 2018 "to file a new action alleging patent infringement by Apple based on generations of the iPhone other than those at issue in the instant case, as well as asserting patents that will be issued in the next month." *Id.*

Then, on April 11, 2018, Corephotonics filed the FAC. ECF No. 42. On April 25, 2018, Apple filed a motion to dismiss Corephotonics' claims for willful infringement in the FAC. ECF No. 47 ("Mot."). On May 1, 2018, the Court denied as moot Apple's motion to dismiss Corephotonics' original complaint. ECF No. 48. On May 9, 2018, Corephotonics filed an opposition to Apple's motion to dismiss the FAC, ECF No. 51 ("Opp."), and on May 16, 2018, Apple filed a reply. ECF No. 56 ("Reply").

On May 3, 2018, Corephotonics notified the Court that it had filed a related case, 18-CV-

1  2555, and asked the Court to relate and consolidate it with 17-CV-6457. ECF No. 49.

2  Corephotonics had filed the '18 Complaint on April 30, 2018. *See* 18-CV-2555, ECF No. 1.

On May 22, 2018, pursuant to Civil Local Rule 3-12(a), the Court concluded that 18-CV-2555 was related to 17-CV-06457. ECF No. 61. The Court also consolidated the two cases pursuant to Federal Rule of Civil Procedure 42(a) because the cases "involve common questions of law and fact." *Id.*

Then, on May 24, 2018, Apple filed a motion to dismiss Corephotonics' claims for willful infringement in the '18 Complaint. ECF No. 68 ("Second Mot."). On June 7, 2018, Corephotonics filed an opposition to that motion to dismiss, ECF No. 71 ("Second Opp."), and on June 14, 2018, Apple filed a reply. ECF No. 72 ("Second Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

8
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court may in its discretion "deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. DISCUSSION

In its two motions to dismiss, Apple contends that Corephotonics has failed to plead sufficient facts to support its willful infringement claims in the FAC and the '18 Complaint. As Apple points out, and Corephotonics tacitly acknowledges, Corephotonics' willful infringement claims in both cases rest on the same basic factual allegations. Second Mot. at 2; *see generally* ECF No. 68-1 (line-by-line comparison of FAC and '18 Complaint). The primary distinctions

9

Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

between the two cases are the specific Corephotonics patents at issue and the specific Apple devices that Corephotonics alleges infringe its patents. *Compare* FAC ¶¶ 3–7 *with* '18 Compl. ¶¶ 3–5. Apple contends that in both cases, Corephotonics has failed to (1) adequately allege Apple's knowledge of Corephotonics' patents; and (2) adequately allege any egregious conduct by Apple. Mot. at 1; Second Mot. at 1–2. The Court concludes that Corephotonics has stated claims that Apple willfully infringed the Asserted Patents, and that Apple's motions must therefore be denied.

**A. Enhanced Damages and Willful Infringement**

"Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016) (citing 35 U.S.C. § 284). Before *Halo*, the Federal Circuit's *Seagate* decision required a patentee seeking enhanced damages to show willful infringement under a two-prong test. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). The *Seagate* test had an objective prong and a subjective prong. *Id.* Under the objective prong, a patentee was required to show "objective recklessness" on the part of the accused infringer. *Id.* "The state of mind of the accused infringer [was] not relevant to this objective inquiry." *Id.* Generally, a patentee would be unable to satisfy its burden under the objective prong if the accused infringer had an objectively reasonable defense to infringement. *See Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("The 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.").

If the objective prong of the *Seagate* test was satisfied, the patentee then was required to satisfy the subjective prong, which required "the patentee [to] demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

In *Halo*, the United States Supreme Court held that the two-step *Seagate* inquiry was "unduly rigid" and "encumber[ed] the statutory grant of discretion to the district courts." *Halo*,

10

136 S. Ct. at 1932. Specifically, the *Halo* court held that "[t]he principal problem with *Seagate*'s two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages." *Id.* As the Federal Circuit has subsequently confirmed, the *Halo* court "rejected *Seagate*'s strict requirement that a patentee prove the objective unreasonableness of an infringer's defenses." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds sub nom. by WesternGeco LLC. v. Ion Geophysical Corp.*, 138 S. Ct. 2129 (2018).

However, "*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness." *Id.* As a result, "subjective willfulness alone . . . can support an award of enhanced damages . . . 'without regard to whether [the] infringement was objectively reckless.'" *Id.* (quoting *Halo*, 136 S. Ct. at 1933); *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339–42 (Fed. Cir. 2016) ("[T]he *Halo* Court explained that an infringer's subjective bad faith alone may support an award of enhanced damages."). Further, the *Halo* court "explained that the appropriate time frame for considering culpability is by assessing the infringer's knowledge at the time of the challenged conduct." *WBIP*, 829 F.3d at 1340.

After *Halo*, a patentee seeking enhanced damages must show subjective willfulness by a "preponderance of the evidence standard." *Halo*, 136 S. Ct. at 1934. Once a patentee demonstrates such subjective willfulness, "the question of enhanced damages must be left to the district court's discretion." *Id.* "None of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount," although "such punishment should generally be reserved for egregious cases typified by willful misconduct . . . beyond typical infringement." *Id.* at 1933–35.

After the *Halo* decision, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite for enhanced damages." *WBIP*, 829 F.3d at 1341; *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("[T]he patent must exist and one must have knowledge of it."). Further, the *Halo* court "emphasized that subjective

11

Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer,' *Halo*, 136 S. Ct. at 1930—can support an award of enhanced damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotation marks and citation omitted); *accord Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1024–27 (N.D. Cal. 2017) ("*Apple v. Samsung*") (concluding that infringer's conduct occurring before the infringer received notice that it was infringing the patentee's patent could not support an enhanced damages award under 35 U.S.C. § 284). A defendant's mere knowledge of a patent is not enough; rather, a plaintiff must allege that defendant "knew or, it was so obvious that [defendant] should have known, that its actions constituted infringement of a valid and enforceable patent." *Id.* at 1027 (citing *Halo*, 136 S. Ct. at 1933); *see also Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. Jun. 7, 2017) ("*Cisco*") (concluding that a plaintiff's "allegations of knowledge and infringement," without more, are not enough to "plausibly allege 'egregiousness'").

Accordingly, to state a claim for willful infringement, Corephotonics must allege that Apple knew of Corephotonics' patents and then acted or continued to act even though it knew that it was infringing Corephotonics' patents or that the risk of such infringement was obvious. *Arctic Cat*, 876 F.3d at 1371.

**1. Analysis**

Apple first contends that Corephotonics has not alleged that Apple knew of any of Corephotonics' issued patents. Mot. at 4. Apple contends that the parties never discussed specific Corephotonics patents until Corephotonics sent Apple an email six days before Corephotonics filed its complaint in the lead case. Mot. at 6. For its part, Corephotonics contends that the totality of its factual allegations support the inference that Apple knew about the Asserted Patents before Corephotonics sent the email. Opp. at 7.

As an initial matter, Corephotonics' allegation that it sent Apple an email six days before litigation suffices to allege Apple's knowledge of the Asserted Patents, but does not—alone—suffice to state a claim for willful infringement. In that email, Corephotonics informed Apple that

12
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

Corephotonics believed Apple's iPhone 7 Plus and 8 Plus cameras and zoom functionality infringed the four Asserted Patents at issue in the lead case. FAC ¶ 37. At some point later, and before filing the '18 Complaint, Corephotonics also sent Apple a message stating Corephotonics' belief that the iPhone 7 Plus and 8 Plus and iPhone X cameras infringed the two Asserted Patents in the later-filed case. '18 Compl. ¶ 37. Apple contends that Corephotonics' allegations do not support a claim that Apple engaged in any egregious conduct after receiving Corephotonics' email notice. Mot. at 7.

Corephotonics alleges that after Apple received the email notice of Corephotonics' patents, "Apple did not respond" and "Apple has refused to alter its conduct." FAC ¶ 37; '18 Compl. ¶ 46. Those alleged actions alone are a far cry from the "egregious conduct" necessary to state a claim for willful infringement. *Cisco*, 2017 WL 2462423, at *5 (dismissing complaint for failure to make "specific factual allegations of knowledge and infringement"). In *Apple v. Samsung*, for example, the defendant's "continued sale of a copied product support[ed] an inference that [defendant's] infringement was willful." 258 F. Supp. 3d at 1028. Similarly, in *Finjan, Inc. v. SonicWall, Inc.*, 2018 WL 2234370 (N.D. Cal. May 16, 2018), the plaintiff's complaint included allegations of egregious conduct because "through a number of telephone and in-person meetings," the plaintiff "explained [defendant's] infringement of each Asserted Patent *element-by-element*." *Id.* at *3. Accordingly, the complaint sufficiently alleged that for years before suit, the defendant "knew in detail about how it infringed each Asserted Patent," and the *SonicWall* court declined to dismiss the plaintiff's complaint. *Id.*

Here, Corephotonics contends that it has also alleged that Apple knew of the Asserted Patents *before* Corephotonics sent the October 31, 2017 email. Opp. at 7. Corephotonics points to its allegations that Corephotonics had shared its technology with Apple over several years and that Apple cited Corephotonics' patent applications and one of the Asserted Patents in Apple's own patent prosecution materials. *Id.* Apple contends that allegations that Apple was aware of Corephotonics' patent *applications* and its technology are insufficient to raise the inference that Apple knew of Corephotonics' issued Asserted Patents. Mot. at 11.

13

Indeed, it has been well-established both before and after the *Halo* decision that knowledge of a pending patent application does not confer knowledge of an existing patent. *See State Indus.*, 751 F.2d at 1236 ("[T]he patent must exist and one must have knowledge of it."); *see also Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (dismissing willful infringement claims because a defendant's "mere alleged awareness" of a patent application and "knowledge of other patents" do not support an inference of the defendant's "knowledge of the patent allegedly infringed").

Here, Corephotonics alleges that Corephotonics "disclosed" its designs to Apple, "told Apple that it was seeking patent protection," and generally informed Apple of its intellectual property portfolio. *See, e.g.*, FAC ¶¶ 32, 48. Those communications alone do not suffice to allege that Apple knew of Corephotonics' issued patents, the first of which did not issue until November 2015—well after Corephotonics and Apple first began discussing Corephotonics' technology. *See* FAC ¶ 5, 23–30; *cf. Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1137–38 (N.D. Cal. 2018) (dismissing a willful infringement claim predicated on the defendant's "knowledge of [plaintiff], its products, and its patents" because the plaintiff failed to allege "that it notified [defendant] of any of the asserted patents themselves").

For the same reasons, Apple's citations in various patent prosecutions to Corephotonics' patent applications also do not support an inference that Apple knew of Corephotonics' issued patents. *See* FAC ¶¶ 39, 41, 43–44. *See Finjan, Inc. v. Juniper Networks, Inc.*, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018) (dismissing willful infringement claims because the plaintiff failed to allege that the defendant "had pre-suit knowledge of the *patents-in-suit*" rather than knowledge merely of the plaintiff's patent portfolio).

However, Corephotonics also alleges that in 2016, Apple cited to one of Corephotonics' issued patents. *See* FAC ¶¶ 40–42. In multiple filings in Apple's own patent applications, Apple cited Corephotonics' '291 patent—which had issued in November 2015. *Id.* Apple's identification of Corephotonics' issued patent makes it more than plausible that Apple was aware of the patent. *See OpenTV, Inc. v. Apple Inc.*, 2015 WL 1535328, at *7–8 (N.D. Cal. Apr. 6,

14

2015) (holding that it was plausible to infer the defendant's knowledge of plaintiff's patent from the allegation that plaintiff's patent was "identified to [defendant] during prosecution of [defendant's patents]").

Moreover, Corephotonics also alleges in its pleadings that Apple was "willfully blind" to a high risk that it was infringing Corephotonics' patents. *See, e.g.*, FAC ¶ 49; '18 Compl. ¶ 45 (alleging that Apple was "willfully blind" to its infringement of the Asserted Patents). In *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), the United States Supreme Court concluded that the doctrine of willful blindness applied to the requirement, in the induced infringement context, that a defendant know its induced acts constitute patent infringement. *Id.* at 768–69 & n.9. The *Global-Tech* Court stated that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 769.

Apple contends that allowing willful infringement claims based on a defendant's willful blindness contradicts the Federal Circuit's statement that "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite for enhanced damages." *WBIP*, 829 F.3d at 1341. Reply at 4; Second Mot. at 6. However, the United States Supreme Court made clear in *Global-Tech* that a finding of willful blindness is, in effect, a finding of knowledge. 563 U.S. at 770 (discussing how the willful blindness doctrine "permits a finding of knowledge"). Post-*Halo*, courts have recognized that allegations of willful blindness can satisfy the knowledge requirement for willful infringement. *See Straight Path IP Grp., Inc. v. Apple Inc.*, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (denying motion for judgment on the pleadings on an enhanced damages claim predicated on plaintiff's willful blindness allegation). The Court therefore considers Corephotonics' willful blindness claims.

Here, Corephotonics contends that its allegations that Apple knew about Corephotonics' technology, knew about Corephotonics' patent applications, and then instructed Corephotonics not to share Corephotonics' issued patents with Apple raise the inference that Apple "believed that there was a high probability that it was infringing the Asserted Patents, and that Apple took

15

Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

deliberate actions to avoid learning of that fact." Opp. at 12. Specifically, Corephotonics alleges that after Corephotonics offered to share its patents with Apple's technical and business personnel, Apple sent Corephotonics an email in October 2016 stating, "Please do not send any patents to us until further notice. Legal counsel might reach out with any questions." FAC ¶ 35. At that time, Corephotonics' '291 and '032 patents had issued. FAC ¶¶ 3, 5.

The Court agrees with Corephotonics that the allegations in the FAC and the '18 Complaint raise the inference that Apple was at least willfully blind to a high risk that it was infringing Corephotonics' patents. Before Corephotonics' patents issued, Corephotonics gave Apple files containing "Corephotonics' telephoto lens design layout" and "describing Corephotonics' pending patent applications and patent plans," including those related to all five of the Asserted Patents. FAC ¶ 24; '18 Compl. ¶ 22. Apple also attempted to obtain samples of Corephotonics' "prototype telephoto lens modules" from Corephotonics' contractor without informing Corephotonics. FAC ¶ 26. At a later meeting in 2014, an Apple negotiator told Corephotonics that "even if Apple infringed [Corephotonics' patents], it would take years and millions of dollars in litigation before Apple might have to pay something." *Id.* ¶ 29. Then, after Apple released one of the allegedly infringing iPhones, Apple asked Corephotonics not to send Apple any of Corephotonics' patents. *Id.* ¶¶ 34–35.

From all of those allegations, including Apple's previous awareness of Corephotonics' technology and patent applications and Apple's citation to one of the Asserted Patents, it is plausible to infer that Apple's message to Corephotonics not to send its patents was a deliberate action to avoid confirming a high risk that Apple was infringing the Asserted Patents that had then issued. Corephotonics later sent notices that Corephotonics believed Apple was infringing all of its Asserted Patents. *See* FAC ¶ 37; '18 Compl. ¶¶ 35, 37. Based on Apple's prior knowledge of Corephotonics' technology and its conduct during negotiations with Corephotonics, it is plausible to infer that at the time Corephotonics sent that notice, Apple knew of at least a high risk that it was infringing Corephotonics' "valid and enforceable patent[s]." *See Apple v. Samsung*, 258 F. Supp. 3d at 1027.

16
Case No. 17-CV-06457-LHK
ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

Put another way, Corephotonics' pleadings allege more than simply that Apple knew about Corephotonics' patents and that Apple infringed them. *See XpertUniverse, Inc., v. Cisco Sys., Inc.*, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) ("Although [plaintiff] has alleged knowledge and continued infringement, it needs to do more to show that defendant has engaged in 'egregious cases of misconduct beyond typical infringement' that could possibly warrant enhanced damages."). Contrary to Apple's assertions, Corephotonics alleges that Apple engaged in egregious conduct related to Apple's alleged infringement. *Cf. Cisco*, supra, 2017 WL 2462423, at *5 (stating that a plaintiff must include "specific factual allegations about . . . aspects of [a defendant's] behavior that would suggest its behavior was egregious"). It is plausible to conclude that Apple continued to sell an infringing product despite being aware that Apple was infringing Corephotonics' patents. *See SonicWall*, 2018 WL 2234370, at *3 (denying motion to dismiss because allegations about the course of conduct between the parties supported inference that before suit, the defendant "not only knew about the existence of the Asserted Patents but how its products infringed each Asserted Patent").

Accordingly, because Corephotonics' FAC and the '18 Complaint state claims for willful infringement, Apple's motions to dismiss must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Apple's motions to dismiss Corephotonics' willful infringement claims.

**IT IS SO ORDERED.**

Dated: October 1, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge