# EXHIBIT Q

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

APPLE INC.,
Petitioner

v.

COREPHOTONICS LTD.,
Patent Owner
_____

Case IPR2018-01140
Patent 9,402,032 B2

Case IPR2018-01146
Patent 9,568,712 B2

_____

**DECLARATION OF DUNCAN MOORE, Ph.D.
PURSUANT TO 37 C.F.R. §1.68**

Apple v. Corephotonics
Exhibit 2013
IPR2018-01146

Exhibit 2013 Page 1 of 113

## Table of Contents

I.    Background........................................................................................1

II.   Summary of Opinions.......................................................................1

III.  Educational and Employment Background .....................................4

IV.   Level of Ordinary Skill in the Art (POSITA)..................................6

V.    Relevant Legal Standards for Anticipation and Obviousness ...........7

VI.   Background.......................................................................................12

    A.   Overview of the '032 Patent and '712 Patent ................................12

    B.   Multiple Element Lens Design .....................................................18

VII.  Claim Construction..........................................................................21

    A.   "Total Track Length (TTL)" .........................................................22

    B.   "Effective Focal Length" ..............................................................28

    C.   "Optical Power" ............................................................................28

VIII.       Petition Grounds ......................................................................29

    A.   Claims 1 and 13 of the '032 Patent are Not Anticipated by Ogino .............29

    B.   Claims 14 and 15 of the '032 Patent are Not Obvious over Ogino and Chen
    II   35

    C.   Claims 1, 12-13, 15-16, and 19 of the '712 Patent are Not Anticipated by
    Konno..................................................................................................49

    D.   Claims 6 and 14 of the '712 Patent are not Obvious Over Konno and Bareau
    51

    E.   Claims 15-17 of the '712 patent are not Anticipated by Eggert ..................64

Appendix

Apple v. Corephotonics
Exhibit 2013
IPR2018-01146

Exhibit 2013 Page 2 of 113

over Konno in view of Bareau. It is also my professional and expert opinion that Eggert does not anticipate claims 15-17 of the '712 patent.

## III.    Educational and Employment Background

7.    As indicated in my Curriculum Vitae, attached as Exhibit 2002, I received my Ph. D. in Optics from the University of Rochester in New York in 1974. I also received an M.S. in Optics from the University of Rochester in 1970 and a B.A. in Physics from the University of Maine in 1969.

8.    As further described in my Curriculum Vitae, I am the Rudolf and Hilda Kingslake Professor of Optical Engineering at the University of Rochester, and have held that position since 1993. I have been a Professor at the Institute of Optics at the University of Rochester since 1986, and before that I held the titles of Assistant Professor and then Associate Professor at the Institute of Optics at the University of Rochester, starting in 1974. I have also served as Dean of the School of Engineering and Applied Sciences at the University of Rochester from 1995 to 1997. In all, I have conducted optics research and taught optics to both undergraduate and graduate students for more than 40 years.

9.    I also have extensive professional experience in the fields of optics and engineering. I worked for Western Electric Engineering Research Center from 1969-1971 where I was responsible for the design and fabrication of specialized lens systems. Beginning in 1971, I performed consulting and design services for gradient-

index lens systems and conventional lens systems. In 1980, I founded and became President of the Gradient Lens Corporation. From 1997-2000, I was an Associate Director of Technology at the White House Office of Science and Technology Policy. From 2002-2004, I was President and Chief Executive Officer of Infotonics Technology Center. My Curriculum Vitae (Exhibit 2002) details various other professional positions I have held in the fields of optics and engineering over the last 40 years.

10.     I have held several advisory positions, including Special Advisor to the Director, White House Office of Science and Technology Policy, Executive Office of the President in 2001 and Senior Science Advisor to the Optical Society of America from 2001 to 2003. I am a Fellow of the Optical Society of America, the International Society for Optical Engineering (SPIE), American Association for the Advancement of Science, IEEE and the American Institute for Medical and Biological Engineering for my work in optics. I was also the Chairman of the Hubble Space Telescope Independent Optical Review Panel for NASA from 1990 to 1991. This committee determined the correct prescription to repair the Hubble Telescope. I am currently the Chairman of the Product Integrity Team verifying the optics for the future replacement for the Hubble, the James Webb Telescope – which, unlike the Hubble, will not be serviceable.

11.     I have been awarded numerous honors over the course of my career including Election to the National Academy of Engineering (membership comprising 0.1% of all engineers in the U.S.), Engineer of the Year by Rochester Engineering Society, National Engineering Award from the American Association of Engineering Societies, Optical Society of America Leadership Award, the International Society for Optical Engineering (SPIE) Gold Medal, and the Edwin Land Medal of the Society for Imaging Science and Technology and the Optical Society of America (OSA).

12.     I have authored or co-authored almost 90 publications in the field of optics and I was an editor of several books on Optics. I have given over 150 presentations on optics. I am an inventor of 17 U.S. patents related to optics.

## IV.     Level of Ordinary Skill in the Art (POSITA)

13.     I understand that in evaluating the validity of the '032 patent and '712 patent claims, the content of a patent or printed publication prior art should be interpreted the way a person of ordinary skill in the art would have interpreted the prior art as of the effective filing date of these challenged patents.

14.     I understand that factors that may be considered in determining the level of ordinary skill in the art at the time of the effective filing date of the challenged patents include:  (1) the educational level of the inventor;  (2) type of problems encountered in the art;  (3) prior art solutions to those problems;  (4) rapidity with

which innovations are made;  (5) sophistication of the technology;  and (6) educational level of active workers in the field.

15.    In my opinion, a person of ordinary skill in the art (POSITA) of the '032 and '712 patents, at the time of the effective filing date, would have possessed an undergraduate degree in optical engineering, electrical engineering, or physics, with the equivalent of three years of experience in optical design.

16.    I understand that the '032 patent is a continuation of U.S. App. No. 14/367,294, filed as PCT App. No. PCT/IB2014/062465, which has the benefit of priority to U.S. Provisional App. No. 61/842,987, filed on July 4, 2013. *See* '032 IPR, Ex. 1001, 1. I understand that the '712 patent is a continuation of the application that issued as the '032 patent, and U.S. Provisional App. No. 61/842,987, filed on July 4, 2013. *See* '712 IPR, Ex. 1001, 1. I understand that the effective filing date of both the '032 and '712 patent is July 4, 2013. I note that Dr. Sasian appears to have applied this date in his analysis of the level of ordinary skill as well. '032 IPR, Ex. 1003, 8; '712 IPR, Ex. 1003, 9.

**V.      Relevant Legal Standards for Anticipation and Obviousness**

17.    I have been informed of the legal standards for establishing patent invalidity in *inter partes* review proceedings before the Patent Trial and Appeal Board.