# EXHIBIT S

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

APPLE INC.,
Petitioner,

v.

COREPHOTONICS LTD.,
Patent Owner

_____

U.S. Patent No. 10,330,897

**Declaration of José Sasián, Ph.D.
under 37 C.F.R. § 1.68**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................5

II.   QUALIFICATIONS AND PROFESSIONAL EXPERIENCE .....................8

III.  LEVEL OF ORDINARY SKILL IN THE ART ...........................................12

IV.  RELEVANT LEGAL STANDARDS ...........................................................13

    A.  Anticipation....................................................................................14

    B.  Obviousness ...................................................................................14

V.   OVERVIEW OF THE '897 PATENT ..........................................................15

    A.  Summary of the Patent..................................................................15

    B.  Priority Date of the '897 Patent ...................................................19

    C.  Prosecution History of the '897 Patent.......................................20

VI.  CLAIM CONSTRUCTION ..........................................................................21

VII. IDENTIFICATION OF HOW THE CLAIMS ARE UNPATENTABLE....22

    A.  Claims 1, 4, 9-15, 17, 20, and 25-29 are anticipated by Ogino. .............23

        1.  Summary of Ogino ...............................................................23

        2.  Detailed Analysis .................................................................26

    B.  Claims 2, 5, 6, 18, and 21-23 are obvious over the combination of Ogino and Bareau. ........................................................................54

        1.  Summary of Bareau...............................................................54

        2.  Reasons to combine Ogino and Bareau .........................................56

        3.  Detailed Analysis .................................................................61

    C.  Claims 3, 8, 19, and 24 are obvious over the combination of Ogino, Bareau, and Kingslake. ......................................................................67

        1.  Summary of Kingslake...........................................................67

- 2. Reasons to combine Ogino, Bareau, and Kingslake ...... 67
- 3. Detailed Analysis ...... 72

D. Claims 16 and 30 are obvious over the combination of Chen, Iwasaki, and Beich. ...... 76
  1. Summary of Chen ...... 76
  2. Summary of Iwasaki ...... 77
  3. Reasons to combine Chen and Iwasaki ...... 79
  4. Summary of Beich ...... 80
  5. Reasons to combine Chen and Beich ...... 82
  6. Detailed Analysis ...... 85

VIII. CONCLUSION ...... 100

IX. APPENDIX ...... 101

A. Ogino Example 5 using Zemax (v. 02/14/2011) ...... 101
  1. Fig. 1A – Ray Trace Diagram ...... 101
  2. Fig. 1B – Relative Illumination ...... 102
  3. Fig. 1C – Analysis ...... 103

B. Ogino Example 5 modified for F#=2.8 using Zemax (v. 02/14/2011) 104
  1. Fig. 2A – Ray Trace Diagram ...... 104
  2. Fig. 2B – Relative Illumination ...... 105
  3. Fig. 2C – Analysis ...... 106
  4. Fig. 2D – Prescription Data ...... 107

C. Ogino Example 5 modified for F#=2.45 using Zemax (v. 02/14/2011) ...... 108
  1. Fig. 3A – Ray Trace Diagram ...... 108

    2. Fig. 3B – Relative Illumination ................................................... 109

    3. Fig. 3C – Analysis ....................................................................... 110

    4. Fig. 3D – Prescription Data ........................................................ 111

  D. Chen Example 1 modified with 0.145 mm IR filter using Zemax (v. 02/14/2011) ............................................................................... 112

    1. Fig. 4A – Ray Trace Diagram ..................................................... 112

    2. Fig. 4B – Relative Illumination ................................................... 113

    3. Fig. 4C – Analysis ....................................................................... 114

    4. Fig. 4D – Prescription Data ........................................................ 115

    5. Fig. 4E – Edge Data .................................................................... 116

17.   My *curriculum vitae* (APPL-1004), includes a more detailed summary of my background, experience, and publications.

### III.   LEVEL OF ORDINARY SKILL IN THE ART

18.   I understand there are multiple factors relevant to determining the level of ordinary skill in the pertinent art, including (1) the levels of education and experience of persons working in the field at the time of the invention; (2) the sophistication of the technology; (3) the types of problems encountered in the field; and (4) the prior art solutions to those problems.

19.   I am familiar with multi-lens optical systems (including those found in portable devices such as mobile phones). I am also aware of the state of the art at the time the application resulting in the '897 Patent was filed. I have been informed by Apple's counsel that the earliest alleged priority date for the '897 Patent is July 4, 2013. Based on the technologies disclosed in the '897 Patent, I believe that a person having ordinary skill in the art ("POSITA") would include someone who had, at the priority date of the '897 Patent, (i) a Bachelor's degree in Physics, Optical Sciences, or equivalent training, as well as (ii) approximately three years of experience in designing multi-lens optical systems. Such a person would have had experience in analyzing, tolerancing, adjusting, and optimizing multi-lens systems for manufacturing, and would have been familiar with the specifications of lens systems and their fabrication. In addition, a POSITA

Sasián Decl. *Inter Partes* Review of U.S. 10,330,897

would have known how to use lens design software such as Codev, Oslo, or Zemax, and would have taken a lens design course or had equivalent training.

20. Lack of work experience could have been remedied by additional education, and vice versa. Such academic and industry experience would be necessary to appreciate what was obvious and/or anticipated in the industry and what a POSITA would have thought and understood at the time. Based on these criteria, as of the relevant time frame for the '897 Patent, I possessed at least such experience and knowledge of a POSITA. Some of my past students would have qualified as POSITAs, hence am qualified to opine on the '897 Patent.

21. For purposes of this Declaration, in general, and unless otherwise noted, my statements and opinions, such as those regarding my experience and the understanding of a POSITA generally (and specifically related to the references I consulted herein), reflect the knowledge that existed in the field as of July 4, 2013. Unless otherwise stated, my understanding and analysis below is consistent with the level of a POSITA prior to the priority date of the '897 Patent.

IV. **RELEVANT LEGAL STANDARDS**

22. I understand that prior art to the '897 Patent includes patents and printed publications in the relevant art that predate the priority date of the alleged invention recited in the '897 Patent. For purposes of this Declaration, I have been asked to apply July 4, 2013, the earliest alleged priority date, as the priority date