RUSS, AUGUST & KABAT
Marc A. Fenster, State Bar No. 181067
mfenster@raklaw.com
Benjamin T. Wang, State Bar No. 228712
bwang@raklaw.com
Brian D. Ledahl, State Bar No. 186579
bledahl@raklaw.com
Neil A. Rubin, State Bar No. 250761
nrubin@raklaw.com
James S. Tsuei, State Bar No. 285530
jtsuei@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
COREPHOTONICS, LTD.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| COREPHOTONICS, LTD.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>APPLE INC.<br><br>　　　　　Defendant. | Case No. 3:17-cv-06457-JD (Lead Case)<br>Case No. 3:18-cv-02555-JD<br><br>**COREPHOTONICS, LTD.'S REPLY CLAIM CONSTRUCTION BRIEF** |

Case No. 3:17-cv-06457-JD

**COREPHOTONICS' REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.   "Wide" / "Tele" ('291 patent, claims 1, 2, 4, 5, 10, 12, 13) ..................................................1

II.  "Fused" / "Fusion" (*'291 patent, claims 1, 12, 13*) and "fused output image" / "without fusion … output images" (*'291 patent, claims 1, 12, 13*) ..................................................4

III. "Fused output image of the object or scene from a particular point of view" (*'291 patent, claims 1, 12*) ..................................................6

IV.  "Image data" ('291 patent, claims 1, 2, 12) ..................................................8

V.   "Lens assembly" ('712 patent, claims 1, 12, 13, 15, 16, 19) ..................................................9

# TABLE OF AUTHORITIES

**Cases**

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
　895 F.3d 1374 (Fed. Cir. 2018) .................................................................................................. 10

*Fenner Investments, Ltd. v. Cellco Partn.*,
　778 F.3d 1320 (Fed. Cir. 2015) .................................................................................................... 2

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
　822 F.3d 1312 (Fed. Cir. 2016) .................................................................................................... 2

*Inpro II Licensing, S.A.R.L. v. T–Mobile USA Inc.*,
　450 F.3d 1350 (Fed. Cir. 2006) .................................................................................................... 9

*InterDigital Commun., LLC v. Intl. Trade Commn.*,
　690 F.3d 1318 (Fed. Cir. 2012) ................................................................................................ 1, 2

*JVW Enters. v. Interact Accessories, Inc.*,
　424 F.3d 1324 (Fed. Cir. 2005) .................................................................................................... 9

*Minerva Surgical, Inc. v. Hologic, Inc.*,
　No. 3:17-CV-02013-JD, 2018 WL 306689 (N.D. Cal. Jan. 5, 2018) ........................................... 9

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
　831 F.3d 1350 (Fed. Cir. 2016) .................................................................................................... 2

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
　442 F.3d 1331 (Fed. Cir. 2006) .................................................................................................... 9

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
　511 F.3d 1132 (Fed. Cir. 2007) .................................................................................................... 7

*Thorner v. Sony Computer Ent. Am. LLC*,
　669 F.3d 1362 (Fed. Cir. 2012) .................................................................................................... 9

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
　811 F.3d 1359 (Fed. Cir. 2016) .................................................................................................... 9

*U.S. Surgical Corp. v. Ethicon, Inc.*,
　103 F.3d 1554 (Fed. Cir. 1997) .................................................................................................... 1

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
　442 F.3d 1322 (Fed. Cir. 2006) .................................................................................................. 10

I.  **"Wide" / "Tele" ('291 patent, claims 1, 2, 4, 5, 10, 12, 13)**

The '291 patent specification and claims consistently define "Wide" and "Tele" in terms of the relative fields of view (FOV) (i.e., "zoom") of a pair of sub-cameras. '291 patent at 1:34–39, 2:10–11, 3:27–29 ("The Tele sub-camera is the higher zoom sub-camera and the Wide sub-camera is the lower zoom sub-camera"), 4:29–32, 5:47–38, 12:66–13:8, Fig. 2. Corephotonics' proposed constructions correctly reflect how the terms are used in the patent. *See* Hart Reply Decl. ¶¶ 7, 9. Nowhere does the '291 patent compare the FOV or focal length of the cameras to those of a "normal" camera, and nowhere does the patent define "Tele" in terms of TTL/EFL.

In some contexts, the terms "wide" and "tele" may be interchangeable with "wide-angle" and "telephoto." But the mere fact that words may be, to a degree, synonymous does not mean that the Court should construe claim terms by simply substituting them with their synonyms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is "not an obligatory exercise in redundancy.") The key dispute between the parties is not whether "tele" can be replaced by "telephoto" (or "wide" with "wide-angle"), but rather whether the further requirements that Apple seeks to impose, concerning TTL/EFL or "normal" lenses are properly part of the construction. They are not. In particular, none of Corephotonics' statements cited by Apple—in the '291 patent, before the PTAB, or in other briefs—suggest that "Wide" and "Tele," as used in the '291 patent, are defined in any way relative to a "normal" lens or terms of TTL/EFL.

The sole limitation that claim 6 adds over claim 1 is that the Tele lens TTL/EFL<1. '291 patent at 13:41–43. To construe "Tele" as Apple proposes would render claim 6 superfluous. As such, the doctrine of claim differentiation creates an "especially strong" presumption that the claim term Tele does ***not*** require a TTL/EFL<1. *InterDigital Commun., LLC v. Intl. Trade Commn.*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). *InterDigital* identified "definitional language in the patent or a clear disavowal of claim scope" as the types of "strong contrary evidence" that would be required to overcome the presumption, *id.* at 1324, and as in *InterDigital*, no evidence of this kind is present here. None of the cases cited by Apple suggest that the presumption of claim differentiation can be overcome by extrinsic evidence, itself showing multiple meanings of terms in the art, as Apple seeks to do here. *Fenner Investments, Ltd. v. Cellco Partn.*, 778 F.3d 1320, 1325–27 (Fed. Cir.

RUSS, AUGUST & KABAT

2015) (claim differentiation overcome by prosecution history disclaimer); *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360–61 (Fed. Cir. 2016) (claim differentiation overcome by clear language of independent claim and the "very strong presumption" concerning *Markush* groups); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016) (claim differentiation overcome by written description).

Apple's only intrinsic evidence is the specification's statement that the Tele lens TTL/EFL "may be" less than 1. '291 patent at 12:26–28. That does nothing to rebut the presumption that the feature expressly claimed in claim 6 is optional in claim 1. The statement that Apple quotes out of context from Corephotonics' prior claim construction brief (concerning different patents) does not define "telephoto." Rather, it states that the combination of relatively small TTL (making the lens thin) and large EFL (providing higher magnification) provides a suitable lens assembly for a telephoto camera in smartphone. Dkt. 96 at 2:24–26.

The only evidence that Apple cites that defines "telephoto" (not "tele") in terms of TTL and EFL is extrinsic, in the form of textbooks and its expert. Dkt. 150 at 4:3–18. *See* Hart Reply Decl. ¶ 8. But the sources also confirm that the definition of "telephoto" in terms of TTL and EFL is just one of several definitions. Ex. C at 49–50 (noting that it is "common practice with some manufacturers" to call any long focal length lens telephoto); Ex. H at 59 (distinguishing a "true" telephoto lens with TTL<EFL from other lenses also referred to as "telephoto"). As there is more than one meaning of "telephoto" in the art, the "especially strong presumption" of claim differentiation compels a construction that does not require TTL/EFL<1. *See InterDigital*, 690 F.3d at 1324. This is further supported by the fact that the '291 patent uses the more informal term "Tele" rather than the terms "telephoto" or "true telephoto" used by the textbook authors.

Other evidence cited by Apple likewise undermines its claim construction position. As Apple notes, the Corephotonics '840 patent speaks of "the telephoto condition (i.e., TTL<EFL)." Ex. F at 3:16–17. But, the same '840 patent also describes a "Tele lens[]" with a "typical TTL/EFL ratio of about 1.3" and computes the TTL of a "Tele" lens with such a TTL/EFL ratio. Ex. F at 2:38–41. If Apple were correct that "tele" necessarily means TTL/EFL<1, then describing a "Tele" lens with a ratio of 1.3 would be nonsensical.

As for the PTAB's statements concerning the '942 patent, the question the PTAB was addressing was how a POSITA would have understood certain prior art references, for an obviousness analysis. Ex. G at 69. The Board noted that the dispute was "not a matter of claim construction," found that the '942 patent's use of the term "tele" was not "dispositive," and declined to address the claim differentiation issue. Ex. G at 69–70. The Board's statements that Apple quotes are at best dicta, as the Board itself deemed the issue not "dispositive." Ex. G at 69. Unlike the PTAB, this Court *is* being asked to construe the term "Tele," and this Court must apply the doctrine of claim differentiation. Even accepting *arguendo* that the '291 specification does not "define" a tele lens or provide an explicit example of a tele lens with TTL/EFL>1, that would not justify importing limitations from claim 6 or preferred embodiments unto the construction of claim 1.

Apple's "alternative" proposals should also be rejected. Nothing in the '291 patent suggests a concept of a "normal" lens, or of comparing the EFL or FOV of a camera to human vision, as Apple's brief suggests doing. Dkt. 150 at 5–6. As one textbook cited by Apple notes, the "normal" focal length depends on the type of camera (Ex. AE at 42 (giving 50 mm and 150 mm lenses as examples of "normal" lenses for different cameras)), and even for a given type of camera, "[u]sage varies somewhat" as to what focal lengths are considered "normal" (*id.*). What is the "normal" EFL or FOV that a jury is meant to measure against in applying Apple's proposed construction to, for example, a mobile phone? The "normal" values for a traditional camera? For mobile phone cameras generally? For the specific model of phone in question? *See* Hart Reply Decl. ¶¶ 10, 12. Dr. Durand's declaration clearly illustrates the problem with Apple's construction. He states that a "normal" EFL is "approximately 50 or 55 mm" and further that a "telephoto" focal length is "approximately '> 85mm.'" Durand Decl. ¶¶ 88–89. But the '291 patent provides examples of Wide and Tele lens EFL values, for example "EFL=7 mm" (6:39–40) for the Tele camera. As interpreted by Dr. Durand, Apple's requirement that the Tele lens have an EFL longer than "normal" would exclude this lens and the other examples of Tele lenses in the '291 patent (12:25–37) from the claims. Apple's improper attempt to limit the claims based upon concepts from extrinsic sources that are foreign to—and indeed inconsistent with—the descriptions in the '291 patent should be rejected, and Corephotonics' constructions adopted.

## II. "Fused" / "Fusion" ('*291 patent, claims 1, 12, 13*) and "fused output image" / "without fusion … output images" ('*291 patent, claims 1, 12, 13*)

Apple's arguments based on the '291 patent's specification, embodiments, and the Border prior art fail to show "fusion" in the context of the '291 patent would be understood by a POSITA to be *limited* to producing output images which "include pixels" from their respective input images. Apple never explains why the patentees—despite being aware of the word "pixels" and actually using the same word not only in the specification but also in dependent claims of the '291 patent—required in the independent claims only that "fused output image" be provided by "combin[ing] … at least some of the Wide and Tele image data." Instead, Apple creates a tortured disclaimer argument using grossly mischaracterized quotations from Corephotonics' briefing and Dr. Hart's testimony in IPR2020-00905, in which Apple challenged U.S. Patent No. 10,225,479 ("'479 patent"). None of Apple's arguments support the "includes pixels" limitation it seeks.

First, Apple's reliance on examples in the '291 patent and the prior art of combining pixels between two images (Resp., at 7-9) misses the point. As Corephotonics said in its opening brief, "image fusion" *includes* the combining of pixels from one image with that of another. Corephotonics' point was that "fusion" is not *limited* to combining pixels, as shown in both the language of the patent specification and claims, and through Golan '366 and Shabtay '383. *See also Hart Reply Decl. ¶ 13* (discussing Dr. Durand's opinions regarding Border).

Apple simply ignores the limitation created by its incorrect proposed construction. It argues that the output images in Golan '366 and Shabtay '383 are also "fusion" images because, essentially, their creation *involved*, at some prior time**,** pixel-*related* data from two input images (*see* Resp. at 12-13), even though that pixel-related data has been processed, modified, altered, and/or transformed.  These arguments merely confirm that Apple's construction is incorrect as Apple is forced to contort its own proposed construction to fit these clear uses from the '291 patent. But the art in the intrinsic record is otherwise clear: it says that an "image fusion algorithm" may be fed "two images," to produce "one image" with 8 megapixels. Shabtay '383, at 9:9-19. Dr. Hart's explanation of Shabtay '383 is materially undisputed: Shabtay '383's 8-megapixel output image "includes" no "pixels" from either input image, because literally every "pixel" in that image is

created anew by using a probabilistic determination algorithm. Thus, such a "fused" image does not "include" pixels from either of the starting images, as Apple's construction would require.

Apple resorts to arguing that the phrase "includes pixels" in its proposal means something other than "includes pixels," Apple says, mysteriously, that "[n]othing in Apple's construction requires that the composite must have **unchanged** pixels from the Wide and Tele, only that the pixels must be **included** in creating the composite image." Resp. at 13:1-4. At a minimum, this argument confirms that Apple's construction is unclear and unhelpful to the trier of fact. Apple's argument also defies common sense and ordinary English usage. If someone restores an antique chair by replacing one of the legs, one could say that the resulting chair "includes" legs from the original. If, however, one photographed an antique chair and then manufactured an entirely new chair based on the photograph, no one would suggest that the new chair "includes" legs from the original. Apple's argument would say otherwise. Thus, in the context of Figure 5 of the '291 patent, Apple argues (incorrectly) that the resampled pixels based on Tele image pixels are all still "Tele image pixels," and thus the output image "includes pixels" of both Tele and Wide images. *See* Resp. at 11-12; Hart Reply Decl. ¶ 14. This argument requires redefining the word "includes" with some broader, meaning unexplained by Apple. Presumably, should the Court adopt Apple's confusing construction, Apple would later contend that "includes" requires inclusion of the original pixels. What Apple is really conceding is that the resulting image includes image data, not necessarily the original pixels, from both images. That, of course, is Corephotonics' proposed construction. A resampled image, like that resampled Tele image discussed in Figure 5, no longer includes the original pixels from the original data, but new pixels entirely.[1]

Second, in the face of this clear record evidence contradicting its construction, Apple argues that Corephotonics in the '479 patent IPR disavowed claim scope by affirmatively arguing that "fusion" is satisfied only where the output image "includes pixels" from both input images. *See* Resp., at 9-11. Corephotonics did not, and none of the statements and testimony selectively

---

[1] Tellingly, Apple says that, for Figure 5, "resampled Tele **data** includes the Tele **data**, and therefore … does indeed include pixels from the Tele and Wide images." Resp. at 12:10-15. That argument assumes the truth of its conclusion: that changing the pixels of a Tele image does not change their status as "Tele pixels."

quoted by Apple shows otherwise, much less an unequivocal and unmistakable surrender of claim scope. That would have been clear had Apple explained that: (1) unlike the '291 patent, the '479 patent claims challenged by Apple expressly require ***pixel-based fusion*** (Hart Reply Decl. ¶ 16); (2) Apple argued that Parulski teaches ***pixel-based fusion*** to meet the '479 patent's ***pixel-based fusion*** limitations (*id.* ¶¶17-19); and (3) Corephotonics rebutted Apple's argument by contending that Parulski ***does not teach the pixel-based fusion the '479 patent claims require*** (*id.*). Even abstracted away from the specific context of the arguments in the '479 patent IPR, the POPR language seized upon by Apple (Resp., at 14:3-4) simply says that "the use of one image to 'enhance' or 'focus' another does not teach 'fusing' two images No amount of argument can bend those words to mean that a disclaimer of all fusion techniques except those which produce output images which "include pixels" from their input images.

Apple's characterization of Dr. Hart's testimony (Resp., at 10:26-11:3) is similarly misleading. Hart Reply Decl. ¶ 15); That deposition testimony concerns the Figure 5 embodiment of the '479 patent (also the '291 patent's Figure 5). As Corephotonics explained in its opening brief, Figure 5 involves the combination of pixels from one camera with upsampled versions of pixels from the other: and that is exactly what Dr. Hart said: "Yes. ***It will use pixel values in the determination*** of the – it will – it will – ***it will look at the pixel values from both images in determining the pixel values of the output image***." Dr. Hart did not say that "fusion" requires "***including pixels***" from both input images in the output image, which is evident from Apple's brief itself. *Id.*

Finally, Apple tries to draw a distinction between "fusion" and the '291 patent's discussion of using "secondary information" like "white balance gain, exposure time, analog gain, and color correction matrix" to provide a smooth transition from one camera to the other during video mode. Resp. at 14-15. Such secondary information, Apple contends, would "fall within Corephotonics' incorrect construction of 'fusion' broadly covering combining any information from two imaging sections." *Id.* This argument ignores Corephotonics' actual proposed constructions, which require "combining image information from two images," not "information from two imaging sections."

### III. "Fused output image of the object or scene from a particular point of view" (*'291 patent, claims 1, 12*)

     For this term, Apple fails to articulate an affirmative position on the key issue: what "particular point of view" means in the context of the claims. Apple instead says that Corephotonics' proposal advances a "narrower" definition of "particular point of view" but, importantly, does not explain how Corephotonics' allegedly "narrow" definition differs from the plain and ordinary meaning of the term or what scope Apple's alluded-to "broader" definition encompasses but Corephotonics' proposal would not. No such explanation found in the declaration of Apple's expert, who does not discuss "point of view" at all. *Cf.* Dkt. 150-34.

     Apple also mischaracterizes the '291 patent's definitional statement about what "point of view" means (at '291 patent, 4:60-5:2) by contending it merely is an "open-ended, non-limiting proclamation[n]." Resp., at 16. Not so. The specification states that it is defining what "point of view" means with its discussion, without a qualifier or caveat: "This ***is*** referred to as point-of-view (POV)." *Id.*; *see also Sinorgchem Co., Shandong v. Int'l Trade Comm'n,* 511 F.3d 1132, 1136 (Fed. Cir. 2007) ("the word 'is,' again a term used here in the specification, may 'signify that a patentee is serving as its own lexicographer'" (citation omitted)). Apple's careful italicizing and bolding cannot change the specification or rewrite the part of the definitional passage that Apple's ignores: that if an object in an output image "retains the Wide image shape" and "Wide camera position," the image has the shape and perspective (position) POV of the Wide camera, and the "same applies for Tele images position and perspective." '291 patent, 4:60-5:2. The language excerpted at Resp., at 16:1-6, is clearly part of a definitional discussion when read in context: it means that an output image in a dual-camera system can have shape and/or position point of view of either camera, not that "particular point of view" does not require that a given image have the position ***and*** shape POV of either the Wide or Tele camera.

     Corephotonics' proposal is the only one which adds any clarity to a claim term in dispute, by making it clear that the "fused output image from a particular point of view" is an output image that combines Tele and Wide image data, which shows objects and scenes that have the position and shape as would be seen from the defined point of view of one of the Wide or Tele imaging section. It also follows the similar construction the PTAB issued under *Phillips* in IPR2020-00905 for "Wide POV": "Accordingly, we construe a fused image having a Wide POV to mean 'a fused

image having a Wide perspective POV *and* a Wide position POV.'" Ex. 11, at 12. Corephotonics' proposed construction, therefore, should be adopted.

### IV.     "Image data" ('291 patent, claims 1, 2, 12)

Apple provides no evidence showing that "image data" in the context of the '291 patent is limited to only that which "represents image pixels," nor does it even clarify what that construction might include or exclude. Its arguments have no merit.

First, Apple argues that the '291 patent "assumes pixelated sensors as a basic foundation for the claimed invention," which justifies limiting "image data" to only data which "represents image pixels." Resp. at 16-17. This, Apple continues, is supported by dependent claims 5 and 14, which recite "Wide sensor pixels" in their limitations. *Id.* at 17:3-5. Apple's argument, however, actually shows why its proposal is incorrect. It demonstrates that the patentees specifically used different words to convey differences in scope between two terms: *e.g.*, "Wide image data" in independent claim 1, and "Wide sensor pixels" in a dependent claim 5.

Second, Apple says in Response that data that "represents image pixels" ***includes*** luminance and intensity values on a per-pixel basis, and that its proposal "has no requirement that pixels are RGB values." Resp. at 17. But Apple does not dispute that a given pixel's luminance and intensity information, even if they are provided on a per-pixel basis, exist independently of that pixel's RGB values. By now arguing that its proposal includes the luminance and intensity data, Apple is tacitly admitting that its "data that represents image pixels" proposal is actually broader than it appears. Under Apple's arguments in Response, different kinds of data that are ***related*** to a pixel, including that pixel's RGB color values as well as that same pixel's luminance values, each independently are "image data" even if each alone could not be characterized as a "pixel."[2]

Notwithstanding Apple's effort to transmogrify the plain English meaning of its proposed construction, it still suffers from the ambiguity flowing from the word "represents." Apple's offers no definition of what it means for data to "represent" a pixel (except to say that, whatever it means,

---

[2] This is why Corephotonics discussed Dagher, in which the luminance channel and RGB values of a given image are treated separately and both described independently as "image data."

Case No. 3:17-cv-06457-JD        8
**COREPHOTONICS' REPLY CLAIM CONSTRUCTION BRIEF**

1  it includes the data Corephotonics mentioned). In contrast, Corephotonics' proposal of "data out-
2  put from an imaging section" suffers from no such ambiguity. Apple's objections to Corephoton-
3  ics' proposal are unsupported and speculative arguments that it could include "time/date data" and
4  "electromechanical settings," none of which Apple establishes are "data output from an imaging
5  section." Corephotonics' proposed construction should be adopted.

### V. "Lens assembly" ('712 patent, claims 1, 12, 13, 15, 16, 19)

Apple's response makes two points: the '712 patent's embodiments have five-lenses (Resp. at 19-20), and the specification allegedly establishes that the crucial "**key point**" of '712 patent's invention is that it "includes five lens elements" (*id.* at 18-19). Neither suggests that five lens elements is part of the definition of the generic term "lens assembly."

Courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005). "[U]nless required by the specification, limitations that do not otherwise appear in the claims should not be imported into the claims." *Minerva Surgical, Inc. v. Hologic, Inc.*, No. 3:17-CV-02013-JD, 2018 WL 306689, at *2 (N.D. Cal. Jan. 5, 2018) (Donato, J.) (citation omitted). There are "only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Apple identifies no evidence of lexicography or disclaimer sufficient to satisfy either condition.

A specification's embodiments can of course "shed light on the intended scope of the claims," as Apple says. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016). But that is so only where "the scope of the invention is clearly stated in the specification, and ***is described as the advantage and distinction of the invention***." *Id.* (quoting *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006)). *See Inpro II Licensing, S.A.R.L. v. T–Mobile USA Inc.*, 450 F.3d 1350, 1354–55 (Fed. Cir. 2006) (disclaimer where feature described as "***very important feature of the present invention***");

*Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1378 (Fed. Cir. 2018) (no disclaimer without evidence alleged feature was "***important, essential, or critical***").

That is why the sentences quoted by Apple from column 1 and the Abstract of the patent (Resp., at 18-19) remain insufficient: none of them say that the ***number of lenses*** is "the advantage and distinction of the invention" or even that it is an "important," "essential," or "critical" part of the "present invention." *See* Dkt. 148-11 ¶¶ 73. This is also apparent from the part of the specification—ignored by Apple—where the patentees disparaged an existing five-lens design. *See* '712 patent, 1:36-39 (criticizing the "five lens" design in U.S. Patent No. 8,395,851).

Most importantly, Apple fails to meaningfully address the contradiction between its proposal and the structure of the claims. Its cursory response, at Resp., 20:13-17, that the dependent claims describing fourth and fifth lens elements "does not diminish" its argument both begs the question and fails to analyze the claims themselves. *See* Dkt. 148-11 ¶¶ 71-72. Apple thus fails to provide explanations, much less adequate ones, for two basic questions posed by Corephotonics: if the patentees intended to define "lens assembly" as a five-element lens assembly, (1) why does claim 1 require only "a ***plurality of refractive lens elements***? (2) Why do dependent claims then say that "the plurality of lens elements ***further comprises***" additional fourth and fifth lens elements, instead of reciting "***the*** fourth lens element" and "***the*** fifth lens element" which Apple contends are already claimed in claim 1's "lens assembly"? The obvious answer is correct: the patentees did not intend "lens assembly" to be limited to five lens elements.[3]

Finally, Apple's argument for its alternative proposal with the "self-contained operational unit" language (Resp., at 19:21-27) raises more questions and answers none. Apple still fails to explain what "self-contained operational unit" means except to imply that such a unit would produce "a focused image." *Id.* at 19:24-25. This "focused image" limitation goes unsupported by any intrinsic or extrinsic evidence and should be rejected.

---

[3] Apple says "Corephotonics accuses Apple lenses that have six lens elements." Resp., at 20:1-2. That is irrelevant to ***how*** the claims should be construed. "[C]laims may not be construed with reference to the accused device." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330 (Fed. Cir. 2006). *Exigent Tech.* simply means a court is permitted to refer to the infringement case in determining ***what*** claim language to consider for construction.

| | |
|---|---|
| DATED:  October 21, 2022 | Respectfully submitted, |
| | RUSS AUGUST & KABAT |
| | By: */s/ James S. Tsuei* |
| | Marc A. Fenster (CA Bar No. 181067) |
| | Benjamin T. Wang (CA Bar No. 228712) |
| | Brian D. Ledahl (CA Bar No. 186579) |
| | Neil A. Rubin (CA Bar No. 250761) |
| | James S. Tsuei (CA Bar No. 285530) |
| | RUSS AUGUST & KABAT |
| | 12424 Wilshire Boulevard, 12th Floor |
| | Los Angeles, California  90025 |
| | Telephone: (310) 826-7474 |
| | Facsimile: (310) 826-6991 |
| | mfenster@raklaw.com |
| | bwang@raklaw.com |
| | bledahl@raklaw.com |
| | nrubin@raklaw.com |
| | jtsuei@raklaw.com |
| | Attorneys for Plaintiff |
| | Corephotonics, Ltd. |

**CERTIFICATE OF SERVICE**

I certify that counsel of record who are deemed to have consented to electronic service are being served on October 21, 2022, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

/s/ James S. Tsuei