COOLEY LLP
HEIDI KEEFE (178960)
(HKEEFE@COOLEY.COM)
LOWELL MEAD (223989)
(LMEAD@COOLEY.COM)
PRIYA VISWANATH (238089)
(PVISWANATH@COOLEY.COM)
3175 HANOVER STREET
PALO ALTO, CA 94304
TELEPHONE: (650) 843-5000
FACSIMILE: (650) 849-7400

COOLEY LLP
STEPHEN SMITH (*PRO HAC VICE)*
STEPHEN.SMITH@COOLEY.COM
PHILLIP MORTON (*PRO HAC VICE)*
(PMORTON@COOLEY.COM)
1299 PENNSYLVANIA AVENUE
NW, SUITE 700
WASHINGTON, DC 20004-2400
TELEPHONE: (202) 842-7800
FACSIMILE: (202) 842-7899

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

COREPHOTONICS, LTD.,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

**APPLE'S RESPONSIVE SUPPLEMENTAL BRIEF RE CLAIM CONSTRUCTION**

Date: October 5, 2023
Time: 10:00 a.m.
Courtroom: 11
Judge: Hon. James Donato

**DEMAND FOR JURY TRIAL**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................II
II. THIS NEWLY-ARISEN CLAIM CONSTRUCTION DISPUTE IS RIPE FOR DECISION. ................................................................. 1
III. COREPHOTONICS DISCLAIMED CLAIM SCOPE BY REQUESTING THAT THE EXAMINER CONFIRM THE CLAIMS UNDER THE MEANS-PLUS-FUNCTION CONSTRUCTION. ................................................ 1
IV. COLLATERAL ESTOPPEL FORECLOSES COREPHOTONICS' CHANGE IN POSITION. ................................................................. 3
V. THE "CAMERA CONTROLLER" ELEMENT IS A MEANS-PLUS-FUNCTION ELEMENT. ................................................................. 7
A. The "Camera Controller" Is a Means-Plus-Function Element. ........................ 7
B. The Corresponding Structures Are Algorithmic Steps. ............................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007)....10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788 (Fed. Cir. 2016)....10

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090 (Fed. Cir. 2013)....2, 3, 6

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004)....2

*In re CSB-System Int'l, Inc.*, 832 F.3d 1335 (Fed. Cir. 2016)....4

*Dyfan, LLC v. Target Corp.*, 28 F.4th 1360 (Fed. Cir. 2022)....9

*Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367 (Fed. Cir. 2020)....7, 8, 9

*GPNE Corp. v. Apple Inc.*, 830 F.3d 1365 (Fed. Cir. 2016)....1

*Infinity Comput. Prods., Inc. v. Oki Data Am., Inc.*, 987 F.3d 1053 (Fed. Cir. 2021)....2

*Kyocera Senco Indus., Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369 (Fed. Cir. 2022)....7

*Maxlinear, Inc. v. CF Crespe LLC*, 880 F.3d 1373 (Fed. Cir. 2018)....5

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, 2018 WL 4616255 (N.D. Cal. Sept. 26, 2018)....1

*MTD Prods. Inc. v. Iancu*, 933 F.3d 1336 (Fed. Cir. 2019)....7, 8

*Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350 (Fed. Cir. 2018)....3

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)........1

*Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333 (Fed. Cir. 2013)........3

*Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261 (Fed. Cir. 1999)........10

*SandBox Logistics LLC v. Proppant Express Invs. LLC*, 813 F. App'x 548 (Fed. Cir. 2020)........3

*SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373 (Fed. Cir. 2016)........6

*Sony Corp. v. Iancu*, 924 F.3d 1235 (Fed. Cir. 2019)........9

*SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373 (Fed. Cir. 2021)........3

*SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341 (Fed. Cir. 2021)........4, 5, 6

*TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322 (Fed. Cir. 2003)........2

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010)........4

**Statutes**

35 U.S.C. § 112(f)........2, 3, 9

**Other Authorities**

Manual of Patent Examining Procedure § 2258........5

## I. INTRODUCTION

After successfully urging the Patent Office to confirm the '291 claims based on a means-plus-function ("MPF") construction, Corephotonics cannot now argue a contrary position to this Court. The Court should adopt the MPF interpretation for multiple reasons demonstrated by the record here.

## II. THIS NEWLY-ARISEN CLAIM CONSTRUCTION DISPUTE IS RIPE FOR DECISION.

This claim construction issue is ripe for decision because it arises from intrinsic evidence newly created starting in December 2022, after the parties' original claim construction submissions and Apple's prior submissions to the Patent Office. (*See* Dkt. 171 at 4-5.) "[C]laim construction disputes that arise before trial are not waived when both parties and the court are aware of the dispute." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, 2018 WL 4616255, at *5-6 (N.D. Cal. Sept. 26, 2018) (conducting supplemental claim construction based on reexamination after original *Markman* ruling—where "the file history changed as a result of the *ex parte* reexamination and there is an actual dispute between the parties, the Court must reconsider claim construction."); *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371-72 (Fed. Cir. 2016) (holding that party did not waive claim construction dispute it argued during trial "before the case went to the jury").

Corephotonics does not cite any authority supporting its erroneous position that the Court and parties cannot consider this newly-created record in claim construction—particularly where, as here, fact discovery is open, Corephotonics newly created the issue, the Court has not conducted a *Markman* hearing, and the Court ordered supplemental briefing on this issue. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008).

## III. COREPHOTONICS DISCLAIMED CLAIM SCOPE BY REQUESTING THAT THE EXAMINER CONFIRM THE CLAIMS UNDER THE MEANS-PLUS-FUNCTION CONSTRUCTION.

Corephotonics disclaimed claim scope by embracing the means-plus-function ("MPF") claim construction the Patent Office articulated and relied upon to confirm the claims over the prior art. "Patent examination would serve little purpose unless the scope of the exclusive patent right correlated with the matter allowed by the PTO. Accordingly, in ascertaining the scope of an issued patent, the public is entitled to equate an inventor's acquiescence to the examiner's narrow view of patentable

subject matter with abandonment of the rest. Such acquiescence may be found where the patentee . . . lets stand an examiner's restrictive interpretation of a claim." *TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003) (citation omitted).

Here, the examiner determined that the "camera controller" in '291 claim 1 is a MPF element and advised: "***If Patent Owner does not intend to have any of these limitations interpreted under 35 U.S.C. § 112(f), Patent Owner may***: (1) amend the claim limitation(s) to avoid it/them being interpreted under 35 U.S.C. § 112(f) (e.g., by reciting sufficient structure to perform the claimed functions, or (2) present a sufficient showing that the claim limitation recites sufficient structure to perform the claimed function so as to avoid it being interpreted under 35 U.S.C. § 112(f)." (*Id*. Ex. A at 4-9, 6 (emphasis added).) The examiner determined that claim 1 and its dependent claims were not invalid over prior art based solely on the ground that those claims are MPF. (*Id*. 15-18.) The Office Action found the same prior art invalidated analogous method claims that are not MPF but otherwise recite substantially the same functions. (*Id*. at 9-14.)

In response, Corephotonics canceled the method claims that had been found non-MPF and thus invalid, and it let stand the examiner's MPF interpretation of claim 1 without amending the claims or raising any showing to avoid MPF interpretation, as expressly instructed by the Patent Office. (Ex. B.) "If an applicant chooses, she can challenge an examiner's characterization in order to avoid any chance for disclaimer, but the applicants in this case did not directly challenge the examiner's characterization." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1096-97 (Fed. Cir. 2013) (citing *TorPharm*, 336 F.3d at 1330) (finding disclaimer where applicants sought allowance after examiner's interpretation).[1] Moreover, Corephotonics affirmatively asked the Patent Office to confirm the claims' validity based on that interpretation: "***Patent Owner respectfully requests that the Office terminate the instant reexamination and issue a reexamination certificate confirming the validity of claims 1-7, 10-11, and 14 of the '291 Patent***." (Ex. B at 9 (emphasis added).) The MPF interpretation was the only stated basis to confirm those claims, and the examiner relied on it, including

[1] Disclaimer may arise equally during original prosecution and *ex parte* reexamination. *E.g.*, *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 868-70 (Fed. Cir. 2004); *Infinity Comput. Prods., Inc. v. Oki Data Am., Inc.*, 987 F.3d 1053, 1059 (Fed. Cir. 2021).

specific corresponding algorithms, to distinguish the same prior art that invalidated the method claims. (Ex. A at 15-18.) Therefore, by asking the Patent Office to confirm those claims, Corephotonics necessarily asked the Patent Office to confirm them based on the MPF interpretation, "rather than challenging the examiner's understanding of the crucial terms." *Biogen*, 713 F.3d at 1096-97. Corephotonics's "failure to challenge the Examiner's understanding amounts to a disclaimer." *SandBox Logistics LLC v. Proppant Express Invs. LLC*, 813 F. App'x 548, 554 (Fed. Cir. 2020) (disclaimer by pursuing claims relying on examiner's interpretation) (citing *Biogen* and *TorPharm*).

Corephotonics cannot meaningfully dispute these points. It is immaterial that it stated that it purportedly "reserves all rights and objections" (Suppl. Br. at 4, Ex. B at 7) because the Patent Office had mandated what Corephotonics needed to do in its response if it "does not intend to have any of these limitations interpreted under 35 U.S.C. § 112(f)": either amend the claims or demonstrate why MPF does not apply. (Ex. A at 4-9.) Corephotonics elected not to do so. Corephotonics thus abandoned any broader claim scope when it decided not to challenge the MPF construction and affirmatively asked the Patent Office to confirm the claims based on that MPF construction. *Biogen,* 713 F.3d at 1096-97; *SandBox*, 813 F. App'x at 554. Claims cannot be "construed one way in order to obtain their allowance and in a different way against accused infringers." *SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373, 1380 (Fed. Cir. 2021) (citation omitted).

## IV. COLLATERAL ESTOPPEL FORECLOSES COREPHOTONICS' CHANGE IN POSITION.

Collateral estoppel provides a separate and independent basis supporting MPF construction. "Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Contrary to Corephotonics's misstatement (Suppl. Br. at 4-5), this patent-specific issue is governed by Federal Circuit precedent, not regional Ninth Circuit precedent. *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351 (Fed. Cir. 2018) ("We apply our precedent on collateral estoppel when claim construction is involved."). All four collateral estoppel factors apply here: (1) the issue is identical, (2) the issue was actually litigated, (3) resolution of the issue was essential to the first proceeding, and (4) Corephotonics had a full and fair opportunity to litigate the issue. *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1353 (Fed. Cir. 2021).

For factor (1), the issue is the same: claim construction of the "camera controller" element. Corephotonics is not saved by invoking the "broadest reasonable interpretation" ("BRI") standard used in reexamination. (Suppl. Br. at 4-5.) If the *broadest* reasonable interpretation is a MPF construction (which *narrows* the claim scope by limiting it to the specific algorithmic structures in the specification), then the construction under *Phillips*, by definition, *cannot* be any broader than the MPF construction. The "construction of [a] term under the BRI standard cannot be narrower than that under the *Phillips* standard"—"if anything, the *Phillips* standard would result in a more *narrow* claim scope." *In re CSB-System Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) (emphasis in original) (citation omitted). Here, the BRI is a MPF construction, so the construction under *Phillips* must also be MPF because the *Phillips* construction cannot be broader than the BRI. Corephotonics's broader "plain and ordinary meaning" position (Suppl. Br. at 3-4) is meritless and foreclosed by the record.

Moreover, "an 'issue' must be understood broadly enough 'to prevent repetitious litigation of what is *essentially* the same dispute.'" *SynQor*, 988 F.3d at 1353 (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015)) (emphasis by Federal Circuit). Both the Patent Office and this Court address essentially the same question: how to construe the "camera controller" element. The answer is the same here under either standard. "In many cases, the claim construction will be the same under the *Phillips* and BRI standards," as it is here. *In re CSB-System*, 832 F.3d at 1341; *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311-12 (Fed. Cir. 2010) (applying collateral estoppel and rejecting argument that "the issues are not identical" between prior non-infringement ruling in denial of injunction and current non-infringement assessment in a subsequent litigation "because there are differences in the facts and the legal standards"— "Although it is true that the [prior] court performed its analysis in the context of an injunction, it determined that the modified rig did not infringe.").

The remaining three factors likewise favor application of collateral estoppel because the Patent Office is an adjudicative tribunal. The examiner expressly raised the issue for determination and invited Corephotonics to address it specifically (and thus the issue was actually litigated, factor 2); the confirmation of the claims was based solely on the MPF construction (and thus the issue was essential the judgment, factor 3); and the examiner directed Corephotonics to either amend the claims or argue

against MPF construction if it did not intend MPF construction, and it voluntarily chose not to do either (so it had a "full and fair" opportunity to litigate the issue, factor 4). *SynQor*, 988 F.3d at 1353. "It is well established that collateral estoppel, also known as issue preclusion, applies in the administrative context." *Maxlinear, Inc. v. CF Crespe LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018). The Federal Circuit has held that Patent Office decisions in *inter partes* reexamination give rise to collateral estoppel. *SynQor*, 988 F.3d at 1349-53 ("common law collateral estoppel applies to *inter partes* reexaminations"). The same principles fully support collateral estoppel arising against Corephotonics on the specific facts and circumstances in this case. *Id*. at 1347 (evaluating whether "the elements of collateral estoppel are met in the specific factual circumstances here"). The courts apply a "lenient presumption in favor of administrative estoppel." *Id*. (citation omitted). "[T]he decisions of the Patent and Trademark Office . . . represent the considered judgment of an expert agency." *Id*. at 1351 (citation and internal quotation marks omitted).

All five "non-exclusive factors" considered in evaluating an agency decision support treating the Patent Office's decision here as a binding adjudication, consistent with the *inter partes* reexamination proceeding in *SynQor*. *Id*. at 1349 (listing five factors). First, Corephotonics had "[a]dequate notice" of the claim construction issue. *Id*. Second, it had the right to "present evidence and legal argument" to respond to the MPF determination. *Id*. Indeed, Corephotonics could have submitted to the Patent Office the same substantive arguments, expert opinions, and other evidence it now submits to this Court, but it chose not to, instead favoring getting the claims confirmed. (*E.g.*, Manual of Patent Examining Procedure § 2258.) Third, the issues of law and fact and "application of rules" were all fully formulated, as the examiner explained under well-established Patent Office rules and procedures. *SynQor*, 988 F.3d at 1349. Fourth, a "rule of finality" existed and was explicitly addressed. *Id*. The examiner directed Corephotonics that if it intended to avoid MPF construction, it needed to provide a substantive rebuttal or amendment. (Ex. A at 6.) Corephotonics chose not to rebut the MPF construction and instead urged the Patent Office to "terminate" the reexamination by confirming the claims based on that construction. (Ex. B at 9.) Fifth, the "catch-all" consideration of "procedural elements" fully supports issue-preclusive finality here. *SynQor*, 988 F.3d at 1349. Claim construction is an issue of law, and Corephotonics had full incentive and opportunity to present its

position to the Patent Office. Indeed, if anything, the procedural posture was more favorable to Corephotonics at the Patent Office. Corephotonics could have argued against MPF applying and raised any other arguments to attempt to distinguish the prior art, but it chose not to do so in order to get its claims confirmed expeditiously. It must now live with the consequences of that choice.

The *SkyHawke* case cited by Corephotonics is distinguishable. (Suppl. Br. at 6, citing *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1375-76 (Fed. Cir. 2016).) There, in an *inter partes* reexamination, the Patent Trial & Appeals Board (PTAB) determined a MPF construction with certain corresponding structures, ***which the patent owner disputed***. *SkyHawke*, 828 F.3d at 1375. The PTAB confirmed the claims applying that MPF construction, ***over the patent owner's opposition***. *Id*. The patent owner then appealed the PTAB's ruling to the Federal Circuit, seeking "[c]orrection of the PTAB's claim construction" as "an erroneous, overly-narrow claim construction." *Id*. The Federal Circuit dismissed the appeal for lack of standing because the patent owner's claims had been confirmed, such that it was the prevailing party at the PTAB. *Id*. at 1375-76.

*SkyHawke* is inapposite because the patent owner in that case, unlike Corephotonics here, affirmatively opposed the Patent Office's claim construction. As the Federal Circuit stated, "the claim construction adopted by the Board cannot create prosecution history disclaimer, at least because ***a party can avoid such disclaimer by opposing such statements when made by the Patent Office . . . which SkyHawke has done here***." *Id*. at 1376 (citing *Biogen*, 713 F.3d at 1096) (emphasis added). By contrast here, the Patent Office expressly instructed Corephotonics that if it opposed the MPF construction, it needed to raise its opposition at that time, in response to the Examiner's action. (Ex. A at 6.) Corephotonics, unlike the patentee in *SkyHawke*, never opposed the Patent Office's MPF construction. *Biogen*, 713 F.3d at 1096.

In addition, *SkyHawke* held that collateral estoppel did not apply in that case because the patent owner had no standing to appeal the PTAB decision, nullifying any "preclusive effect." *SkyHawke*, 828 F.3d at 1376. Here, collateral estoppel applies because Corephotonics successfully urged the Patent Office to "terminate" based on the MPF construction. If Corephotonics had disputed the MPF construction and proceeded with the reexamination, it could have avoided any disclaimer and could have appealed any adverse result. But it chose not to, thus giving rise to no issues for appeal.

## V. THE "CAMERA CONTROLLER" ELEMENT IS A MEANS-PLUS-FUNCTION ELEMENT.

### A. The "Camera Controller" Is a Means-Plus-Function Element.

On the merits, a MPF construction is correct. A claim element should be construed as means-plus-function if it "either fails to recite sufficiently definite structure or recites function without reciting sufficient structure for performing that function." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) (citation and internal quotation marks omitted).

"In assessing whether the claim limitation is in means-plus-function format, we do not merely consider the introductory phrase . . . in isolation, but look to the entire passage including functions performed by the introductory phrase." *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1342 (Fed. Cir. 2019) (citation omitted). Here, "the surrounding claim language does not describe any structural detail about" the "camera controller." *Kyocera Senco Indus., Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1380 (Fed. Cir. 2022). Claim 1 recites "a camera controller operatively coupled to the Wide and Tele imaging sections, the camera controller configured to" perform a lengthy recited function. ('291, claim 1.) All 115 words after "configured to" are pure function with no reference to structure. (*See id.*) (Supplemental Declaration of Dr. Frédo Durand ("Suppl. Durand Decl."), ¶¶ 18-21.)

Contrary to Corephotonics's assertions, it is immaterial that the camera controller is "operatively coupled" to imaging sections, because that bare recitation provides no detail about any structure inside the "camera controller" that would be necessary to perform the recited function. (Suppl. Durand Decl., ¶ 21.) *MTD Prods.*, 933 F.3d at 1343 ("While the claim language reciting that the mechanical control assembly is 'coupled to the left and right drive units' connotes structure, the claim language reciting what the mechanical control assembly is 'configured to' do is functional."). "In this respect, as the [Patent Office] correctly recognized, the claim format tends to favor [the] position that § 112, ¶ 6 applies." *Id.*

In addition, "[c]laims are interpreted in light of the written description supporting them, and that is true whether or not the claim construction involves interpreting a 'means' clause." *MTD Prods.*, 933 F.3d at 1342-44 ("the specification plays a role in assessing whether particular claim language invokes § 112, ¶ 6") (citation omitted). Here, the '291 patent uses the term "controller" merely as a label for a set of functions performed in a "camera fusion processing core": "Camera 100 further

comprises ***a camera fusion processing core (also referred to as 'controller') 114*** that includes a sensor control module 116, a user control module 118, a video processing module 126 and a capture processing module 128, all operationally coupled to sensor control block 110." '291, 6:10-15 (emphasis added); *id*., Fig. 1A ("Camera Controller 114" containing modules). (Suppl. Durand Decl., ¶¶ 10-17.) Corephotonics's expert admits that the "camera fusion processing core" corresponds to the claimed "camera controller." (Hart Decl., ¶¶ 18, 21.)

Furthermore, as the Examiner correctly determined—and Corephotonics has not disputed—"[t]he Camera Controller 114 is not disclosed as having any particular physical structure, except that it includes the various modules 116, 118, 126, and 128, which modules are also not disclosed as having any particular physical structure," and there is no description that "the Camera Controller 114 includes a particular physical structure or arrangement that enables the camera controller to execute the claimed functions." (Ex. A at 7; Suppl. Durand Decl., ¶ 13.) Thus, the "camera controller" does not adopt a preexisting structural meaning—instead, it "merely operates as a generic label for a collection of parts." *MTD Prods.*, 933 F.3d at 1343-44. As used here, it is "no more than a 'black box recitation of structure' that is simply a generic substitute for 'means.'" *Egenera*, 972 F.3d at 1375 (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015)).

Corephotonics's citations to extrinsic evidence and case law on the terms "controller" and "camera controller" (Suppl. Br. at 7-9) (all of which it could have made at the Patent Office but did not) are inapposite in view of the '291 patent's teaching that this language is merely a label for a set of functions. It is irrelevant whether "(camera) controller" might have a structural meaning outside of this patent because this patent does not borrow any such meaning. (Suppl. Durand Decl., ¶¶ 14-17.)

Finally, assuming *arguendo* that the '291 patent borrowed a preexisting structural meaning of "(camera) controller" (which it does not), such structure would not be sufficient *to perform the recited function*, which requires fusing Wide/Tele data in still mode while providing a continuous zoom video mode without fusion. ('291, claim 1.) "[T]he presumption against means-plus-function claiming is not 'strong' and . . . a challenger need not show that the limitation is 'essentially . . . devoid of anything that can be construed as structure.' Rather, a challenger need only show that the structure is not 'sufficient.'" *Egenera*, 972 F.3d at 1373 (citation omitted) (quoting *Williamson,* 792 F.3d at 1348 (en

banc)). "The question is not whether a claim term recites *any* structure but whether it recites *sufficient* structure—a claim term is subject to § 112(f) if it recites 'function without reciting sufficient structure *for performing that function*.'" *Id*. at 1374 (emphasis in original) (quoting *Williamson*, 792 F.3d at 1348).

Corephotonics does not contend that the term "camera controller" by itself connotes sufficient structure *for performing the recited function*, as it does not. (Suppl. Durand Decl., ¶¶ 18-23.) Merely referencing a generic, off-the-shelf "camera controller" does not provide sufficient structure for combining Wide and Tele image data to provide a fused image in still mode while not fusing in video mode. (*Id*.) Indeed, the '291 patent asserts that fusing Wide and Tele data in still mode, but not fusing in video mode, is a key point of novelty not found in the prior art. ('291, 3:7-13.) By contrast, *Dyfan* is distinguishable because the evidence there showed "the availability of off-the-shelf code to perform the recited claim functions" such that "the recited functions can be performed by conventional off-the-shelf software." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1368-69 (Fed. Cir. 2022).

**B. The Corresponding Structures Are Algorithmic Steps.**

The final inquiry is to "determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Egenera*, 972 F.3d at 1373. For functions implemented by a general purpose computer or processor, "the corresponding structure must include an algorithm." *Sony Corp. v. Iancu*, 924 F.3d 1235, 1240-41 (Fed. Cir. 2019). Here, the function is what the camera controller is "configured to" do: "to combine in still mode at least some of the Wide and Tele image data to provide a fused output image of the object or scene from a particular point of view and to provide without fusion continuous zoom video mode output images of the object or scene, each output image having a respective output resolution; wherein the video output images are provided with a smooth transition when switching between a lower zoom factor (ZF) value and a higher ZF value or vice versa, wherein at the lower ZF value the output resolution is determined by the Wide sensor, and wherein at the higher ZF value the output resolution is determined by the Tele sensor." ('291, claim 1.) (Suppl. Durand Decl., ¶ 20.) The Patent Office identified this same function. (Ex. A at 7.)

The function can be considered in two portions. First is a "still mode" portion that combines Wide and Tele image data to provide a fused output image. Second is a "video mode" portion that

operates "without fusion" and provides a "smooth transition" when switching between lower and higher zoom factor (ZF) values. The "still mode" portion corresponds with **steps 504-512 in Figure 5 and corresponding text at col. 9:15-44** for combining Wide and Tele image data to provide a fused output image. (Suppl. Durand Decl., ¶¶ 29-34 ; Ex. A at 8, '291, 9:15-44.) The "video mode" portion corresponds with **Figure 6 and its corresponding text at col. 11:6-12:11**, providing the "video mode" algorithm including the smooth transition that relies on "hysteresis" when transitioning between sensors at two different ZF values. (Suppl. Durand Decl., ¶ 32-34; Ex. A at 8; '291, 11:6-12:11.) The Patent Office identified these same corresponding structures. (Ex. A at 8.) The structure includes the corresponding textual description providing details about each algorithmic step identified in Figures 5 and 6, such as the hysteresis feature. (Suppl. Durand Decl., ¶¶ 30, 32; Ex. at 8.) *E.g.*, *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245-46 (Fed. Cir. 2007) (figures plus textual description provided the algorithmic structure); *Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1271-73 (Fed. Cir. 1999) (same).

Corephotonics presents no basis to find otherwise. First, it should be bound to the Patent Office's construction through disclaimer and collateral estoppel. Indeed, the Patent Office specifically instructed that if Corephotonics wished to "dispute the Examiner's interpretation of the corresponding structure, Patent Owner must identify the corresponding structure . . . in response to this Office action." (Ex. A at 8-9.) It did not. On the merits, Corephotonics acknowledges that the function corresponds with Figs. 5 and 6 and their corresponding "disclosures in the specification" in columns 9 and 11, but it errs beyond that. (Suppl. Br. at 10.) Critically, Corephotonics erroneously contends that "any [disjunctive] combination" of cited disclosures would suffice, which would allow, for example, only Fig. 5 (still mode) alone, Fig. 6 (video mode) alone, the corresponding text alone, *or* some subset thereof alone, to suffice as the structure. (*Id.*) The recited function, however, requires structure corresponding to *both* still mode *and* video mode, including ***all*** corresponding algorithm disclosures. (Suppl. Durand Decl., ¶ 37.) *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788, 814 (Fed. Cir. 2016) ("must include all structure that actually performs the recited function").

Dated: August 7, 2023

COOLEY LLP


*/s/ Heidi Keefe*
HEIDI KEEFE (178960)
(hkeefe@cooley.com)
LOWELL MEAD (223989)
(lmead@cooley.com)
PRIYA B. VISWANATH (238089)
(pviswanath@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
STEPHEN SMITH (*pro hac vice)*
stephen.smith@cooley.com
PHILLIP MORTON (*pro hac vice)*
(pmorton@cooley.com)
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899


*Attorneys for Defendant Apple Inc.*