RUSS, AUGUST & KABAT
Marc A. Fenster, State Bar No. 181067
mfenster@raklaw.com
Benjamin T. Wang, State Bar No. 228712
bwang@raklaw.com
Neil A. Rubin, State Bar No. 250761
nrubin@raklaw.com
James S. Tsuei, State Bar No. 285530
jtsuei@raklaw.com
Peter Tong, State Bar No. 300347
ptong@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
COREPHOTONICS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREPHOTONICS, LTD.<br><br>         Plaintiff,<br><br>vs.<br><br>APPLE INC.<br><br>         Defendant. | Case No. 3:17-cv-06457-JD (Lead Case)<br>Case No. 5:18-cv-02555-JD<br><br>**COREPHOTONICS, LTD.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Hearing: September 21, 2023<br>Time: 10:00 AM<br>Courtroom: 11<br>Before: Hon. James Donato |

**TABLE OF CONTENTS**

I.   The Lack Of Prejudice Against Apple is Dispositive ....................................1

II.  Testing For Infringement Took Months Due to Difficulty ............................1

III. Apple's Other Arguments Have No Merit ......................................................3

IV.  Conclusion........................................................................................................4

# TABLE OF AUTHORITIES

**Cases**

*Biogenex Lab'ys, Inc. v. Ventana Med. Sys., Inc.*,
   No. C-05-860-JF, 2005 WL 1869342 (N.D. Cal. Aug. 5, 2005) ....................................... 4

*Gillig v. Nike, Inc.*,
   602 F.3d 1354 (Fed. Cir. 2010)........................................................................................ 4

*Impinj, Inc. v. NXP USA, Inc.*,
   No. 19-CV-03161-YGR, 2022 WL 2125133 (N.D. Cal. Mar. 4, 2022)............................ 1

*Inguran, LLC v. ABS Global, Inc.*,
   72 F.4th 1272 (Fed. Cir. 2023) ........................................................................................ 4

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
   No. 14-CV-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016)..................... 1

## I. THE LACK OF PREJUDICE AGAINST APPLE IS DISPOSITIVE

Apple effectively concedes it would suffer no unfair prejudice if the Court grants Corephotonics' Motion for Leave to Amend Infringement Contentions to add the iPhone 14 Series. Dkt. 179 (hereinafter "Motion to Amend"); Dkt. 181 at 6 (Apple avoiding argument) (hereinafter "Opposition"). Under such circumstances, the Court can simply grant the motion given the undisputed lack of prejudice to Apple. "[T]he court retains discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice to the opposing party. *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016) (citations omitted); *see also Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125133, at *1 (N.D. Cal. Mar. 4, 2022) ("Here, the Court need not determine whether [movant] was diligent because since there is no prejudice to NXP that requires denying by granting amendment, the Court finds good cause to grant [movant's] request").

Apple's other arguments opposing the Motion rest on unsound reasoning or factual misunderstandings.

## II. TESTING FOR INFRINGEMENT TOOK MONTHS DUE TO DIFFICULTY

Despite ongoing national protests and civil unrest in Israel, Corephotonics diligently and extensively tested the iPhone 14 Series for infringement between October 2022 through April 2023. Corephotonics worked to add the iPhone 14 series as fast as it reasonably could so that Corephotonics could enforce its patent rights based on a well-founded belief of Apple's infringement.

Testing proved difficult and time consuming for reasons overlooked or ignored in Apple's Opposition. Claim 1 of asserted Patent 9,185,291 requires, in part, that "to combine in still mode at least some of the Wide and Tele image data to *provide a fused output image* of the object or scene … and to provide without fusion continuous zoom video mode output images of the object or scene." Detecting infringement of this element proved difficult and time consuming because, among other things, the image fusion techniques used in Apple's products are, by design, intended to be performed invisibly and in a way that is unnoticeable to the user. The user interfaces of

iPhone 14 Series smartphones—i.e., the user interface of the iOS Camera application—do not indicate what data from which cameras are used to fuse a picture and do not indicate whether image fusion is occurring at all.  Nor is there a way to easily interrogate the smartphone processor or image data (such as image metadata) to find out.

Example iPhone 14 Pro user interface at 2.6x zoom

Although this information could have been discerned from the source code, Apple makes clear that it still refuses to make available any source code for unaccused products—just as Apple refused when asked to do so for previous annual releases of infringing products—forcing Corephotonics to conduct extensive, independent testing. Dkt. 181 at 4.

Apple's Opposition overlooks the difficulty of testing its products for infringement. The suggestion in Apple's Opposition that Corephotonics somehow delayed in preparing infringement contentions from public YouTube videos and websites (Dkt. 181 at 2) is disingenuous and makes the wrong comparison. These videos and websites show only infringement of other elements of claim 1 (such as the camera, sensor, processor, etc.), but these elements were not the ones holding up Corephotonics' investigation. These videos and websites do not allow for any conclusion about whether the iPhone 14 Series "provide a fused output image" as claimed. Instead, separate,

independent testing was required to detect this limitation, as Corephotonics explained in its Motion.

### III.  APPLE'S OTHER ARGUMENTS HAVE NO MERIT

Apple's Opposition suggests that Corephotonics' testing efforts are somehow coextensive with the amount of redlines in the proposed amended infringement contentions because the same infringement theory is asserted. This is meritless. It took only a few redlines to add the iPhone 14 Series to the list of accused products in the proposed amended infringement contentions with some citations, but these redlines naturally do not describe the preceding, extensive, work-product privileged testing that Corephotonics conducted to confirm that the iPhone 14 Series does indeed make a "fused output image," even though by design, Apple's infringement is not readily apparent to the user of the device.

Apple's Opposition argues that Corephotonics should have used other resources, perhaps Samsung or "multiple technical expert consultants based in the U.S." who could have performed testing while civil protests prevented Corephotonics from conducting testing in Israel. Dkt. 181 at 1, 5. But the Opposition does not identify any such experts because, at the time, Corephotonics did not have multiple technical expert consultants based in the U.S. who could do a better job of testing the iPhone 14 Series without source code. Nor does Corephotonics control Samsung's resources, as Apple suggests. Apple admits that Corephotonics is a "wholly owned subsidiary" of Samsung, and subsidiaries do not control their parent companies' resources. Dkt. 181 at 1. Moreover, Corephotonics is independently managed and independently operated by Corephotonics' principles. Corephotonics is the leader in this technology area with years of institutional experience, and its employees are the most knowledgeable and efficient resource for detecting infringement. Neither experts nor Samsung could have helped or facilitated testing any without access to Apple's source code.

Apple's Opposition argues that the ongoing civil unrest in Israel that shut down the country's infrastructure to protest government corruption "is completely inapposite and cannot excuse Corephotonics," and that this did not shut down Corephotonics' business. Dkt. 181 at 5. Corephotonics respectfully disagrees that preserving the integrity of its country's judicial system

Case No. 3:17-cv-06457-JD                                    3
COREPHOTONICS, LTD.'S REPLY ISO MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

is unimportant and refers the Court to the multiple news articles (Dkt. 179, Exhibits 6–9) attached to its opening Motion to appreciate the full extent of the issue. Apple's argument that these protests were not severe enough to shut down Corephotonics's business is contradicted by the declaration of Mr. Kali. Dkt. 179-10 ¶ 7; Dkt. 179 at 5 (showing pictures of obstructed infrastructure in Tel Aviv).

Finally, Apple's Opposition fails to rebut the inefficiency that would result from denying this motion. If the Court denied the motion, then Corephotonics would be permitted to file a new lawsuit for the iPhone 14 Series, leading to inefficiently duplicative litigation. In patent cases, this court applies the general rule that res judicata does not bar the assertion of "new rights acquired during the action which might have been, but which were not, litigated." *Inguran, LLC v. ABS Global, Inc.*, 72 F.4th 1272, 1279–80 (Fed. Cir. 2023) (citing *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010)). Claims that "could have been brought" are claims in existence at the time of the original complaint is filed, but if "the claim did not exist at the time of the earlier action, it could not have been asserted in that action and is not barred by res judicata." *Inguran* at 1279. There is no dispute here that the iPhone 14 Series did not exist at the time of the original complaint, and so they may be accused in a subsequent lawsuit unhindered by the doctrine against claim splitting. "Claim splitting" bars a second lawsuit "asserting the same patents-*although different claims*-against the same accused technology of the same defendants." *Biogenex Lab'ys, Inc. v. Ventana Med. Sys., Inc.*, No. C-05-860-JF, 2005 WL 1869342, at *3 (N.D. Cal. Aug. 5, 2005) (emphasis added). As evident from the proposed amended infringement contentions, the second lawsuit against the iPhone 14 Series would assert the *same claims* against a *different product* that did not previously exist. On the other hand, if Apple were somehow correct about Corephotonics' patent rights against the iPhone 14 Series being precluded due to claim splitting, then denial of this pending motion would result in severely unfair prejudice by precluding Corephotonics from enforcing its patent rights.

## IV.  CONCLUSION

In summary, it took from October 2022 through April 2023 to perform multiple tests to confirm that the iPhone 14 Series performs the claimed fusion because this information is not

readily visible through a user interface, and there is no easy way to interrogate the phones to determine infringement. The lengthy testing resulted in privileged work product dated October 18, 30, 31; November 3, 8, 16, 17, 19, 20, 22, 27, 28, 30, 31; Dec. 22, 28, and 29 of 2022; Jan. 3, 4, 10, 16; Mar. 9, 14, 16; and Apr. 16, 17, 18 of 2023 being sent from Corephotonics to its counsel. Corephotonics then promptly notified Apple that it intended to amend contentions on April 27, just nine days after the last round of testing on April 18, 2023 that allowed Corephotonics to form a Rule 11 belief that the iPhone 14 series indeed make a "fused output image."

Corephotonics worked as fast as it reasonably could so that it could enforce its patent rights and begin seeking damages discovery. Apple's narrative suggests, without any basis, that Corephotonics illogically delayed its investigation to defer its own ability to collect patent royalties. In reality, Corephotonics took the time to develop a good faith belief as to infringement by the iPhone 14 Series, despite the practical and technical difficulties to do so. Apple fails to fairly dispute these facts, and, equally importantly, fails to show any prejudice at all should the Court grant the Motion, much less any undue prejudice.

For the foregoing reasons, Corephotonics respectfully asks the Court to order that Corephotonics's amended infringement contentions adding the iPhone 14 series are deemed served with leave to amend as of their email delivery on July 5, 2023 to Apple's counsel.

DATED: August 30, 2023               Respectfully submitted,

                                     RUSS AUGUST & KABAT

                                     By: /s/ Marc A. Fenster
                                     Marc A. Fenster (CA Bar No. 181067)
                                     Benjamin T. Wang (CA Bar No. 228712)
                                     Neil A. Rubin (CA Bar No. 250761)
                                     James S. Tsuei (CA Bar No. 285530)
                                     Peter Tong (CA Bar. No. 300347)
                                     RUSS AUGUST & KABAT
                                     12424 Wilshire Boulevard, 12th Floor
                                     Los Angeles, California 90025
                                     Telephone: (310) 826-7474
                                     Facsimile: (310) 826-6991
                                     mfenster@raklaw.com
                                     bwang@raklaw.com
                                     nrubin@raklaw.com

jtsuei@raklaw.com
ptong@raklaw.com

Attorneys for Plaintiff
Corephotonics, Ltd.

# CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on August 30, 2023, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

*/s/ Marc A. Fenster*