

12424 WILSHIRE BOULEVARD

12TH FLOOR

LOS ANGELES CALIFORNIA 90025

TELEPHONE 310.826.7474

FACSIMILE 310.826.6991

Neil A. Rubin
nrubin@raklaw.com

October 26, 2023

**Via CM/ECF**

The Honorable James Donato
United States District Court
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA

        Re:    *Corephotonics Ltd. v. Apple Inc.,*
               Case No. 3:17-cv-06457-JD (N.D. Cal.) (lead case)

Dear Judge Donato:

Corephotonics respectfully seeks the Court's guidance on the scope of the term "the functionality, operation, and design of mobile device camera technology" in the protective order and asks that the Court deny Apple's request for a further protective order (Dkt. 184). Apple's argument appears to be that an invention that simply makes use of an entirely standard mobile device having a camera is related to "the functionality, operation, and design of mobile device camera technology" and thus falls within the scope of the Prosecution Bar. But nothing about the inventions disclosed or claimed in Dr. Milster's 17/796,756 patent application (the "'756 application") are directed to any particular features of the mobile device camera itself.[1] Just as one would not describe an invention that uses an otherwise ordinary battery or an otherwise ordinary metal case as being related to "the functionality, operation, and design" of battery technology or of metal technology, the '756 application is not directed to "the functionality, operation, and design" of mobile device camera technology.

### Dr. Milster's Patent Application Does Not Fall Under the Prosecution Bar as Reasonably Interpreted

To the extent that the '756 application relates to mobile device cameras, it is as an invention that *uses* otherwise standard mobile device cameras, without teaching or claiming any particular features of such cameras, beyond the fact that they have the standard features of a "lens" and a color "image sensor array."

---

[1] Apple's letter devotes a single sentence to "other pending applications" purportedly "directed to camera lens technologies that can be used in mobile devices." But it only cites (in footnote 3) one other application of Dr. Milster's. The abstract of that application states that its invention could be applied to "an efficient large aperture space telescope." Apple provides no explanation for why it believes that application's invention "can be used in mobile devices" or how it relates to any confidential Apple information.



As shown in Figure 1 of the patent application, the system uses components including a special light source (item 101) and a computer generated hologram (CGH) or diffractive grating (item 105) to generate a light signal captured using a camera (item 108). The camera then captures an image with patterns called "phasorgrams," shown in Figure 3:



These phasorgrams provide information about how the phase of light is shifted in passing through media such as biological samples or the atmosphere ('756 application ¶¶ [0003], [0046]). The '756 application's teachings that relate to mobile device cameras simply call for using an entirely standard cell phone camera system as the camera (108) in Figure 1. ('756 application ¶ [0092]). As the specification teaches "[t]ypically, modern cell phone cameras have multiple cameras for wide-angle, telephoto, and normal viewing, as well as time-of-flight information," and the invention would utilize such a typical cell phone camera. (*Id.*) In this embodiment that works with cell phone cameras, the other optical components of Figure 1are replaced by an "adaptor" which is attached to the cell phone. (*Id.*)

Claims 19 and 20 of the '756 application that Apple points to claim the "adapter configured to be mechanically coupled to a mobile device" and running an algorithm on the processor of the mobile device. ('756 application, claim 19). The claimed external adapter has a "light source" and a substrate with "at least one of a computer generated hologram (CGH) and a diffractive grating." (*Id.*) The adapter must be "configured to be mechanically coupled to a mobile device in optical alignment with a lens of the mobile device" such that the phasorgram generated by the adapter is directed to the image sensor array of the mobile device camera when the adapter is attached to a mobile device. (*Id.*) Again, no features of the camera are claimed, beyond the entirely standard features of a lens and a color image sensor.

**The Balance of Burdens Strongly Favors Corephotonics' Being Permitted to Disclose Protected Materials to Dr. Milster**

Apple has failed to establish that it is entitled to the relief that it seeks. *See* Fed. R. Civ. P. 26(c) (requiring "good cause" for entry of protective order). Corephotonics and its counsel take most seriously their obligations under the Protective Order to avoid the improper disclosure or improper use of Apple confidential materials and it expects its experts and consultants to do the same. But Apple has failed to demonstrate how Dr. Milster could improperly make use of Apple's confidential information through



participation in the prosecution of the '756 application. Apple does not sell adapters or other structures that generate phasorgrams. Nothing in the materials produced in this case thus far or in Apple's letter brief suggests that it has any plans to introduce products that relate to phasorgrams or the phase imaging technologies of the '756 application.

Apple suggests that Dr. Milster might provide input as to amendments in response to examiner rejections of the '756 application's claims. But even if he had the most nefarious of intentions, Dr. Milster could not simply take features of Apple's products and write them into amended claims. Rather, any amended claims must be supported by the written description of the existing specification, which must establish that Dr. Milster possessed the invention when the application was filed in 2021. 35 U.S.C. § 112(a); *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) ("the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date"). The '756 application's disclosures of "typical" cell phone cameras with generic features like lenses and image sensors would not support claims that sought to capture confidential features of Apple's present or future products.

In short, Apple has failed to demonstrate how the existence of the '756 application suggests it would be prejudiced by Dr. Milster serving as an expert for Corephotonics. In contrast, Corephotonics would be substantially prejudiced by being denied the use of Dr. Milster as an expert. Corephotonics seeks to use Dr. Milster as an expert concerning infringement and validity of the '712 patent at issue in this action. Dr. Milster has served as Corephotonics' expert in three different *Inter Partes* Review proceedings concerning patents that are continuations-in-part of the '712 patent. (IPR2020-00878, IPR2020-00896, IPR2020-00897). As a result, Dr. Milster is already deeply familiar with the subject matter of the '712 patent, with certain of the prior art references that Apple may seek to assert against the '712 patent, and with the technical issues relevant to the validity of the '712 patent claims.

While Dr. Milster's experience in the IPRs is most relevant to validity issues, Corephotonics would prefer to have the option of using the same expert for both infringement and validity issues concerning the '712 patent, to make efficient use of its own resources and of the Court's and jury's time at trial. To deny Corephotonics the ability to use the expert that it would prefer to use is prejudicial in and of itself. To force Corephotonics to engage another expert and pay for that expert's time to become familiar with the issues in the case is prejudicial as well.

For these reasons, Corephotonics respectfully requests that the Court deny Apple's request for a new protective order and that Dr. Milster be permitted to receive Apple materials produced under the existing Protective Order.

Sincerely,

/s/ *Neil A. Rubin*

Neil A. Rubin
Counsel for Corephotonics Ltd.