

Via ECF

Heidi L. Keefe
T: +1 650 843 5001
hkeefe@cooley.com

November 21, 2023

District Judge James Donato
U.S. District Court, San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

**Re:** *Corephotonics v. Apple*, Case Nos. 3:17-cv-06457-JD (lead case), 5:18-cv-02555-JD

Dear Judge Donato:

Pursuant to the Standing Order for Discovery in Civil Cases, Apple respectfully requests that the Court compel Corephotonics to produce (1) an *unredacted* copy of a relevant agreement named in a public filing (with its amendments and exhibits), and (2) relevant documents reflecting valuations of the asserted patents and this case. The parties conferred telephonically and reached impasse.

**I.   COREPHOTONICS AND LONGFORD ARE WITHHOLDING RELEVANT DOCUMENTS**

Longford Capital Fund II ("Longford") is a litigation financing firm that holds a direct interest in the asserted patents and this case. (Dkt. 152.) After Corephotonics filed this action, it disclosed in a public filing that it had entered into a "Relationship Agreement" and "Amendment" with Longford, where Corephotonics borrowed money in exchange for signing away certain rights as collateral. The public filing revealed that Longford received rights under the Agreement to "any monies received" or "recovered" from "Defendant" (Apple) from the patent assertion:

> Corephotonics, Ltd. (the "Debtor")
>
> And
>
> Longford Capital Fund II, LP (the "Secured Party")
>
> The Collateral includes the Debtor's rights in the Gross Proceeds, as further set forth in Amendment No. 3 to Relationship Agreement (the "Relationship Agreement"), dated as of June 4, 2018, between Russ August & Kabat and the Debtor, as amended, supplemented or otherwise modified from time to time.
>
> "Gross Proceeds" means gross recovery of any monies received (cash and otherwise, of any nature whatsoever) actually recovered from Defendant or from a licensed supplier to Defendant (and any other identified entity) without apportionment for geographic sales) whether as damages, licensing fees, acquisition proceeds (*i.e.*, amounts paid to purchase Debtor's company, an interest in Debtor's company, the patents, or any rights to the patents (but only if such acquisition results from Secured Party's activities)), attorneys' fees, money, property, or services, and whether through agreement, settlement, judgment, or otherwise. If any of the Gross Proceeds is received over time, Secured Party's share will apply to each receipt of any of the Gross Proceeds when and as received on a continuing calculation basis. Gross Proceeds will include any licensing revenue attributable to sales made to certain Defendants by a supplier with which Debtor has entered into a license agreement authorizing the supplier to make such sales as set forth in the Relationship Agreement.

As part of the diligence and negotiations around the agreement, counsel for Corephotonics provided to Longford documents that assessed the value of the asserted patents and/or potential damages in this case. The agreement and valuation documents are responsive to Apple's document requests. (Ex. A at 3-4, 5-7 (RFPs 42, 57, 60-63), Ex. B at 6-7, 18, 20-23 (responses).)



Page Two

Corephotonics refuses to produce an unredacted copy of the financing agreement, and refuses to produce the valuation documents. It has provided—only under FRE 408 and not in discovery—a heavily-redacted version of the agreement that obscures all substantive terms.

**II.    THE REQUESTED DOCUMENTS ARE RELEVANT AND DISCOVERABLE**

### A.    The Agreement and Valuations Are Relevant to Damages

The withheld agreement and valuation documents are relevant to damages and should be produced. *Taction Tech. v. Apple*, No. 21-cv-00812-TWR-JLB, 2022 WL 18781396, at *5 (S.D. Cal. Mar. 16, 2022) ("This Court agrees with other courts in this district that have found litigation funding agreements and related documents can be directly relevant to the valuations placed on the patents prior to the present litigation"). The agreement shows the value accorded to this litigation, as embodied in its financial terms, which are probative of the value of the asserted patents. Additionally, Corephotonics's entry into the agreement may reveal that it accepted Longford's low assessment of value, contradicting Corephotonics's attempts to seek a far higher damages award. Courts have ordered production of litigation financing agreements and related documents, because in such transactions the financier would have needed to value the litigation and patents to ascertain the amount of debt to offer. *Impact Engine v. Google*, No. 19-cv-1301-CAB-DEB, Dkts. 101 at 4, 113 (C.D. Cal. Aug. 12, 2020) ("Google is entitled to discovery of litigation funding agreements and related documents because they are relevant to: (1) establish the value of the patents at issue; (2) obtain statements made by Impact Engine regarding the patents at issue; and (3) refute potential trial themes"); *Intel v. Prot. Cap.*, No. 13cv1685 GPC (NLS), 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) (finding a "third party's investment information" was relevant to damages"). The valuation documents will similarly reveal valuations that Corephotonics, its counsel, and/or Longford applied to the patents and lawsuit—all likely in sharp contrast with Corephotonics's damages claims, raising additional relevant issues of credibility for trial. *Taction*, 2022 WL 18781396, at *5; *Impact Engine*, No. 19-cv-1301-CAB-DEB, Dkts. 101 at 4, 113

### B.    The Agreement Is Also Relevant to Standing

The public filing indicates that Corephotonics's rights to assert the patents-in-suit and pursue this litigation are significantly encumbered, such that the agreement is likely relevant to standing in this case. Courts have dismissed suits for lack of standing where, for example, the plaintiff's rights were "significantly encumbered and constrained by its contractual obligation to act in [a non-party's] best interests coupled with its substantial guarantee of annual payments to [the non-party] of proceeds from the sublicensing and enforcement" of patents, *SPH Am. v. Huawei Techs.*, No. 13-CV-2323-CAB-KSC, 2017 WL 1331920, at *4 (S.D. Cal. Apr. 10, 2017); where the non-party received broad investment rights in the event of a default, *Uniloc USA v. Apple*, No. C 18-00358 WHA, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020); and where an inventor assigned a patent to his wife who mortgaged the patent to a non-party, *Waterman v. Mackenzie*, 138 U.S. 252, 255-61 (1891). It is imperative that the Court and Defendant analyze the applicable agreement. *Cobra Int'l v. BCNY Int'l*, No. 05-61225-CIV-MARRA/MATTHEWMAN, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013) (ordering production of litigation funding agreement because it was



Page Three

relevant to standing).[1]

### C. Corephotonics's Objections Are Meritless

Corephotonics vaguely raised a meritless "work product" objection that does not excuse it from disclosing this relevant discovery. Indeed, the substantive terms of Longford's litigation financing agreements have been publicly disclosed in unredacted form except for their monetary amounts.[2]

***First***, no work product doctrine protects any ***pre-agreement*** valuations exchanged between the adverse parties at arms' length on opposite sides of the negotiation: Longford (the potential funder) versus Corephotonics (the party seeking funding) and its counsel. *Waymo v. Uber Techs.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2485382, at *9 (N.D. Cal. June 8, 2017) ("Otto and Uber did not have a common legal interest . . . [they] were on the opposite sides of a proposed acquisition . . . Uber's sharing of its work product with Otto waived any work-product privilege").

***Second***, Corephotonics did not establish that a community of legal interest arose at any time that would shield subsequent communications from discovery, given that the documents were shared between independent parties. "To show that there is a proper community of interest, the interests must be identical, not similar, and be legal, not solely commercial." *Acceleration Bay v. Activision Blizzard,* No. 16-453-RGA, 2018 WL 798731, at *2 (D. Del. Feb. 9, 2018). Longford and Corephotonics (and its counsel) did not have identical legal interests—on the contrary, they "were on opposite sides of a potential transaction." *Waymo*, 2017 WL 2485382, at *12; *Acceleration Bay*, 2018 WL 798731 at *2; *Mondis Tech. v. LG Elecs.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *4 (E.D. Tex. May 4, 2011) (no common legal interest).

***Third***, even if any responsive documents were protected work product (which they are not), the "substantial need" exception applies. Fed. R. Civ. P. 26(b)(3)(A) (relevant work product is discoverable where the requester "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). The valuation and agreement documents are the ***only*** known documents reflecting valuations of the asserted patents and infringement claims. As such, they are critical to provide Apple a fair and unique opportunity rebut Corephotonics's self-serving, overreaching damages claims. *Odyssey Wireless v. Samsung Elecs.*, No. 3:15-cv-01735-H (RBB), 2016 WL 7665898, at *5-6 (S.D. Cal. Sept. 20, 2016) (compelling production of litigation funding work product due to substantial need).

*/s/ Heidi L. Keefe*
*Counsel for Apple Inc.*

---

[1] Apple alternatively requests an initial *in camera* review to evaluate standing.

[2] *See*, *e.g.*, SEC filing available at https://www.sec.gov/Archives/edgar/data/824416/000121390014008919/f10k2012ex10xiii_questpatent.htm.