| | |
|---|---|
| 1 | RUSS, AUGUST & KABAT |
| 2 | Marc A. Fenster, State Bar No. 181067<br>mfenster@raklaw.com |
| 3 | Brian D. Ledahl, State Bar No. 186579<br>bledahl@raklaw.com |
| 4 | Neil A. Rubin, State Bar No. 250761<br>nrubin@raklaw.com |
| 5 | James S. Tsuei, State Bar No. 285530<br>jtsuei@raklaw.com |
| 6 | Peter Tong, State Bar No. 300347<br>ptong@raklaw.com |
| 7 | 12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025 |
| 8 | Telephone: (310) 826-7474<br>Facsimile: (310) 826-6991 |
| 9 | Attorneys for Plaintiff |
| 10 | COREPHOTONICS, LTD. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COREPHOTONICS, LTD.<br><br>                Plaintiff,<br><br>vs.<br><br>APPLE INC.<br><br>                Defendant. | Case No. 3:17-cv-06457-JD (Lead Case)<br>Case No. 3:18-cv-02555-JD<br><br>**COREPHOTONICS, LTD.'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO DISMISS FOR LACK OF STANDING**<br><br>Courtroom: 11<br>Before: Hon. James Donato |

Case No. 3:17-cv-06457-JD

RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. LEGAL STANDARDS ................................................................................................2

III. corephotonics has standing to assert infringement of corephotonics patents ......................4

    A. The Patents In Suit Have Always Been Assigned To Corephotonics and Have Never Been Assigned To Any Third Party.......................................................4

    B. Corephotonics Has Always Retained All Substantial Rights In The Patents In Suit ..................................................................................................................5

    C. Corephotonics Never Transferred The Patents In Suit To Samsung .......................6

IV. CONCLUSION..........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Alfred E. Mann Foundation for Sci. Res. v. Coochlear Corp.*,
 604 F.3d 1354 (Fed. Cir. 2010) ........................................................................... 3, 5, 9, 11

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
 434 F.3d 1336, 1341 (Fed. Cir. 2006) ....................................................................... 3, 10

*Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*,
 924 F.3d 1225 (Fed. Cir. 2019) ....................................................................................12

*Morrow v. Microsoft Corp.*,
 499 F.3d 1332 (Fed. Cir. 2007) ....................................................................................12

*Trustees of Dartmouth College v. Woodward*,
 17 U.S. (4 Wheat.) 518 (1819) ....................................................................................... 8

*Vaupel Textilmaxchinen KG v. Meccanica Euro Italia S.P.A.*,
 944 F.2d 870 (Fed. Cir. 1991) ........................................................................................ 2

**Statutes**

35 U.S.C. § 100(d) ............................................................................................................. 2

35 U.S.C. § 281 ................................................................................................... 2, 11, 13

**Rules**

Fed. R. Civ. P. 19 .............................................................................................................. 2

RUSS, AUGUST & KABAT

## I. INTRODUCTION

Apple's motion makes the remarkable argument that a corporation lacks standing to pursue a claim if that corporation has a board of directors that makes decisions about corporate actions. Apple's argument has never been accepted by any court, anywhere, at any time. In fact, Apple's argument has likely never even been raised before because it is facially nonsensical. Under Apple's theory, no corporation ever has standing to assert a claim in its own name because, in every jurisdiction a corporation must be controlled by a board of directors. Regrettably a basic course in corporations and business associations is not mandatory for all law students. Any law student who took such a course understands the complete fallacy of Apple's argument here. Corporations are legal entities governed (in all instances) by a board of directors. Nothing about having board members changes the corporation's legal status and its ability to own property, bring lawsuits, and engage in numerous other activities. Under Apple's theory, no corporation (including Apple) could ever have standing to assert any claim because they are all governed by boards of directors.

Apple's motion also mischaracterizes the contents of a share purchase agreement by which a Samsung entity acquired the shares of Corephotonics. Apple argues that in the agreement, Corephotonics ceded control of its patents and this litigation to a third party. The falsity of Apple's argument requires little more than reading the provision. As is common in any corporate acquisition (such as the acquisition of all shares of a company), there is a window of time between the agreement being signed and the closing of the transaction. It is customary for the parties to such a transaction to agree that there will be no material changes to the acquired entity during that window. This agreement provides for nothing more – Corephotonics merely agreed ███████████████

███████████████

Russ, August & Kabat

1
2
3   ▮▮▮▮▮▮▮▮▮▮▮▮▮   None of the authorities cited by Apple even hints that such a
4   situation could constitute a lack of standing.

## II.   LEGAL STANDARDS

Apple concedes that Corephotonics has Article III standing to sue as a party with an injury in fact caused by Apple's infringement of Corephotonics' asserted patents. Apple contends, however, that Corephotonics lacks so-called "statutory standing," which is more properly understood as a purported failure to join necessary parties under Fed. R. Civ. P. 19. Federal law is clear that a patentee always has a right to seek a remedy for patent infringement by a civil action. 35 U.S.C. § 281. A "patentee" encompasses not only the patentee to whom the patent was issued, but also any successors in title to the patentee. 35 U.S.C. § 100(d). Where a patentee transfers title to a patent by an assignment, the assignee is the patentee under 35 U.S.C. § 281.

Apple appears to assert a novel theory that Corephotonics is not the patentee for the patents-in-suit despite the fact that the patents were originally issued to Corephotonics, and have never been assigned by Corephotonics to any other entity or individual. Courts have held that while a licensee to a patent cannot maintain suit without joinder of the patentee, in some circumstances, an exclusive license may be tantamount to an assignment for purposes of creating standing if the exclusive license conveys all substantial rights in the patent to the licensee. *See Vaupel Textilmaxchinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991). Apple has not, however, suggested that Corephotonics has ever exclusively licensed the patents-in-suit to anyone (it has not), nor that any such license could be tantamount to an assignment of either of the patents-in-suit.

The Federal Circuit holds that "[t]he essential issue regarding the right to sue on a patent is who owns the patent." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,

Russ, August & Kabat

434 F.3d 1336, 1341 (Fed. Cir. 2006). The *Aspex* court explained that a transfer of the exclusive right to make, use, and vend a patented invention might convey standing to the assignee of such rights if the transfer granted all substantial rights in the patent to the transferee. *Id.* at 1341-42. Thus, the core question is "who owns the patent" and was there a transfer that amounted to an assignment. *Id.* at 1342. In *Aspex*, for example, the patent owner transferred many rights to an exclusive licensee, including the exclusive right to make, use, and sell products covered by the patent; the right to sue for infringement of the patent; and a virtually unrestricted authority to sublicense rights under the patent. *Id.* Nonetheless, the *Aspex* court held that the agreement did not constitute an assignment of the patent because it was of a limited term that expired before the patent expired. *Id.* Thus, the Federal Circuit held that the exclusive licensee "simply did not own the patent." *Id.* at 1343.

A patent may not have multiple separate owners for purposes of determining standing to sue. *Alfred E. Mann Foundation for Sci. Res. v. Coochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010). Either a patent owner/licensor did not transfer "all substantial rights" in the patent to an exclusive licensee, in which case the owner/licensor remains the owner of the patent and retains the right to sue for infringement, or it did transfer all substantial rights to an exclusive licensee, in which case the exclusive licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own. *Id.* at 1359-60. The question of whether a patent owner has transferred "all substantial rights" in a patent to another focuses on whether a patent holder has transferred so much of the bundle of rights in a patent that the transferee becomes the owner of the patent. *Id.* at 1360. The rights to be considered include: 1) the exclusive right to make, use, and sell products or services under the patent; 2) the scope of a licensee's right to sublicense; 3) the nature of license provisions regarding the reversion of rights to the licensor; 4) the right of the licensor to receive a portion of the recovery of infringement claims brought by the licensee; 5) the duration of the license rights granted to the licensee; 6) the ability of

the licensor to supervise and control the licensee's activities; 7) the obligation of the licensor to continue paying patent maintenance fees; and 8) the nature of any limits on the licensee's right to assign its interest in the patent. *Id.* at 1360-61. Often the nature and scope of the exclusive licensee's right to bring suit for infringement, along with any such rights retained by the licensor is a critical factor. *Id.* at 1361.

Here, there is no dispute that the patents-in-suit were issued to Corephotonics (as reflected on the face of the patents). *See* Kali Decl., Exs. A and B (the two patents-in-suit). Further Apple has not identified any license agreement by which Corephotonics granted an exclusive license to either patent to any party (and there are no such agreements). Thus, there is no licensee who Apple contends received all substantial rights in the patents-in-suit by virtue of an exclusive license. To sustain its motion, Apple must point to some agreement by which Corephotonics either transferred ownership of the patents-in-suit to another party, or by which it granted an exclusive license which amounted to an assignment of ownership of the patents-in-suit to a third party. As shown in greater detail below, no such agreement exists, and Apple's motion fails.

### III. COREPHOTONICS HAS STANDING TO ASSERT INFRINGEMENT OF COREPHOTONICS PATENTS

#### A. The Patents In Suit Have Always Been Assigned To Corephotonics and Have Never Been Assigned To Any Third Party

The two patents-in-suit were assigned to Corephotonics at the time of their issuance and reflect Corephotonics, Ltd. as the assignee (owner of the patents) on their face. Kali Decl., Exs. A and B. Corephotonics has never transferred ownership of the patents to any other entity or individual. Declaration of Eran Kali ("Kali Decl.") at ¶ 3. Corephotonics has never granted any entity or individual an exclusive license to either of the patents-in-suit. Kali Decl., ¶ 4.

### B. Corephotonics Has Always Retained All Substantial Rights In The Patents In Suit

As the Federal Circuit explained in *Alfred E. Mann*, there are a number of rights to be considered in determining whether a patent owner (Corephotonics here) has transferred all substantial rights in a patent to another party. *Alfred E. Mann*, 604 F.3d at 1360-61.  Here, Corephotonics has never transferred any of those rights to any third party.  1) Corephotonics has never granted any other party the exclusive right to make, use, and sell products or services under the patent.[1] Kali Decl., ¶ 4. 2) Corephotonics has never granted any other party the right to sublicense its patents. Kali Decl., ¶ 5.   3) Since Corephotonics has never granted any exclusive rights to its patents, there is no need for reversion of any rights back to Corephotonics.  4) Corephotonics has never granted any other party the right to bring claims for infringement of its patents, and it thus retains the only right to receive any portion of the recovery from claims for infringement of those patents.  Kali Decl., ¶ 6.  5) Corephotonics has not granted any exclusive license rights, so the duration of those rights resting with Corephotonics is the full life of the patents.  6) As there is no exclusive licensee, Corephotonics does not need to retain any rights to supervise such a licensee.  7) Corephotonics is the only entity that has ever had any obligation to pay patent maintenance fees for the patents-in-suit.  Kali Decl., ¶ 7.   8) Corephotonics has never granted any party an interest in the patents-in-suit, other than a non-exclusive right to practice the patents within a designated field of use, and has never granted the right to assign such interests.  Kali Decl., ¶ 8.  Finally, Corephotonics has never granted any other entity the right to bring suit for infringement of the patents-in-suit.  Kali Decl., ¶ 6.

---

[1] ███████████████████████████████████████████████████████████ Kali Decl., ¶ 4.

Thus, Corephotonics has never transferred away any of the bundle of rights of a patent owner identified by the Federal Circuit. Certainly, it has not transferred all substantial rights to any other person or entity such that they would be deemed the patent owner of either of the patents-in-suit. Instead, Corephotonics has retained ownership and all substantial rights in the patents-in-suit at all times.

### C. Corephotonics Never Transferred The Patents In Suit To Samsung

Apple's motion focuses on "Samsung," though Apple ignores that there are many different "Samsung" entities and Apple provides little clarity as to what Samsung entity it refers to. Apple makes two arguments regarding Samsung, both of which fail. First Apple argues that ████████████████████████ ████████████████████████ Apple appears to base this argument on a misrepresentation of language in a share purchase agreement ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ Kali Decl., ¶ 9. The Share Purchase Agreement (Ex. 1 to Apple's Motion) ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ As is common in such transactions, the agreement contains ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ At

1  the time of the Share Purchase Agreement, this litigation was already pending
2  against Apple, and was understood by Corephotonics to have significant value.
3  ████████████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ██████ ████████████████████████ ███████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████
16 ██████████████████████████████ Kali Decl., ¶ 9.
17    Apple asserts that because of this contractual provision ██████████████
18 ████████████████████████████████████████████████████████████████  Apple
19 Brief at 2.  Apple's assertion is facially false.  The contractual language clearly does
20 not say what Apple argues and Apple offers no explanation for its misrepresentation
21 of the clear language of the contract.  ████████████████████████████████
22 ████████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████████
24 ██████████
25    Apple also makes other misrepresentations about this agreement.  Apple
26 argues that in selling the shares of Corephotonics, that Corephotonics ███████
27 ████████████████████████████████████████████████████████████████████████
28 █████████ Apple Brief at 3.  Notably, Apple cites nothing in any contract that would

1  create a license to Corephotonics' patents to any Samsung entity, nor does it point
2  to any legal authority that a purchase of stock is automatically accompanied by a
3  license to intellectual property of the company whose stock is purchased. Apple's
4  argument is simply a fabrication (and an irrelevant fabrication as further shown
5  below). The simple fact is that no Samsung entity has a license to practice any
6  Corephotonics patent, and certainly not an exclusive license. Kali Decl., ¶ 10.

7      Apple's second argument regarding Samsung is even more ridiculous than
8  the first. Apple argues that because, ███████████████████████████
9  ████████████████████████████████████████████████████
10 ██████████, that Samsung Benelux is therefore somehow the owner of
11 Corephotonics' patents. Apple's argument ignores the most basic principles of
12 corporations and the corporate form. Corporations have shareholders, but the
13 shareholders are not the corporation. A corporation is "[a]n artificial person or legal
14 entity created by or under the authority of the laws of a state. An association of
15 persons created by statute as a legal entity. The law treats the corporation itself as a
16 person which can sue and be sued. The corporation is distinct from the individuals
17 who comprise it (shareholders)." Black, et. al., *Black's Law Dictionary*, Sixth Ed.
18 (1990) (citing *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518,
19 636, 657 (1819). Apple's argument ignores the basic nature of a corporation by
20 arguing that a corporation is, in fact, its shareholders. Apple essentially argues that
21 no corporation would ever have standing to act in its own name as a legal person,
22 because it has shareholders and a board of directors that direct company activities.
23 Unsurprisingly, Apple cannot point to any court that has ever adopted such a
24 nonsensical view.

25     At all times since its formation several years before this lawsuit was filed
26 through the present, Corephotonics has continued to exist as a distinct corporate
27 entity. Kali Decl., ¶ 12. Corephotonics is an entity duly created and authorized
28 under the laws of Israel. *Id.* at ¶ 12. Corephotonics has never been dissolved as a

corporate entity, nor has it ever been merged into any other corporate entity. *Id.* at ¶ 13. The founders of Corephotonics have remained in management of Corephotonics both before and after the acquisition of Corephotonics' stock, and have continued to operate Corephotonics as a distinct entity. Kali Decl., ¶ 14. In short, Corephotonics has always existed as a corporate entity. As such, it has a right to take legal actions in its own name. Like all corporations, Corephotonics is an entity separate from the shareholders who may own its stock. The mere fact that Corephotonics has a board of directors appointed by its shareholders does not and cannot affect its standing to sue. Apple cites no case that would support its argument.

Apple's arguments about Samsung entities also fail to apply the proper analysis of standing issues as set forth in the relevant case law. Apple never analyzes the various rights of a patent owner discussed in *Alfred E. Mann* with respect to Samsung. Such an analysis further confirms that Apple's arguments fail as Apple fails to show that Corephotonics has transferred all substantial rights in the patents-in-suit to Samsung:

1) The exclusive right to make, use, and sell products or services under the patent. Apple offers no showing that any Samsung entity has ever acquired such a right.

2) The scope of a licensee's right to sublicense. Apple fails to show that any Samsung entity even has a license, much less an exclusive license to the patents-in-suit. Apple also fails to show that any Samsung entity has ever been granted a right to sublicense any Corephotonics patent to anyone.[2]

3) The nature of license provisions regarding the reversion of rights to the licensor. Once again, there is no license to any Samsung entity, so there is no need

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kali Decl., ¶ 11. Neither of these was any kind of exclusive license and both were terminated.

1 for any reversionary interest. ███████████████████████████████████
2 ████████████████████████████████████████████████████████████████
3 ████████████████████████████████████████████████████████████████
4 ████████████████████████████████████████████████████████████████
5 ██████████████████████████████████████ Thus, while there is no
6 license provision granting any exclusive rights.  Even if the provision relied on by
7 Apple were considered relevant, ████████████████████████████████
8 █████████████████████████ making it insufficient to convey standing of any
9 kind to Samsung.

  4) The right of the licensor to receive a portion of the recovery of infringement claims brought by the licensee.  Here, again, no Samsung entity was ever granted any right to assert any Corephotonics patent in any way.  Thus, as between Corephotonics and any Samsung entity, the sole right to recovery for infringement belongs to Corephotonics.

  5) The duration of the license rights granted to the licensee.  Here, as discussed above, no Samsung entity has ever received any exclusive rights from Corephotonics, making this consideration completely unsupportive of Apple's argument.  Even if the limited right identified by Apple ███████████████████
███████████████████████████████████████
██████████████████████████ were considered, that is obviously of such a brief duration that cannot serve to transfer "all substantial rights" to Samsung.  *See, e.g. Aspex Eyewear*, 434 F.3d at 1342.

  6) The ability of the licensor to supervise and control the licensee's activities. Here, there is no licensee because no license was granted to any Samsung entity by Corephotonics.  Thus, this consideration cannot support Apple's motion.

  7) The obligation of the licensor to continue paying patent maintenance fees. Here, Apple does not and cannot suggest that any entity other than Corephotonics

1  has ever had responsibility for paying patent maintenance fees on the Corephotonics
2  patents.
3      8) The nature of any limits on the licensee's right to assign its interest in the
4  patent.  Here, as previously discussed, no license was granted to any Samsung entity,
5  and thus there is no right that could be assigned.  Thus, as with all of the factors
6  considered by the Federal Circuit, this factor confirms that Corephotonics has never
7  transferred "all substantial rights" in its patents to any Samsung entity.
8      9) The right to sue for infringement of the patents.  Apple points to nothing
9  conveying a right to sue for infringement of Corephotonics' patents to any Samsung
10 entity, and no such right has ever been granted. Kali Decl., ¶ 6.
11     Apple's arguments attempt to reverse the proper inquiry.  A patent owner is
12 presumptively the sole party with standing to sue for infringement of the patent.  35
13 U.S.C. § 281.  The only limit on this basic principle is that if the patent owner has
14 transferred to some other party so much of the patent's bundle of rights as to
15 constitute "all substantial rights" then that transferee becomes the assignee of the
16 patent and becomes the patentee for purposes of bringing suit.  Apple argues that
17 unless a patent owner can show that it retains "all substantial rights" in a patent, that
18 it loses standing to sue.  No case so holds.  Rather a patentee always has the right to
19 sue unless it has transferred away "all substantial rights." *See Alfred E. Mann*, 604
20 F.3d at 1359-60.  Apple cannot make the showing actually contemplated by the
21 relevant Federal Circuit precedent.  It cannot show that Corephotonics transferred
22 "all substantial rights" in the patents-in-suit to Samsung.  Instead, it tries to show
23 (incorrectly) that Corephotonics transferred some small right to Samsung and that
24 Corephotonics somehow therefor did not **retain** "all substantial rights."  That is the
25 wrong inquiry.  Apple does not (and cannot) suggest that Samsung has received "all
26 substantial rights" in the patents-in-suit.  At most, Apple shows that Corephotonics
27 very briefly, ████████████████████████████████████████
28 ████████████████████████████████████████████████████

1
2
3    ████████████████████████████████████████  Of course, no court has
4    ever held that anything like this very limited right constituted "all substantial rights"
5    in the patents-in-suit, such that Samsung could become the assignee of those patents.
6    Apple does not suggest that Samsung has received "all substantial rights" in the
7    patents-in-suit, so it effectively argues that there is no owner of the patents – a result
8    clearly forbidden by the Federal Circuit's precedents. *See Alfred E. Mann*, 604 F.3d
9    at 1359.
10       None of the cases relied upon by Apple supports its arguments.  Apple relies
11   heavily on the Federal Circuit's *Lone Star Silicon* case.  There, the plaintiff was not
12   the original patentee for the asserted patents.  *Lone Star Silicon Innovations LLC v.
13   Nanya Technology Corp.*, 924 F.3d 1225, 1227 (Fed. Cir. 2019).  Rather the patents
14   were the subject of a transfer agreement from the original assignee to Lone Star – an
15   agreement with numerous limitations and conditions on the rights granted to Lone
16   Star.  *Id.* at 1227-1228.  Thus, in *Lone Star*, the plaintiff was not the original owner
17   of the patents, but rather a transferee contending that it had received all substantial
18   rights in the asserted patents.  Because it was not the original patentee, it was obliged
19   to show that it had received "all substantial rights" in the asserted patents.  *Id.* at
20   1229.  Here, by contrast, Corephotonics is the original patentee.  It need only show
21   that it has not transferred away "all substantial rights" in the patents-in-suit.  As
22   shown repeatedly above, Corephotonics has not transferred away any substantial
23   rights in the patents-in-suit, much less "all substantial rights."  Apple's reliance on
24   *Morrow v. Microsoft* is similarly misplaced.  There, the Federal Circuit held that a
25   liquidation trust for a bankrupt patent-holder had not received all substantial rights
26   in the patent-in-suit from the original patent holder.  *Morrow v. Microsoft Corp.*, 499
27   F.3d 1332, 1334-35 (Fed. Cir. 2007).  In particular, three separate trusts for creditors
28   were established by the Bankruptcy proceeding.  One received the right to causes of

RUSS, AUGUST & KABAT

action, including for infringement of the debtor's intellectual property, while another received all other assets, which the Court held included ownership of the patent-in-suit. *Id.* at 1335. In light of this arrangement, the Court held that the trust that merely received the right to sue did not receive any of the underlying rights in the patent, and thus suffered no injury in fact from infringement. *Id.* at 1342. Accordingly, the plaintiff trust lacked Constitutional or Article III standing to maintain an action. *Id.* That issue is not even presented in this case as Apple concedes that Corephotonics has Constitutional standing. Moreover, unlike the plaintiff in *Morrow*, Corephotonics is and has always been the owner of the patents-in-suit.

Even Apple's cases make clear that to defeat Corephotonics' clear standing to sue, Apple must show that Corephotonics has transferred away (to a Samsung entity under Apple's argument) "all substantial rights" in the patents-in-suit such that the Samsung entity has become the effective assignee of the patents. Apple does not even try to make such a showing. Clearly Corephotonics has not transferred "all substantial rights" in the patents-in-suit to any third party. The Federal Circuit has explained that there can only be one owner of a patent at any given time. Corephotonics is and has always been the owner of the patents-in-suit, and has never transferred that ownership to anyone else. Accordingly, Apple's motion must fail.

## IV.   CONCLUSION

Corephotonics is the original patentee and has always been the owner of both of the two patents-in-suit. It has never granted any third party an exclusive right under its patents, and certainly has never transferred "all substantial rights" in the patents-in-suit to any other party. Accordingly, Corephotonics clearly remains the owner of the patents-in-suit with the right to sue under 35 U.S.C. § 281 as the patentee. Apple fails to show any basis to grant its motion.

| | |
|---|---|
| DATED:  January 15, 2024 | Respectfully submitted, |
| | RUSS AUGUST & KABAT |
| | By: */s/ Brian D. Ledahl*<br>Marc A. Fenster (CA Bar No. 181067)<br>Brian D. Ledahl (CA Bar No. 186579)<br>Neil A. Rubin (CA Bar No. 250761)<br>James S. Tsuei (CA Bar No. 285530)<br>RUSS AUGUST & KABAT<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California  90025<br>Telephone: (310) 826-7474<br>Facsimile: (310) 826-6991<br>mfenster@raklaw.com<br>bledahl@raklaw.com<br>nrubin@raklaw.com<br>jtsuei@raklaw.com<br>ptong@raklaw.com |
| | Attorneys for Plaintiff<br>Corephotonics, Ltd. |

# CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on January 15, 2024, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

*/s/ Brian D. Ledahl*