| | |
|---|---|
| 1 | COOLEY LLP |
| | Heidi Keefe (178960) |
| 2 | (hkeefe@cooley.com) |
| | Lowell Mead (223989) |
| 3 | (lmead@cooley.com) |
| | Priya B. Viswanath (238089) |
| 4 | (pviswanath@cooley.com) |
| | 3175 Hanover Street |
| 5 | Palo Alto, California  94304 |
| | Telephone:    (650) 843-5000 |
| 6 | Facsimile:     (650) 849-7400 |
| 7 | COOLEY LLP |
| | Phillip Morton (*Pro Hac Vice)* |
| 8 | (pmorton@cooley.com) |
| | 1299 Pennsylvania Avenue |
| 9 | NW, Suite 700 |
| | Washington, DC 20004-2400 |
| 10 | Telephone:  (202) 842-7800 |
| | Facsimile:    (202) 842-7899 |
| 12 | *Attorneys for Defendant* |
| | Apple Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| | COREPHOTONICS, LTD., | Case No. 3:17-cv-06457-JD (lead case) |
| | | Case No. 5:18-cv-02555-JD |
| | Plaintiff, | |
| | | **APPLE'S MOTION TO STRIKE** |
| | vs. | **COREPHOTONICS'S EXPERT'S UNDISCLOSED** |
| | | **NEW INFRINGEMENT THEORIES** |
| | APPLE INC. | |
| | | Date:  February 29, 2024 |
| | Defendant. | Time: 10:00 a.m. |
| | | |
| | | Courtroom 11, 19th Floor |
| | | 450 Golden Gate Avenue, |
| | | San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................................ 1
STATEMENT OF RELIEF REQUESTED ................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1
I.    INTRODUCTION ............................................................................................................. 1
II.   FACTUAL BACKGROUND ............................................................................................ 2
      A.    Corephotonics Twice Amended Its Infringement Contentions But Never Raised the Untimely New Theories at Issue in this Motion ...................................... 2
           1.    For each claimed "ISP," Corephotonics accused only an SoC Processor. ............................................................................................... 3
           2.    For the "camera controller" claim element, Corephotonics did not raise a means-plus-function infringement theory. ........................................ 4
           3.    For the "fusion" limitations, Corephotonics did not accuse Local Tone Mapping. ........................................................................................ 4
      B.    Corephotonics's Infringement Expert Report Raises New Theories Not Disclosed In Corephotonics's Infringement Contentions. ...................................... 6
           1.    The Hart Report raises a new "software and hardware" infringement theory for the "ISP" limitations. ............................................. 6
           2.    The Hart Report raises a new means-plus-function infringement theory for the "camera controller" limitation. ............................................. 6
           3.    The Hart Report raises a new "local tone mapping" infringement theory for the "fusion" limitations. ............................................................ 7
III.  LEGAL STANDARDS .................................................................................................... 8
IV.  ARGUMENT .................................................................................................................... 9
      A.    The Court Should Strike the Hart Report's New Untimely Infringement Theories. ................................................................................................................. 9
           1.    The Court should strike the Hart Report's untimely new "ISP" infringement theory. ....................................................................... 10
           2.    The Court should strike the Hart Report's untimely new means-plus-function infringement theory for the "camera controller." ............... 11
           3.    The Court should strike the Hart Report's untimely new infringement theory accusing Local Tone Mapping. ............................... 12
      B.    Apple Is Unfairly Prejudiced By Corephotonics's Undisclosed New Theories. ............................................................................................................... 13
V.   CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
    No. 11-CV-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) .................................. 13

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
    No. 14-CV-05330-HSG, 2020 WL 210318 (N.D. Cal. Jan. 14, 2020) ................... 9, 10, 11, 12

*Finjan LLC v. Palo Alto Networks, Inc.*,
    No. 3:14-cv-04908-JD, 2023 WL 6305786 (N.D. Cal. Sept. 27, 2023) ......................... *passim*

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-cv-00072-BLF (SVK), 2020 WL 2322923 (N.D. Cal. May 11, 2020) ................... 2, 9

*Finjan, Inc. v. Symantec Corp.*,
    No. 14-CV-02998-HSG(JSC), 2018 WL 620169 (N.D. Cal. Jan. 30, 2018) ...................... 9, 13

*Firstface Co., Ltd. v. Apple, Inc.*,
    No. 3:18-cv-02245-JD, Dkt. 160 (N.D. Cal. Aug. 29, 2022) ................................... 11, 12, 14

*KlausTech, Inc. v. Google LLC*,
    No. 10-cv-05899-JSW (DMR), 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018),
    *aff'd*, 792 F.App'x 954 (Fed. Cir. 2020) .................................................................................. 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................... 8

*Word to Info Inc. v. Facebook Inc.*,
    No. 15-CV-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016), *aff'd*,
    700 F. App'x 1007 (Fed. Cir. 2017) ...................................................................................... 11

**Statutes**

35 U.S.C.
    § 112 ....................................................................................................................................... 14
    § 112(6) ................................................................................................................................... 8
    § 112(f) .................................................................................................................................... 4

**Other Authorities**

Local Rule
    3-1 ...................................................................................................................................... 1, 8
    3-1(b) ................................................................................................................................. 8, 13
    3-1(c) ....................................................................................................................................... 8
    3-6 ............................................................................................................................................ 8

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD
ii
MOTION TO STRIKE

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on **February 29, 2024 at 10:00 A.M.**, or as soon thereafter as the motion may be heard, in the courtroom of the Honorable James Donato, located at Courtroom 11, 19th Floor, San Francisco Courthouse at 450 Golden Gate Ave., San Francisco, CA 94102, Apple Inc. ("Apple") will and hereby does move the Court for an order striking previously undisclosed theories of infringement in Corephotonics's expert reports. The motion is based upon this Notice, the Memorandum of Points and Authorities, the pleadings, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in support of this Motion. The parties met and conferred telephonically, and Corephotonics opposes this motion.

**STATEMENT OF RELIEF REQUESTED**

Apple requests that the Court enter an order striking the portions of the expert report of Dr. John Hart that articulate or rely upon undisclosed new theories of infringement regarding U.S. Patent No. 9,185,291 ("the '291 Patent") that Corephotonics failed to disclose in its Infringement Contentions pursuant to Patent Local Rule 3-1.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Court should strike the untimely new infringement theories that Corephotonics attempts to raise for the first time in an expert report after fact discovery closed. Prior to the service of that report, Corephotonics had over six years to develop its infringement theories and at least three opportunities to disclose its infringement contentions. Indeed, during the lengthy fact discovery period—originally open for most of 2018 and continuing from April 2022 through November 2023—Corephotonics twice amended its infringement contentions, including as recently as four months before it served its opening expert reports. Apple relied on the disclosures in Corephotonics's infringement contentions in developing its positions, discovery, and defenses. After fact discovery closed, Corephotonics served its infringement expert report on the '291 patent that contains several untimely new infringement theories that were not disclosed in any of Corephotonics's three rounds of contentions. Specifically, the report raises new infringement

theories on the (1) "image signal processor (ISP)," (2) "camera controller," and (3) "fusion" claim requirements. "It is well settled that expert reports may not introduce theories not set forth in contentions." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF (SVK), 2020 WL 2322923, at *3 (N.D. Cal. May 11, 2020) ("*Finjan/Cisco*") (striking untimely new infringement theory from expert report); *Finjan LLC v. Palo Alto Networks, Inc.*, No. 3:14-cv-04908-JD, 2023 WL 6305786, at *1 (N.D. Cal. Sept. 27, 2023) ("*Finjan/PAN*") (same). Apple respectfully requests that the Court strike the improper new theories.

## II.   FACTUAL BACKGROUND

### A.   Corephotonics Twice Amended Its Infringement Contentions But Never Raised the Untimely New Theories at Issue in this Motion.

In 2018, Corephotonics served its initial contentions on the '291 patent that accused the iPhone 7 Plus. (Declaration of Lowell Mead ("Mead Decl."), Ex. A.) In response, Apple produced source code and other technical documentation relating to the iPhone 7 Plus. (Mead Decl., ¶ 3.) In December 2018, the case was stayed pending *inter partes* review. (Dkt. 100.) The Court lifted the stay on April 14, 2022. (Dkt. 127.) On May 6, 2022, Corephotonics moved to amend its contentions to accuse many iPhone and iPad products that Apple had released during the stay. (Dkt. 129.) The Court granted that motion on July 25, 2022. (Dkt. 146.) After the Court granted Corephotonics's motion to amend its contentions, Apple produced source code and technical documentation for the newly-accused products. (Mead Decl., ¶ 3.)

On August 9, 2023, Corephotonics filed a second motion to amend its contentions to accuse additional products that were released during the discovery period. (Dkt. 179.) The Court granted that motion on August 30, 2023. (Dkt. 183.) These second amended infringement contentions are Corephotonics's currently operative contentions. Notably, Corephotonics's second amended contentions rely solely upon publicly available information without citing any of the source code and other technical discovery Apple produced.

As explained below, Corephotonics's infringement contentions never disclosed the new theories at issue in this motion.

**1. For each claimed "ISP," Corephotonics accused only an SoC Processor.**

Claim 1 of the asserted '291 patent requires a "Wide imaging section" that includes "a Wide image signal processor (ISP)" and a "Tele imaging section" that includes a "Tele ISP." (*See* Ex. A at 2-3.) After Apple released the iPhone 7 Plus in 2016, Apple publicly disclosed that the product contained an "A10 Fusion" system-on-a-chip ("SoC") processor, including in the September 2016 press release introducing the iPhone 7 Plus.[1] Corephotonics's initial contentions accused that A10 processor as the claimed "ISP." For the "ISP" limitations, Corephotonics's initial contentions against the iPhone 7 Plus pointed only to "a processor," and specifically the Apple A10 Fusion:

> The Accused Product includes a processor that processes image data from the telephoto camera, *e.g.*, the Apple A10 Fusion APL1W24 SoC + Samsung 3 GB LPDDR4 RAM. *See, e.g.*, https://www.ifixit.com/Teardown/iPhone+7+Plus+Teardown/67384 (indicating the Apple A10 processor). *See also, e.g.*, http://appleinsider.com/articles/16/09/23/apples-iphone-7-camera-delivers-nice-slice-of-enhancements-but-iphone-7-plus-takes-the-cake ("Apple's A10 Fusion chip incorporates an enhanced custom Image Signal Processor that now performs over 100 billion calculations on every photograph it takes.").

(*Id.* at 3-4.) The later-released accused iPhone and iPad products similarly each contain an SoC chip with an A-series or M-series number, as Apple described in press releases (for example, the A13 Bionic in iPhone 11 products[2], A14 Bionic in iPhone 12 products[3], A15 Bionic in iPhone 13 products[4], and M1 chip in iPad Pro products[5]). For the "ISP" limitations, Corephotonics's first and second amended contentions against all of these products identified only "a processor" as the accused component, and identified only the A series or M series SoC processor in each product:

> The Accused Products include a processor that processes image data from the claimed tele camera, *e.g.*, the Apple A series or M series SoC processor.

(Ex. B (first amended contentions chart) at 3-4; Ex. C (second amended contentions chart) at 3-4.)

---

[1] *See* https://www.apple.com/newsroom/2016/09/apple-introduces-iphone-7-iphone-7-plus/ (describing the "new custom-designed Apple A10 Fusion chip").
[2] *See* https://www.apple.com/newsroom/2019/09/apple-introduces-dual-camera-iphone-11/.
[3] *See* https://www.apple.com/newsroom/2020/10/apple-introduces-iphone-12-pro-and-iphone-12-pro-max-with-5g/ and https://www.apple.com/newsroom/2021/04/apple-introduces-iphone-12-and-iphone-12-mini-in-a-stunning-new-purple/.
[4] *See* https://www.apple.com/newsroom/2021/09/apple-introduces-iphone-13-and-iphone-13-mini/.
[5] *See* https://www.apple.com/newsroom/2021/04/apple-unveils-new-ipad-pro-with-m1-chip-and-stunning-liquid-retina-xdr-display/.

Corephotonics never accused anything other than this processor.

### 2. For the "camera controller" claim element, Corephotonics did not raise a means-plus-function infringement theory.

In December 2022, a means-plus-function claim construction arose that became part of the *Markman* proceedings in this case. Specifically, Apple had filed a request with the U.S. Patent & Trademark Office ("PTO") for *ex parte* reexamination of the '291 patent. On December 27, 2022, the PTO issued an office action where it determined a claim construction that the "camera controller" element in claim 1 of the '291 patent is subject to a means-plus-function claim construction under 35 U.S.C. § 112(f), limiting the claim to certain algorithmic steps described in Figures 5 and 6 of the patent. (*See* Dkt. 155-1.) The PTO determined that under that means-plus-function construction, claim 1 and its challenged dependent claims would not be invalid over the cited prior art. (*Id.*) The PTO directed Corephotonics to file a response by February 22, 2023 addressing the means-plus-function construction. (*Id.*) In January 2023, Apple filed with this Court a notice of the PTO's action. (Dkt. 155.) On April 24, 2023, Corephotonics filed its response indicating that it did not dispute the PTO's means-plus-function construction. (Dkt. 171-2.) On April 27, 2023, Apple moved for leave to supplement the claim construction briefing in support of the means-plus-function construction. (Dkt. 171.) Apple explained that "the new means-plus-function construction that Corephotonics recently embraced is potentially dispositive on non-infringement as to this patent." (*Id.* at 4.) The Court granted Apple's motion and directed the parties to file further briefing (Dkt. 173), which the parties filed on July 10 and August 7, 2023 (Dkt. 177, 178). The Court held a claim construction hearing on October 5, 2023, and the Court's claim construction order has not yet issued.

Even though Corephotonics had been on notice of this means-plus-function construction for nearly eight months when Corephotonics amended its contentions in August 2023, it did not raise any theory of infringement under that construction. (*See* Ex. C at 5.)

### 3. For the "fusion" limitations, Corephotonics did not accuse Local Tone Mapping.

The '291 claims require a function to "combine" at least some "Wide and Tele image data to provide a fused output image" (the "fusion" limitations). (*See* Ex. A at 3-4.) In its initial

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

4

MOTION TO STRIKE

contentions, Corephotonics accused functionality in the iPhone 7 Plus that "intelligently fuses images from the wide-angle and telephoto cameras" of satisfying the "fusion" limitations. (*See* Ex. A at 6 (quoting Apple's publicly available description that "the Dual camera intelligently fuses images from the wide-angle and telephoto cameras to improve image quality").)

Corephotonics's first amended contentions, accusing many products beyond the iPhone 7 Plus, raised a different theory for the "fusion" limitations that instead focused on a white-balance function. Corephotonics purported to have tested iPhone products by covering one camera from among multiple cameras, resulting in a darker image. (Ex. B at 6-8; Dkt. 135 at 10-13.) In its amended contentions, Corephotonics provided sample images from its alleged testing, including (1) a brighter image resulting from uncovered cameras (below on the left side), and (2) a darker image resulting from covering one camera (below on the right):



(Dkt. 135 at 11-12.) In response to the motion to amend, Apple explained that Corephotonics was pointing to functionality that does not combine pixel data from two images (as would be required under the proper meaning of "fusion" within the claims) but instead merely collects statistics used to adjust white balance before an image is captured. (Dkt. 134 at 13-16; Dkts. 133-134, Declaration of Ting Chen, ¶¶ 4-8.) Corephotonics's (currently operative) second amended contentions maintained this same white balance-based theory for the "fusion" limitation with no change. (Ex. C at 6-8.)

Accordingly, in the *Markman* briefing and oral argument, Apple relied on Corephotonics's white balance-based infringement theory to crystallize the parties' disputes regarding, and to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

5

MOTION TO STRIKE

develop Apple's proposed constructions for, the "fusion" and "image data" claim terms. Apple noted that Corephotonics's positions would improperly broaden the meanings of those terms to encompass any use of "information" about two images. (*E.g.*, Dkt. 150 at 6-14; Dkt. 189 (10/5/23 Hrg. Tr.) at 29:8-17 (noting that under a proper construction, "[i]mage data is the actual pixel values" but Corephotonics was "trying to stretch the term 'image data' to read on white balance gain or other secondary information around an image").)

**B.  Corephotonics's Infringement Expert Report Raises New Theories Not Disclosed In Corephotonics's Infringement Contentions.**

Fact discovery closed in November 2023, and Corephotonics served its opening expert reports in December 2023. Corephotonics's opening expert report on alleged infringement of the '291 patent by Dr. John Hart ("Hart Report") raised new infringement theories for three sets of limitations that were not disclosed in Corephotonics's infringement contentions. (Ex. D (Hart Report excerpts).)

**1.  The Hart Report raises a new "software and hardware" infringement theory for the "ISP" limitations.**

For the "ISP" limitations, for which Corephotonics's infringement contentions had accused only "a processor," the Hart Report raised a new theory broadly accusing all "***software and hardware***" that might be found in the Accused Products that are responsible for "connecting to, enabling, configuring, and utilizing the camera module to, for example, perform image and video output/capture operations,", which "specifically includes the ***bus connections*** from" an image sensor "to the Apple SoC" and "includes specifically ***the iOS operating system and its use of camera drivers and ISP firmware pipeline***." (*Id.*, ¶¶ 84, 89, 91 (emphasis added).)

**2.  The Hart Report raises a new means-plus-function infringement theory for the "camera controller" limitation.**

The Hart Report for the first time raised a theory of infringement under Apple's proposed means-plus-function claim construction of the "camera controller" limitation, including new theories for each of the algorithmic steps required in the '291 patent specification. (Ex. D (Hart Report), ¶¶ 129-146; ¶ 130 ("Even if 'camera controller' is construed in the manner suggested by

Cooley LLP
Attorneys at Law
Palo Alto

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

6

MOTION TO STRIKE

Dr. Durand and mapped to steps illustrated in Figures 5 and 6, the Accused Products would still meet this limitation, as explained below."), 131-146 (opining on steps 504, 506, 508, 510, and 512 of Figure 5 and steps 602, 604, 606, 610, 612, and 614 of Figure 6).) The Hart Report sets forth extensive new content, not found anywhere in Corephotonics's infringement contentions, asserting that these steps are practiced by the accused products literally or by equivalence. (*Id.*)

### 3. The Hart Report raises a new "local tone mapping" infringement theory for the "fusion" limitations.

The Hart Report raises a new infringement theory that accuses a "Local Tone Mapping"("LTM") function of satisfying the "fusion" limitations. (Ex. D, ¶¶ 110-121, 135, 138, 140-142.) Corephotonics's contentions never identified Local Tone Mapping as an accused feature. (*See* Exs. A-C.)

Specifically, the Hart Report accuses "a set of automatic image processing algorithms" referred to as "Local Tone Mapping (LTM)." (Ex. D at ¶ 110.) The report newly points to algorithms that generate "tone curves" and then perform Local Tone Mapping to modify image brightness to adapt to human perception. (*Id.*, ¶¶ 111-116.) Importantly, Local Tone Mapping is a separate function from automatic white balance. (*E.g.*, *id.*, ¶¶ 116 (noting that LTM is a function performed after "white balance"), 111 (noting that LTM is used for "adjusting camera outputs perceived by a user corrected for possible errors in white balance, exposure, and tone"), 112 (Corephotonics deposition questions distinguishing between three functions: "auto white balance and auto exposure and local tone mapping"). None of this Local Tone Mapping functionality was identified as allegedly infringing in Corephotonics's infringement contentions.

For reference, the chart below summarizes the improper new theories at issue in this motion.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

7

MOTION TO STRIKE

| Claim Elements | Accused Products | Corephotonics's Contentions | Hart Report |
|---|---|---|---|
| "Wide ISP" and "Tele ISP" | All accused products | "a processor," specifically the Apple A series or M series SoC processor | "software and hardware" including "the bus connections from" an image sensor "to the Apple SoC" and "the iOS operating system and its use of camera drivers and ISP firmware pipeline" |
| "camera controller" | All accused products | No theory of infringement under means-plus-function construction | New theory of infringement under means-plus-function construction |
| "fusion" | All accused products | No identification of Local Tone Mapping | New theory of infringement accusing Local Tone Mapping |

### III. LEGAL STANDARDS

This District's Patent Local Rules require plaintiffs and defendants "to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). Patent Local Rule 3-1 requires that a patentee identify "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware. This identification shall be as specific as possible." Pat. L.R. 3-1(b). In addition, the patentee must provide a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." Pat. L.R. 3-1(c).

"The purpose of the Rule 3-1 disclosures is to reduce uncertainty about the parties' claims, and to ensure that the often costly course of patent litigation is focused on the disagreements that matter. To those ends, Rule 3-1 disclosures are made early in the case and are subject to amendment only upon diligence and good cause." *Finjan/PAN*, 2023 WL 6305786, at *1. Specifically, Patent Local Rule 3-6 requires that a patentee obtain leave of Court with a "timely showing of good cause" for any amendment to its infringement theories. Pat. L.R. 3-6.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

8

MOTION TO STRIKE

"Given the purpose of these disclosure requirements, expert reports cannot go beyond the bounds of the disclosed infringement theories and introduce new theories not disclosed in the contentions." *KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *3 (N.D. Cal. Sept. 14, 2018), *aff'd*, 792 F.App'x 954 (Fed. Cir. 2020). "It is well settled that expert reports may not introduce theories not set forth in contentions." *Finjan/Cisco*, 2020 WL 2322923, at *3. *See also Finjan/PAN*, 2023 WL 6305786, at *1 (granting motion to strike expert opinions raising new infringement theories); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2020 WL 210318, at *7 (N.D. Cal. Jan. 14, 2020) (same).

When evaluating a motion to strike expert opinions under the Patent Local Rules, courts evaluate "whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Finjan, Inc. v. Symantec Corp.*, No. 14-CV-02998-HSG(JSC), 2018 WL 620169, at *2 (N.D. Cal. Jan. 30, 2018) ("*Finjan/Symantec*"). The inquiry evaluates "fair notice." *Finjan/PAN*, 2023 WL 6305786, at *1 (finding that patentee's infringement contentions "did not give [defendant] fair notice of the infringement claims . . . on which [plaintiff]'s experts now seek to opine").

Here, Corephotonics improperly attempts to use its expert report to raise untimely new infringement theories that were not disclosed in Corephotonics's infringement contentions.

IV.   **ARGUMENT**

   A.   **The Court Should Strike the Hart Report's New Untimely Infringement Theories.**

The Court should strike three untimely infringement theories from the Hart Report. All of them are substantive theories for which Corephotonics's infringement contentions failed to provide fair notice. *Finjan/Symantec*, 2018 WL 620169, at *2; *Finjan/PAN*, 2023 WL 6305786, at *1-2; *DSS*, 2020 WL 210318, at *7.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

9

MOTION TO STRIKE

1. **The Court should strike the Hart Report's untimely new "ISP" infringement theory.**

For the "ISP" limitations, Corephotonics's infringement contentions never accused anything more than "a processor" and specifically the Apple A-series and M-series "SoC processor" contained in each accused product. (Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4.) Corephotonics never raised the accusation that the "ISP" corresponds to "software and hardware" in the accused products, including iOS operating system software, camera system drivers, and "bus connections" outside of the SoC, as Corephotonics now attempts to improperly inject into the case through the Hart Report. (Ex. D, ¶¶ 84, 89, 91.)

The untimely new "software and hardware" theory is fundamentally different from the "SoC processor" theory Corephotonics disclosed in its contentions. The SoC processor is a specific hardware chip in each product. (Ex. A at 3-4; Ex. B at 3-4; Ex. C at 3-4.) Since the claims require an "image signal processor (ISP)," it made sense that Corephotonics accused "a processor." Nothing in Corephotonics's contentions indicated it might accuse software or other hardware components. By contrast, the Hart Report newly seeks to accuse separate software functionality, including iOS system software and camera drivers, as well as "bus connections" that are located outside of the SoC. (Ex. D, ¶¶ 84, 89, 91.) Corephotonics's contentions did not provide fair notice of the untimely new theory raised in the Hart Report. *Finjan/Symantec*, 2018 WL 620169, at *2; *Finjan/PAN*, 2023 WL 6305786, at *1; *DSS*, 2020 WL 210318, at *7.

Corephotonics had ample opportunity during fact discovery, including three rounds of infringement contentions, but never raised any broader "hardware and software" theory for the "ISP" limitations. The iOS operating system and software in the accused devices for capturing images have been well-known publicly for many years. (*E.g.*, Ex. E.) Similarly, the existence of connectors in Apple products were well known. For example, public documents for the iPhone 7 Plus show that the image sensor has "connectors" that transmit information to other components on the devices. (*E.g.*, Ex. F at 7, Step 11 ("two little connectors").) These connectors are not a part of the SoC, which is a separate chip. (*E.g.*, *id.* at 8, Step 14 (noting Apple A10 Fusion SoC).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

10

MOTION TO STRIKE

Apple also produced extensive source code and other technical discovery for the accused products and features that Corephotonics never cited in its contentions. (Mead Decl. ¶ 3.)

In sum, from the beginning of the case, Corephotonics could have preserved an infringement theory broadly accusing "hardware and software" that perform certain functions, but instead Corephotonics only accused the "SoC processor." These untimely new theories should be stricken from the Hart Report. *Finjan/Symantec*, 2018 WL 620169, at *2; *Finjan/PAN*, 2023 WL 6305786, at *1; *DSS*, 2020 WL 210318, at *7.

### 2. The Court should strike the Hart Report's untimely new means-plus-function infringement theory for the "camera controller."

Corephotonics's infringement contentions also never raised any theory of infringement under a means-plus-function claim construction for the "camera controller" element despite ample opportunity and incentive to do so over the past year. The means-plus-function construction first arose in December 2022 when the PTO adopted it and directed Corephotonics to respond. Apple filed a notice of the construction in January 2023, and in April 2023 Apple moved to supplement claim construction with the means-plus-function construction, noting that the means-plus-function construction is "potentially dispositive on non-infringement as to this patent." (Dkt. 171 at 4.) Corephotonics was thus fully on notice by early 2023 of the means-plus-function construction and its significance to the infringement issues in this case. "[W]here the court adopts the opposing party's proposed claim construction, the moving party's diligence, without which there is no good cause, is measured from the day the moving party received the proposed constructions, not the date of issuance of the Court's claim construction opinion." *Word to Info Inc. v. Facebook Inc.*, No. 15-CV-03485-WHO, 2016 WL 6276956, at *4 (N.D. Cal. Oct. 27, 2016), *aff'd*, 700 F. App'x 1007 (Fed. Cir. 2017).

Rather than diligently add a means-plus-function infringement theory to its contentions, Corephotonics chose not to raise any such theory. In August 2023, months after the means-plus-function construction was raised, Corephotonics filed its second motion to amend its contentions but did not disclose any means-plus-function theory of infringement. If Corephotonics wanted to preserve such a theory (in the event the Court adopts the means-plus-function construction),

Corephotonics needed to diligently disclose its theory in amended infringement contentions with leave from the Court. *Word to Info*, 2016 WL 6276956, at *4; *Firstface Co., Ltd. v. Apple, Inc.*, No. 3:18-cv-02245-JD, Dkt. 160 (N.D. Cal. Aug. 29, 2022). Corephotonics "was aware of the possibility of infringement" under a means-plus-function construction" but "still failed to include this infringement theory in its Amended PICs." *DSS*, 2020 WL 210318, at *7, n.4.

This Court's decision in *Firstface v. Apple* is instructive. There, the Court denied the plaintiff's motion to amend its infringement contentions after the Court adopted a construction proposed by Apple, finding that the plaintiff "did not exercise diligence in seeking to amend its contentions because it waited until over a month after the Court's claim construction order despite Apple proposing the construction adopted by the Court much earlier." *Firstface*, No. 3:18-cv-02245-JD, Dkt. 160. In that case, the plaintiff moved to amend its contentions, but unduly delayed until "just over a month before the fact discovery cutoff" to file its motion. *Id*. Here, Corephotonics did not = file a motion to amend its contentions to include a means-plus-function theory after becoming aware of the means-plus-function construction in December 2022 and becoming aware in April 2023 that Apple formally proposed this construction. Instead, Corephotonics amended its contentions in August 2023 without raising a means-plus-function theory and now has improperly attempted to back-door an untimely new infringement theory into its expert report after the close of fact discovery.

### 3. The Court should strike the Hart Report's untimely new infringement theory accusing Local Tone Mapping.

Finally, Corephotonics's infringement contentions do not accuse the Local Tone Mapping feature that Corephotonics untimely attempts to accuse through the Hart Report. Nor would there be any good cause for Corephotonics to attempt to accuse Local Tone Mapping for the first time after the close of fact discovery. Apple has publicly disclosed Local Tone Mapping as a feature of iPhone 7 Plus and other iPhone products since at least 2016. For example, Local Tone Mapping is described in documents published online in 2016 and produced to Corephotonics in this case in 2018. (Ex. G at 2 (describing "improved local tone mapping"); Mead Decl., ¶ 3; Ex. H (Apple developer website from March 2022 describing "tone mapping").) Indeed, Corephotonics's initial

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

12

MOTION TO STRIKE

infringement contentions cited the same technical specifications that describe "local tone mapping," but Corephotonics's contentions never accused that feature of infringement. (Ex. A at 1-4.) The Hart Report admits that the accused Local Tone Mapping feature has been present in iPhone product lines since at least September 2016, when iPhone 7 Plus was released. (Ex. D, ¶¶ 253, 302.) In addition to the publicly available disclosures, Apple produced in 2018 source code for iPhone 7 Plus (the only product then-accused of infringing the '291 patent), including the code for the local tone mapping functionality, but Corephotonics never cited that code (or any other code) in its contentions. (Mead Decl., ¶ 3.) Apple also produced the source code for additional accused products in April 2023. (*Id.*)

Despite all of these disclosures for many years, Corephotonics never identified Local Tone Mapping functionality as being accused and never cited any source code in its contentions, despite twice amending its contentions. The Court should strike this undisclosed and untimely new accusation. *Finjan/PAN*, 2023 WL 6305786, at *2 (finding that even where an accused functionality was referenced with a "few, scattered references" in infringement contentions, the disclosure did "not meet the letter of Rule 3-1(b)'s requirement that each instrumentality 'shall be identified by name,' or its spirit of adequate disclosure"). Corephotonics's infringement contentions "did not give [Apple] fair notice of the infringement claims with respect to the [Local Tone Mapping functionality] on which [Corephotonics's] experts now seek to opine." *Id*.

**B.   Apple Is Unfairly Prejudiced By Corephotonics's Undisclosed New Theories.**

There is no need to consider the issue of prejudice given that Corephotonics failed to disclose in its infringement contentions the untimely new theories raised in the Hart Report. *Finjan/PAN*, 2023 WL 6305786, at *2 (striking new theories from expert report without addressing the issue of prejudice). "If the theory is new, prejudice is 'inherent in the assertion of a new theory after discovery has closed.'" *Finjan/Symantec*, 2018 WL 620169, at *2 (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014)). The "dispositive inquiry" is "whether the allegedly undisclosed theory is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

13

MOTION TO STRIKE

previously identified in the plaintiff's contentions," which holds true here. *Finjan/Symantec*, 2018 WL 620169, at *2.

Even if the Court were to consider the issue of prejudice, Apple would be materially prejudiced by the untimely new theories here. Apple completed fact discovery in reliance on the theories disclosed in Corephotonics's contentions, including developing noninfringement defenses, developing and focusing prior art and § 112 invalidity defenses, developing and arguing its claim construction positions, preparing its witnesses for deposition, and deposing Corephotonics's witnesses. Apple thus had no opportunity during fact discovery to develop its defenses, positions, and discovery based on the undisclosed theories that Corephotonics now seeks to introduce through the Hart Report. *See also Firstface*, Dkt. 160 (where patentee moved to amend contentions shortly before the close of fact discovery, denying motion to amend and finding that "Apple will be prejudiced by the amendment at this late stage of discovery.").

## V. CONCLUSION

Apple respectfully requests that the Court grant this motion and strike the undisclosed new infringement theories from the Hart Report.

Dated: January 25, 2024

Respectfully submitted,

COOLEY LLP

By: */s/ Heidi Keefe*
Heidi Keefe (178960)
(hkeefe@cooley.com)
Lowell Mead (223989)
(lmead@cooley.com)
Priya B. Viswanath (238089)
(pviswanath@cooley.com)
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
Telephone:(650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
Phillip Morton (*Pro Hac Vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

14

MOTION TO STRIKE

Facsimile:   (202) 842-7899

*Attorneys for Defendant Apple Inc.*

Cooley LLP
Attorneys at Law
Palo Alto

Case No. 3:17-cv-06457-JD (lead case)
Case No. 5:18-cv-02555-JD

15

MOTION TO STRIKE